**Hearing Date: April 20, 2022 at 10:00 a.m.**
**Objection Date: March 15, 2022**
**Reply Date: March 31, 2022**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>    Debtor in Foreign<br>    Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (CGM)<br><br>Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>THEODOOR GGC AMSTERDAM, et al.,<br><br>    Defendants. | Adv. Pro. No. 10-03496 (CGM)<br><br>Administratively Consolidated |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>BNP PARIBAS SECURITIES SERVICES LUXEMBOURG, et al.,<br><br>    Defendants. | Adv. Pro. No. 10-03627 (CGM) |

**MEMORANDUM OF LAW IN SUPPORT OF
THE MOTION TO DISMISS OF
ROTHSCHILD & CO ASSET MANAGEMENT EUROPE, AS MANAGER OF
DEFENDANT ELAN GESTION ALTERNATIVE FUND
FOR LACK OF PERSONAL JURISDICTION UNDER RULE 12(B)(2)**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ..................................................................................................... 7

ARGUMENT .......................................................................................................... 9

    A.    Defendant's Alleged Contacts with the Forum Are Insufficient to
Establish Jurisdiction ............................................................................ 11

        1.    Alleged Foreseeability of Investment in BLMIS Does Not
Satisfy Minimum Contacts ......................................................... 11

        2.    Defendant Did Not Receive Any Redemption Payments
from Sentry and the  Complaint Contains No Non-
Speculative Allegation to the Contrary ...................................... 16

        3.    Alleged Use of Correspondent Account and Investment in
U.S. Dollars Does Not Support Minimum Contacts .................. 17

    B.    The Exercise of Personal Jurisdiction Over Defendant Would Be
Unreasonable ....................................................................................... 23

CONCLUSION ..................................................................................................... 27

TABLE OF AUTHORITIES

Page(s)

Cases

*Al Rushaid v. Pictet & Cie*,
28 N.Y.3d 316 (2016) ...................................................................................................22

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County*,
480 U.S. 102 (1987) .........................................................................................14, 23, 25

*Benton v. Cameco Corp.*,
375 F.3d 1070 (10th Cir. 2004) ...................................................................................26

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2017) .........................................................................................11

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018) .............................................................................................9

*In re CIL Limited*,
582 B.R. 46 (Bankr. S.D.N.Y. 2018) ...........................................................................23

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ......................................................................................................10

*El Ajou v. Dollar Land Holdings Ltd.*
[1994] 2 All E.R. 685 ......................................................................................................9

*Etna Prod. Co. v. Dacofa Trading Co.*,
No. 91 CIV. 6743 (DNE), 1992 WL 51507 (S.D.N.Y. Mar. 11, 1992) .................11, 17

*In re Fairfield Sentry Ltd.*,
596 B.R. 275 (Bankr. S.D.N.Y. 2018) ......................................................................9, 14

*In re Fairfield Sentry Ltd.*,
627 B.R. 546 (S.D.N.Y. Bankr. 2021) ....................................................................12, 13

*In re Fairfield Sentry Ltd.*,
Adv. Proc. No. 10-03496 (SMB), 2021 WL 771677, (Bankr. S.D.N.Y. Feb. 23,
2021) ................................................................................................................................9

*Fairfield Sentry Ltd. (In Liquidation), et al., v. Theodoor GGC Amsterdam, et al.*,
Adv. Pro. No. 10-03496, ECF No. 799-2 (July 19, 2012) ...............................4, 7, 8, 25

*Fairfield Sentry Ltd. (in Liquidation) v. Migani*
[2014] UKPC 9 .................................................................................................6, 8, 9, 14

i

*In re Fairfield Sentry Ltd. Litig.*,
458 B.R. 665 (S.D.N.Y. 2011) ....................................................................................24

*In re Fairfield Sentry Ltd.*,
No. 10-03496 (SMB), 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018).................3, 8, 10, 12

*In re Fairfield Sentry Ltd.*,
No. 10-13164 (SMB), 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ........................12, 18

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*,
141 S. Ct. 1017 (2021)....................................................................................26

*Hau Yin To v. HSBC Holdings, PLC*,
2017 WL 816136, . (S.D.N.Y. Mar. 1, 2017) .......................................................19, 22

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984)..................................................................................11, 23

*Hill v. HSBC Bank PLC*,
207 F.Supp.3d 333 (S.D.N.Y. 2016)......................................................................19

*J. McIntyre Mach., Ltd. v. Nicastro*,
564 U.S. 873 (2011)......................................................................................15

*Jesner v. Arab Bank, PLC*,
138 S. Ct. 1386 (2018)...................................................................................19

*Koehler v. Bank of Berm. Ltd.*,
101 F.3d 863 (2d Cir. 1996)..............................................................................10

*Langenberg v. Sofair*,
2006 WL 2628348 (S.D.N.Y. Sept. 11, 2006).............................................................10

*Licci ex rel. Licci v. Lebanese Can. Bank, SAL*,
732 F.3d 161 (2d Cir. 2013)..........................................................................21, 22

*Manko Window Systems, Inc. v. Prestik*,
2017 WL 4355580 (D. Kan. Sept. 29, 2017) .............................................................26

*Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*,
12 N.E.3d 456 (N.Y. 2014)............................................................................20, 25

*In re Mexican Gov't Bonds Antitrust Litig.*,
2020 WL 7046837 (S.D.N.Y. Nov. 30, 2020)..............................................................15

*Official Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
549 B.R. 56 (S.D.N.Y. 2016)..........................................................................20, 21

*Picard v. BNP Paribas S.A.*,
594 B.R. 167 (Bankr. S.D.N.Y. 2018).................................................................11

*Picard v. Bureau of Labor Ins. (In re Sec. Inv'r Prot. Corp.)*,
480 B.R. 501 (Bankr. S.D.N.Y. 2012) ...........................................................15, 16

*Pilates, Inc. v. Pilates Inst., Inc.*,
891 F. Supp. 175 (S.D.N.Y. 1995) ....................................................................5

*Porina v. Marward Shipping Co., Ltd.*,
2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006)......................................................23

*Rocky Mountain Chocolate Factory v. Arellano*,
2017 WL 4697503 (D. Colo. Oct. 19, 2017) .......................................................26

*Société d'Assurance de l'Est SPRL v. Citigroup Inc.*,
No. 10-civ-4754 JGK, 2011 WL 4056306 (S.D.N.Y. Sept. 13, 2011).........................18

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*,
277 F. Supp. 3d 521 (S.D.N.Y. 2017)..............................................................10

*Spiegel v. Schulman*,
604 F.3d 72 (2d Cir. 2010)..........................................................................27

*Sunward Electronics, Inc. v. McDonald*,
362 F.3d 17 (2d Cir. 2004)..........................................................................10

*Tamam v. Fransabank Sal*,
677 F. Supp. 2d 720 (S.D.N.Y. 2010)........................................................5, 18, 19

*Tera Group, Inc. v. Citigroup, Inc.*,
No. 17-cv-4302(RJS), 2018 WL 4732426 (S.D.N.Y. Sept. 28, 2018) .........................17

*In re Terrorist Attacks on September 11, 2001*,
714 F.3d 659 (2d Cir. 2013)..........................................................................10

*U.S. Bank National Association v. Bank of America N.A.*,
916 F.3d 143 (2d Cir. 2019)......................................................................12, 13

*Universal Trading & Inv. Co., Inc. v. Tymoshenko*,
2012 WL 6186471 (S.D.N.Y. 2012)..............................................................20, 21

*Walden v. Fiore*,
571 U.S. 277 (2014).......................................................................... *passim*

*Waldman v. Palestine Liberation Org.*,
835 F.3d 317 (2d Cir. 2016)..........................................................................10

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980)........................................................................................................23

*Worldwide Futgol Assocs., Inc. v. Event Ent., Inc.*,
983 F. Supp. 173 (E.D.N.Y. 1997) .................................................................................17

*Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*,
2020 WL 5503557 (S.D.N.Y. Sept. 10, 2020) ...............................................................11

<u>Other Authorities</u>

Federal Rule of Civil Procedure 12(b)(2) ...........................................................1, 5, 17

Rothschild & Co Asset Management Europe (formerly known as Rothschild & Cie Gestion), as manager of the Elan Gestion Alternative fund (collectively, "Defendant") (sued as Rothschild & Cie Banque-EGA), by and through its undersigned counsel, submits this memorandum of law in support of its motion to dismiss the Fifth Amended Complaint (Ex. A; "Complaint" or "Compl."; Dkt. 143) filed by Plaintiffs as the liquidators for Fairfield Sentry Ltd. ("Sentry") and Fairfield Sigma Ltd. ("Sigma," and together with Sentry, "Plaintiffs" or the "Funds") pursuant to Federal Rule of Civil Procedure 12(b)(2).[1]

## PRELIMINARY STATEMENT

After three separate decisions from this Court on prior motions to dismiss, Plaintiffs' only remaining claim is one for knowing receipt under British Virgin Islands ("BVI") law. Plaintiffs' claim asks this Court to sit as a BVI Court of equity to adjudicate whether redemption payments allegedly paid by BVI funds to a French defendant, must be returned. Plaintiffs have not established that the Court has personal jurisdiction over Defendant with respect to such claims.

The instant Complaint makes only one allegation specifically directed at Defendant: "[b]ased on Sentry and Sigma records, some or all of the Redemption Payments made to BNP Paribas SSL *may have* been paid to an account holder or holders associated with the Beneficial Shareholder, Rothschild & Cie Banque-EGA." (Compl. ¶ 42) (emphasis added). As set forth below, such a speculative allegation is entirely insufficient to confer personal jurisdiction over

---

[1] Unless otherwise specified, citations to "Dkt ___" refer to docket entries from Adv. Pro. No. 10-03627.

Defendant under established case law. Nor is it accurate – Defendant never received redemption payments from Sentry.[2]

Indeed, according to the Plaintiffs' own allegations, every relevant and material aspect of the claims, even assuming they are in any way related to the Defendant, is foreign:

- Defendant "a corporate entity organized under the laws of France and has its registered address at 29 avenue de Messine, 75008, Paris, France." It is not alleged to conduct any business in the United States. (Compl. ¶ 42.)

- The Funds are BVI hedge funds that are now in liquidation in their home jurisdiction of the BVI. (Compl. ¶ 173)

- Defendant allegedly received the redemption payments through defendant BNP Paribas Securities Services Luxembourg ("BNP Paribas SSL"), which is a corporate entity organized under the laws of Luxembourg and having its registered address in Luxembourg. (See, e.g., Compl. ¶¶ 33, 42, 129.)

- BNP Paribas SSL was contractually due the redemption under the Funds' Articles of Association the ("Articles"), corporate documents governed by BVI law. (Compl. ¶ 136.)

- The Articles provide a BVI contractual right to redeem shares in the Funds at that Fund's Net Asset Value ("NAV") when the shares were tendered to the Fund's Dutch administrator, Citco Fund Services (Europe) B.V. ("Citco Fund Services" or "Citco Administrator"). (Compl. ¶ 136.)

- Citco Fund Services, which is alleged to have calculated the NAV, is located abroad in the Netherlands. (Compl. ¶¶ 136-154.)

- Plaintiffs allege no relevant activities by Defendant in or directed at the United States.

---

[2] In light of the paucity of Defendant-specific allegations, the bulk of this brief necessarily addresses Plaintiffs' allegations and arguments directed either to other defendants or to all defendants as an undifferentiated group.

Plaintiffs have elsewhere, when it has served their purposes, adopted these factual allegations. As recently as July of this year – barely three months ago – Plaintiffs told the District Court in a pending appeal seeking reinstatement of certain dismissed claims:[3]

> ***The redemption transfers at issue here were purely foreign***. The Citco Administrator (a foreign entity) managed the share register and processed the redemption requests abroad, and the Funds (also foreign entities) transferred redemption payments to Defendants (also chiefly foreign entities). . . . As Defendants concede (Omnibus Bankr. Dkt. 1457 at 19), ***every relevant component of the transactions at issue here occurred outside the territorial jurisdiction of the United States***.

Pls'-Appellants' Opening Br. for Second-Round Appeal at 24, *Fairfield Sentry Ltd. v. Citibank NA London*, No. 19-cv-3911 (VSB) (S.D.N.Y. July 21, 2021) (Dkt. 440) ("Plaintiffs' Appeal") (emphasis added).

The foreign claim before this Court was only filed in this Court because Plaintiffs made a mistake of law more than a decade ago. Specifically, Plaintiffs mistakenly read the subscription agreement for the purchase of shares in the Funds as providing a basis to pursue their claim against Defendant in New York. This Court rejected that theory because the knowing receipt claim is for redemptions and does not arise out of the subscription agreements, *In re Fairfield Sentry Ltd.*, No. 10-03496 (SMB), 2018 WL 3756343 at *11 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*") (adhering to the Privy Council's holding "that the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments"). This has left Plaintiffs grasping to justify the legal basis for litigating against Defendant and dozens of others in New York, a forum with no connection to the redemption transaction at issue. As this Court astutely noted during argument:

---

[3] The appeal concerns whether the Section 546(e) safe harbor bars Plaintiffs' now-dismissed statutory avoidance claims. Plaintiffs argue that the safe harbor does not bar foreign transfers, like those at issue here. Defendant agrees that the transfers were foreign, but argues that the location of the transfer is immaterial to the application of the safe harbor in these proceedings.

> It just sounds like you litigated these issues or you should litigate
> them in the BVI. I don't understand why they're here. . . . [A]t some
> point you commenced these cases here. . . . And the question is why
> you didn't commence them in the BVI?

Tr. of July 27, 2016 Hr'g at 11-14, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro.

No. 10-3496 (Bankr. S.D.N.Y. July 28, 2016) (Dkt. 906).

To Defendant's knowledge, Plaintiffs have advanced only two purported bases for personal

jurisdiction in prior briefing in an attempt to avoid the inevitable conclusion that this lawsuit does

not belong here. As discussed herein, neither of those bases satisfies the U.S. Constitution's

minimum contacts test for exercising jurisdiction over Defendant.

*First*, Plaintiffs argue that the minimum contacts test is satisfied because Defendant knew

that the Funds were directly or indirectly investing the Funds' own money with Bernard L. Madoff

Investment Securities LLC ("BLMIS"). But this allegation is not relevant to Plaintiffs' actual

claim (*i.e*., knowing receipt), which turns on the foreign redemption payments from the Funds and

their allegations of Citco Fund Services' bad faith calculation of those payments in the Netherlands.

*See* Compl. ¶¶ 7, 17, 49, 136. Plaintiffs' claims here are not about, and do not arise out of, any

investment with BLMIS. Even if the Funds' investments with Madoff were relevant, however,

those investments – not made by Defendant – are not the sort of minimum contacts that would

support personal jurisdiction over Defendant. As the Supreme Court's decision in *Walden v. Fiore*,

571 U.S. 277 (2014) establishes, the defendants' knowledge of the *plaintiffs*' contacts with the

forum – here, the Funds' contacts with BLMIS – are insufficient to establish personal jurisdiction.

*Second*, Plaintiffs allege that redemption payments from Sentry (but not Sigma) were paid

to a correspondent bank account in the United States. *See* Compl. Ex. A. Although Plaintiffs

presumably have the records to identify which payment or payments, if any, went to Defendant,

they do not (because they cannot) allege *that Defendant received any specific redemption payments*

*through Sentry.* Indeed, as set forth in the Declaration of Didier Bouvignies ("Bouvignies Decl.") submitted herewith, Defendant did not receive *any* redemption payments from Sentry. [4] Bouvignies Decl. ¶ 3.[5] Notably, Sigma investments were denominated in Euros, not U.S. dollars. Plaintiffs do not assert jurisdiction with respect to redemptions from Sigma based on the use of correspondent accounts. In any event, the mere use of a bank account at a U.S. financial institution to facilitate the receipt of dollar-denominated payments does not subject Defendant to personal jurisdiction in the United States, either. *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010) ("[C]ourts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction.") (citing cases). Foreign banks often maintain correspondent accounts denominated in dollars to facilitate the clearing of foreign dollar transactions. These accounts are both common, because foreign banks cannot generally directly hold dollar-denominated accounts in their home countries, and essential to international commerce and to the economy, because they facilitate clearance of more than a trillion dollars in transactions each day. Making a payment in U.S. dollars, and facilitating that payment through a U.S. bank account, has been widely recognized in this Circuit not to give rise to personal jurisdiction; were it otherwise, virtually anyone in the world who does business in U.S. dollars would potentially be subject to personal jurisdiction in New York.

---

[4] For purposes of this motion, Defendant accepts all of the well-pleaded allegations as true; however, Defendant contests the wholly vague and speculative allegation that Defendant "may have" received redemption payments from Sentry, which allegation is demonstrably false (*see* Bouvignies Decl.). While Defendant accepts as true all well-pleaded allegations for purposes of this motion, Defendant reserves all rights to challenge those allegations at the appropriate time.

[5] Under Rule 12(b)(2), "all pertinent documentation submitted by the parties may be considered". *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 178 n.2 (S.D.N.Y. 1995) (citation omitted).

Moreover, Plaintiffs' claims do not arise out of the use of any correspondent account, even if it were a sufficiently purposeful contact.

*Finally*, even if minimum contacts were satisfied, the exercise of jurisdiction would be unreasonable under the circumstances and for that reason impermissible. The majority of relevant evidence (if not all of it) is overseas in the BVI, the Netherlands, Luxembourg, or France. The United States has little to no interest in adjudicating this foreign law claim between exclusively foreign parties for the recovery of purely foreign payments under a foreign law contract. The federal court system only has jurisdiction over the case because the claim is related to an ancillary Chapter 15 case that effectively serves no purpose other than as – at least as used here – a vehicle for forum shopping. Plaintiffs' interests in litigating in this forum similarly are very low. They have proffered no reason why the United States is a more reasonable forum than their home jurisdiction of the BVI, BNP Paribas SSL's home jurisdiction of Luxembourg, or Defendant's home jurisdiction of France. Finally, the burden on Defendant to litigating in New York is significant. The witnesses and evidence in this action are all overseas and Defendant, a French entity, has binding obligations under foreign secrecy and privacy law. As set forth in connection with prior motion practice in these Fairfield proceedings, discovery in this action may potentially expose Defendant to civil and criminal penalties in France. *See, e.g.*, Declaration of Chantal Cutajar (*Fairfield Sentry Ltd.,* ¶ 11-21*(In Liquidation), et al., v. Theodoor GGC Amsterdam, et al.*, Adv. Pro. No. 10-03496, Dkt. 526-1) (the "Cutajar Decl.").

For these reasons, Defendant respectfully submits that the claims against it should be dismissed for lack of personal jurisdiction.

**BACKGROUND**

These cases are ancillary to the foreign liquidation of the Funds in the BVI. The Funds were placed into liquidation in 2009 before the Commercial Division of the Eastern Caribbean High Court of Justice, British Virgin Islands after BLMIS's fraud was publicly revealed.[6] Between October 2009 and March 2010, Plaintiffs commenced actions in the BVI against a number of the Funds' alleged investors seeking restitution on the theory that the Funds mistakenly made redemption payments prior to BLMIS's collapse,[7] and contemporaneously and subsequently have brought more than 300 actions in the United States against a partially overlapping group of defendants with overlapping theories of liability. Plaintiffs repeatedly have asserted that they brought their claims in the U.S. based on the (mistaken) belief that defendants consented to personal jurisdiction in New York when they signed subscription agreements containing a forum selection clause for the Funds.[8] The New York actions, including this action against Defendant, were consolidated before this Court after the Funds' foreign liquidators' petitions for Chapter 15 recognition were granted. The cases shortly thereafter were stayed pending resolution of the BVI actions, which were poised to present potentially dispositive rulings on claims in the BVI and New York actions.

In 2014, the Privy Council, the court of last resort for appeals from the BVI, affirmed dismissal of the Liquidators' BVI law claims for restitution based on mistake. Starting in 2016,

---

[6] Compl. ¶ 27.

[7] *See* Declaration of William Hare in Support of Motion for Leave to Amend, ¶ 15 (*Fairfield Sentry Ltd., (In Liquidation), et al., v. Theodoor GGC Amsterdam, et al.*, Adv. Pro. No. 10-03496, Dkt. 925) (the "Hare Decl.").

[8] *See* Tr. July 27, 2016 Hr'g. at 11-14 ("THE COURT: It just sounds like you litigated these issues or you should litigate them in the BVI. I don't understand why they're here. [Counsel for Plaintiffs]: Well, Judge, the issues are here because there's a forum selection clause, and because the cases are here.")

after receiving that unfavorable decision, Plaintiffs discontinued all remaining BVI actions,[9] and

began prosecuting the New York actions under a new theory that the payment of the redemptions

was not merely mistaken but the result of bad faith by the Funds' administrator, Citco Fund

Services. This Court has issued a series of decisions largely rejecting Plaintiffs' claims and

personal jurisdiction arguments, although it has not fully resolved the issue of personal jurisdiction

in each individual case.[10] Relevant to the Court's jurisdictional analysis in this case now, in August

2018, the Court issued *Fairfield I*, holding that the instant action did not arise out of the

subscription agreements and that the forum selection clause contained in the subscription

agreements accordingly did not apply.[11]

---

[9] *See* Hare Decl. ¶ 68. In the BVI courts, the Liquidators unsuccessfully litigated on a "mistaken" payment theory, premised on the Fund's alleged miscalculation of their NAV. The Liquidators lost those claims at all levels of the BVI court system. *See Fairfield Sentry Ltd. (in Liquidation) v. Migani* [2014] UKPC 9 ("*Migani*") ¶ 23 (concluding the Liquidators' approach is "an impossible construction"). They also lost on their claim that redeeming investors did not give good consideration for the redemptions. *See generally id.*

[10] Defendant joined the consolidated motion to dismiss for lack of personal jurisdiction in 2017. *See* Stipulated Order Effecting Waiver of Remand Relief and Granting in Part and Denying in Part Motions to Dismiss and Motion for Leave to Amend (Dkt. 91) at 8-9 ¶¶ II.B, D; Consolidated Mem. of Law in Opp'n to Pls' Mot. for Leave to Amend and in Supp. of Defs' Mot. to Dismiss, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Jan. 13, 2017) (Dkt. 960).

Because of the stay and other procedural orders entered during this litigation by Judges Lifland and Bernstein, that was Defendants' first opportunity to challenge personal jurisdiction. Those 2017 motions have never been fully resolved, and since 2017 there have been a number of stipulated orders preserving the defense. *See, e.g.*, Stipulated Order (Dkt. 116) ¶ II.1; Order and Stipulation ¶ 3, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Sept. 20, 2018) (Dkt. 1735); Scheduling Order ¶ 4, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Mar. 20, 2020) (Dkt. 2926); Scheduling Order ¶ 5, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. Apr. 14, 2020) (Dkt. 3028).

[11] *Fairfield I*, 2018 WL 3756343, at *12 ("[W]hile the Subscription Agreement governs subscriptions and refers to the Articles, the Articles govern redemptions and make no mention of the Subscription Agreement…Accordingly, the Defendants' consent to the Subscription Agreement does not constitute consent to personal jurisdiction . . . .").

The sole remaining claim against Defendant in this action is based on knowing receipt. *See* Compl. ¶¶ 129-35, 179-193. Knowing receipt is a specific type of equitable claim that permits a BVI court to find that the circumstances of a transfer of assets is such that although the recipient received legal title and possession, equitable title was retained by the transferor – rendering the transferee an involuntary trustee. To plead a claim for knowing receipt, "the plaintiff must show, first, a disposal of his assets in breach of fiduciary duty; second, the beneficial receipt by the defendant of assets which are traceable as representing the assets of the plaintiff; and third, knowledge on the part of the defendant that the assets he received are traceable to a breach of fiduciary duty." *In re Fairfield Sentry Ltd.*, Adv. Proc. No. 10-03496 (SMB), 2021 WL 771677, at *3 (Bankr. S.D.N.Y. Feb. 23, 2021) ("*Fairfield IV*") (quoting *El Ajou v. Dollar Land Holdings Ltd.* [1994] 2 All E.R. 685, 700). Plaintiffs here are apparently pursuing this equitable relief with respect to 15 different redemption payments allegedly made to BNP Paribas SSL under this BVI-law "knowing receipt" theory. *See* Compl. Ex. A, Ex. B. The amount of those redemption payments was allegedly premised on the NAV of the Funds as calculated by the Funds and their administrative agent, Citco Fund Services. The redemption payments themselves were owed under an enforceable contract upheld, notwithstanding BLMIS's fraud, both by the Privy Council and this Court. *Migani* ¶¶ 21-24; *In re Fairfield Sentry Ltd.*, 596 B.R. 275, 295-97 (Bankr. S.D.N.Y. 2018) ("*Fairfield II*").

## ARGUMENT

At the motion to dismiss stage, Plaintiffs have the pleading burden, and "must make a prima facie showing that jurisdiction exists" over Defendant consistent with due process. *Charles Schwab Corp. v. Bank of Am. Corp*., 883 F.3d 68, 81 (2d Cir. 2018) (internal quotation marks omitted). Where Plaintiffs have not done so, their claims should be dismissed.

This Court has previously held that defendants did not consent to personal jurisdiction in New York by subscribing to the Funds. *See Fairfield I*, 2018 WL 3756343, at *12. Plaintiffs do not allege any other form of consent to jurisdiction in the United States and, accordingly, must identify some basis other than consent to carry their "burden of establishing jurisdiction over the defendant." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 334 (2d Cir. 2016) (quoting *Koehler v. Bank of Berm. Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996)). Plaintiffs must make this showing with respect to "*each defendant*," *Langenberg v. Sofair*, 2006 WL 2628348, at *6 (S.D.N.Y. Sept. 11, 2006) (emphasis in original), and "*each* claim asserted." *Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 586 (S.D.N.Y. 2017) (quoting *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)) (emphasis in original).

Plaintiffs do not allege that the Court has general jurisdiction over this French Defendant, which is not "at home" in the United States, and so Plaintiffs must plead facts supporting the exercise of specific jurisdiction over Defendant. *See Daimler AG v. Bauman*, 571 U.S. 117, 136-37 (2014). To do so, Plaintiffs must assert that (1) their claims arise out of the Defendants' sufficient "minimum contacts with the relevant forum," and (2) "the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted). The minimum contacts inquiry "focuses on the relationship among the defendant, the forum, and the litigation," a relationship that "must arise out of contacts that the defendant *himself* creates with the forum State." *Walden*, 571 U.S. at 284 (quotations omitted) (emphasis in original). Plaintiffs have failed to meet this pleading burden.

Further, to establish personal jurisdiction under New York's long-arm statute, the Liquidators must satisfy two exacting pleading requirements: (1) Defendant must have transacted business within the state; and (2) the claims asserted must arise from that business

10

activity.  *See Zim Integrated Shipping Servs. Ltd. v. Bellwether Design Techs. LLC*, 2020 WL

5503557, at *4 (S.D.N.Y. Sept. 10, 2020) (Broderick, J.) (citing *Best Van Lines, Inc. v. Walker*,

490 F.3d 239, 246 (2d Cir. 2017)).  "[C]onclusory allegations, conjecture, and speculation" are

insufficient to establish personal jurisdiction.  *Etna Prod. Co. v. Dacofa Trading Co.*, No. 91

CIV. 6743 (DNE), 1992 WL 51507, at *3 (S.D.N.Y. Mar. 11, 1992).

As Judge Bernstein held in the Madoff Trustee litigation with respect to the identical

jurisdictional issue, each transaction involving Redemption Payments is a separate claim.

Accordingly, the Liquidators must establish the Court's jurisdiction over Defendant for *each*

*individual redemption payment*, just as the Trustee is required to do.  *Picard v. BNP Paribas*

*S.A.*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Each transfer is a separate claim, and the

Trustee must establish the court's jurisdiction with respect to each claim asserted.") (internal

quotations and citations omitted).  As further explained below, Plaintiffs have failed to do so

here.

**A.     Defendant's Alleged Contacts with the Forum Are Insufficient to Establish
       Jurisdiction**

> 1.     Alleged Foreseeability of Investment in BLMIS Does Not Satisfy Minimum
>        Contacts

Plaintiffs assert that this Court has jurisdiction over Defendant based on an allegation in

the Complaint that Defendant invested in the Funds while "knowing and intending that the Funds

would invest substantially all of that money" in BLMIS.  *See* Compl. ¶ 20.  But that allegation is

jurisdictionally irrelevant for at least three reasons.

*First*, the allegation that Defendant knew that *subscription payments* into the Fairfield

Funds may have been comingled with subscriptions from others, and the net surplus of those

payments (in excess of redemption payments) would be invested by the Funds with BLMIS, is

entirely unrelated to Defendant and thus cannot support jurisdiction.  *See Helicopteros Nacionales*

*de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."). Plaintiffs' claim is not predicated on whether or not the funds they seek to recover were ever placed with or controlled by BLMIS. In fact, the Plaintiffs seek to recover these payments regardless of whether or not they were ever actually invested in BLMIS. Furthermore, Plaintiffs' claim is not premised on the decision to invest with the Funds as the basis for either liability or jurisdiction. *See Fairfield I*, 2018 WL 3756343, at *17-27 (finding subscription agreements irrelevant to claim because not based on subscription). Rather, Plaintiffs' claim for knowing receipt relates to and arises out of the calculation of the NAV by the Funds' Dutch administrator, Citco Fund Services, and the Funds' subsequent alleged disbursement of redemption payments on the basis of those calculations from their Irish bank accounts to BNP Paribas SSL, a Luxembourg entity located in Luxembourg. *See* Compl. ¶¶ 8, 16, 17, 136, 159, 178, Exs. A, B. BNP Paribas SSL (allegedly "in the capacity of trustee, agent, representative, nominee, or custodian" of Defendant (Compl. ¶ 16)) made its request for those redemptions by tendering shares to Citco Fund Services in the Netherlands and the redemptions were funded from the Funds' bank accounts held at Citco Bank in Ireland. *See In re Fairfield Sentry Ltd.*, No. 10-13164 (SMB), 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*") at *7 (finding all transfers paid by Citco Bank). As the Plaintiffs have elsewhere conceded, every material element of the transaction is "purely foreign." Plaintiffs' Appeal at 24.

For the same reason, *U.S. Bank National Association v. Bank of America N.A.*, 916 F.3d 143 (2d Cir. 2019), which this Court applied to hold that it may exercise jurisdiction over Andrés Piedrahita in its decision in the Fairfield Greenwich Group case, *In re Fairfield Sentry Ltd.*, 627 B.R. 546, 568 (S.D.N.Y. Bankr. 2021) (Morris, C.J.) ("*FGG*"), does not establish jurisdiction here.

*U.S. Bank* found specific jurisdiction in Indiana over a defendant that made misrepresentations while selling a bundle of mortgages because the misrepresentations related specifically to a mortgage for an Indiana property and breach of a promise to cure by taking action in Indiana. *See U.S. Bank*, 916 F. 3d at 151-52 (describing breach and obligation to cure). In *FGG*, this Court found specific jurisdiction over Mr. Piedrahita because he spent a "substantial amount of time" in New York and met with other "founding partners" of FGG and Madoff in New York; these were the facts that gave rise to the claims against him for return of management and performance fees and supported jurisdiction. *FGG*, 627 B.R. at 568. Unlike in those cases, the claims against Defendant are not based on any action taken by Defendant in the United States. Plaintiffs seek to recover against Defendant because Citco Fund Services, which was the Funds' agent in the Netherlands, purportedly breached a duty it owed to the Funds in the BVI when it paid money to BNP Paribas SSL, a Luxembourg entity, for the benefit of Defendant, and because BNP Paribas SSL allegedly knew of the breach. None of those facts have anything to do with the United States.

*Second*, mere knowledge that Sentry would invest the money it raised in the BVI with BLMIS in New York is insufficient as a matter of law to support jurisdiction. The Supreme Court's decision in *Walden* is dispositive on this point. In *Walden*, a Nevada-based plaintiff sued a Georgia police officer in Nevada court for an unlawful seizure of money in a Georgia airport. *See Walden*, 571 U.S. at 288. The police officer knew that the plaintiff had connections to Nevada and that the seizure would delay return of plaintiff's property to Nevada, but the Supreme Court nonetheless held it unconstitutional to exercise personal jurisdiction over the police officer in Nevada. *Id.* at 289. As the Supreme Court explained, the foreseeability of plaintiff's connection to the forum is irrelevant to whether there is jurisdiction over defendant because it "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* The

13

Supreme Court instead has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* at 284; *see also Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 112 (1987) ("The substantial connection . . . between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*.") (quotation omitted) (emphasis in original).

The assertion that when Defendant purchased shares in the Funds through BNP Paribas SSL it knew the Funds would later invest with BLMIS, even if true, falls short even of the facts of *Walden*. Once Defendant transferred subscription money to the Funds through BNP Paribas SSL, the money was no longer Defendant's, pursuant to a contract to exchange the subscription money for shares.[12] While some of the money invested in the Funds was transferred by the Funds to BLMIS, and some of the redemption payments made by the Funds may have been funded by transfers the Funds received from BLMIS, that was not universally or even typically the case. As Plaintiffs allege, the Funds netted subscriptions against redemptions, and accordingly, often funded redemption payments with money that came in from new investments. Thus, that subscription money was never placed with BLMIS in New York at all. *See* Compl. ¶ 51 (alleging that subscription money was used to pay redemptions as a "shortcut"). What is more, Sigma itself never invested with BLMIS. Sigma was instead a shareholder in Sentry that received redemptions from Sentry indistinguishable from the redemptions allegedly received by defendants. The

---

[12] *See Fairfield II*, 596 B.R. 275, at 288 ("In rejecting Sentry's arguments relating to the Certification Issue, the Privy Council considered the provisions of Articles 9, 10 and 11, and concluded that the NAV had to be definitively determined at the time of the subscription or redemption; otherwise, the scheme was "unworkable."); *see also Migani* ¶ 10 ("The Subscription Agreement binds the subscriber to his subscription and to the terms of the Fund Documents.").

Complaint also alleges that Sigma used new subscriptions to pay new redemption requests, meaning that defendants' Sigma subscriptions (paid in *Euros*) may never have even made it to *Sentry in the BVI*, let alone to BLMIS in New York.  The law does not support Plaintiffs' expansive view that an investment company can sue its investors in any jurisdiction where that investment company itself decides to make investments, much less where the funds at issue may not even have been derived from those investments.

*Third*, Plaintiffs' suggestion that money placed with the Funds may have – but did not necessarily – make its way to BLMIS is not a basis for asserting personal jurisdiction; it is nothing more than the type of threadbare "stream of commerce" theory of personal jurisdiction rejected by the Supreme Court.  *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882, 886 (2011) ("[I]t is not enough that [a] defendant might have predicted that its goods will reach the forum State," but rather the defendant must "engage[] in conduct purposefully directed at [the forum].");  *In re Mexican Gov't Bonds Antitrust Litig.*, 2020 WL 7046837, at *3-4 (S.D.N.Y. Nov. 30, 2020) (holding neither an attempt to profit from conduct underlying claim nor foreseeability of a harm in forum were sufficient to establish jurisdiction in absence of a defendant's contact with forum).

Notably, this case is very different from *Picard v. Bureau of Labor Ins. (In re Sec. Inv'r Prot. Corp.)*("*BLI*"), 480 B.R. 501, 516-19 (Bankr. S.D.N.Y. 2012) (Lifland, J.), in which Judge Lifland held that a defendant's investment with Sentry was sufficient to establish personal jurisdiction *with respect to claims arising from the liquidation of BLMIS*. [13]  In that case, the allegations concerned transfers by BLMIS from New York, and the court held that the decision to

---

[13] And in any event, this holding is drawn into question by the subsequent opinion in *Walden*.  The opinion in *BLI* relied on BLI's alleged knowledge of the feeder fund's investments in BLMIS, *Picard v. BLI*, 480 B.R. at 517, which is the type of foreseeability argument rejected in *Walden*, *see supra* at 14.

invest in a fund that would ultimately invest with BLMIS gave rise to personal jurisdiction with respect to claims arising from that BLMIS investment.  *Id.*  But Plaintiffs' claims in this case do not arise from the Madoff investment; they arise from the redemption payments allegedly made by the Funds from the BVI to foreign defendants.  Even if Defendant could foresee the possibility of being sued in New York courts for claims based on any New York-based investments made by the Funds, it simply is not credible that Defendant would have understood that investing in the BVI-incorporated Funds would subject it to U.S. jurisdiction with respect to claims arising out of the receipt of moneys from those BVI-bases Funds.

2.    Defendant Did Not Receive Any Redemption Payments from Sentry and the Complaint Contains No Non-Speculative Allegation to the Contrary.

As an initial matter, Plaintiffs allege the involvement of correspondent accounts solely with respect to redemptions from Sentry, not Sigma.  *Compare* Compl. ¶ 20 (alleging involvement of BNP Paribas, New York for Sentry transfers), *with id.* Ex. B (containing no such allegation).  This is because payments made by Sigma were paid in Euros, *id*. ¶ 46, allegedly into a bank account held in Paris, *id.* Ex. B.  Accordingly, with respect to Sigma's redemption claims, there is no U.S. contact whatsoever alleged and those claims (covering the transfers listed in Exhibit B to the Complaint) should be dismissed.

As set forth in the Bouvignies Decl., Defendant only received a single redemption payment from Sigma in Euros.  Bouvignies Decl. ¶ 2.  As Defendant did not receive any redemption payments through Sentry, it did not use a U.S. correspondent account to receive any redemption payments.  *Id*. ¶ 3.  Indeed, the Complaint contains *no credible allegation that this particular Defendant received any redemptions through Sentry*.  The *sole* allegation concerning redemptions from Sentry by this Defendant is that, "[b]ased on Sentry and Sigma records, some or all of the Redemption Payments made to BNP Paribas SSL **may have** been paid to an account holder or

holders associated with the Beneficial Shareholder, Rothschild & Cie Banque-EGA." (Compl. ¶ 42) (emphasis added).  This is precisely the kind of speculative allegation which is insufficient to give rise to jurisdiction.  *See Etna Prod. Co. v. Dacofa Trading Co.*, No. 91 CIV. 6743 (DNE), 1992 WL 51507, at *3 (S.D.N.Y. Mar. 11, 1992) ("Plaintiff relies on conclusory allegations, conjecture, and speculation to support its claim of jurisdiction over defendant.  Such allegations, conjecture, and speculation are insufficient to establish jurisdiction"); *see also Worldwide Futgol Assocs., Inc. v. Event Ent., Inc.*, 983 F. Supp. 173, 181–82 (E.D.N.Y. 1997) (the court does not have personal jurisdiction over defendant where plaintiff "merely speculates that the instant transaction may be "typical of the way [defendant] does business).

In essence, Plaintiffs allege no more than that certain redemption payments were made by Sentry and were received by certain unspecified defendants. *See* Compl. Ex. A (failing to identify alleged recipient of redemption payment); *id.* ¶ 20 ("BNP Paribas SSL and the Beneficial Shareholders … designated United States-based and/or New York-based bank accounts to receive their Redemption Payments from the Funds")  This is precisely the kind of undifferentiated group pleading that is not permitted on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2).  *See Tera Group, Inc. v. Citigroup, Inc.*, No. 17-cv-4302(RJS), 2018 WL 4732426, at *2-3 (S.D.N.Y. Sept. 28, 2018) ("group pleading – conflating UBS AG and UBS Securities LLC as 'UBS' – fails to establish personal jurisdiction over 'each defendant'"; further, allegations that point to all of the defendants as a group of "Dealer Defendants" was "group pleading of the rankest kind" and insufficient).

       3.    <ins>Alleged Use of Correspondent Account and Investment in U.S. Dollars Does Not Support Minimum Contacts</ins>.

Even if the Court were to assume that Defendant received redemption payments from Sentry (and as set forth above, it did not (Bouvignies Decl. ¶¶ 2, 3)), and those redemption

payments were paid through a correspondent account attributable to Defendant – and it should not – that is not sufficient for the Court to find jurisdiction over Defendant.[14]  This argument regarding the passive receipt of money transmitted by Sentry itself (but not Sigma) does not support the exercise of personal jurisdiction, either.

It is common knowledge that foreign financial institutions, like BNP Paribas SSL, often use correspondent accounts for receipt and transmittal of U.S. dollar payments, such as the redemption payments from Sentry, because foreign banks typically cannot hold U.S. dollar denominated funds. *See e.g., Société d'Assurance de l'Est SPRL v. Citigroup Inc.*, No. 10-civ-4754 JGK, 2011 WL 4056306 at *7 (S.D.N.Y. Sept. 13, 2011) (explaining that the defendants use correspondent bank accounts for the purpose of converting Congolese Francs to US dollars); *Tamam*, 677 F. Supp. 2d at 725 (noting that the defendant maintained correspondent bank accounts abroad in order to facilitate currency conversion and international financial transactions). The alleged redemption payments from Sentry traveled from Sentry in the BVI by way of its Irish custodian Citco Bank to Luxembourg-domiciled BNP Paribas SSL by way of a correspondent account located in New York maintained for the purpose of facilitating clearing the U.S. dollar transactions. *Fairfield III* at *6 ("All of the redemption payments were made by the Dublin Branch of Citco Bank where the Funds maintained accounts.").

The alleged incidental use of a bank account in the United States to facilitate U.S. dollar-denominated payments to settle a foreign securities transaction – here, the redemption of shares in

---

[14] As a threshold matter, Plaintiffs' correspondent account allegations do not support an exercise of personal jurisdiction over Defendant because there are no non-conclusory allegations that Defendant owned, controlled, or directed payments into such account. Plaintiffs allege that these were "BNP Paribas" correspondent accounts, and assert in wholly conclusory, non-defendant-specific fashion that payments were made into them "[p]er [s]hareholder [d]irection." Compl. Ex. A.

a BVI company by its Luxembourg shareholder allegedly for the benefit of a French Defendant –
does not, as a matter of controlling law, give rise to personal jurisdiction. Again, the redemption
payments at issue here were not directed by Defendant, and there is no allegation that Defendant
specifically took advantage of the U.S. financial system as the object of any purposeful conduct.
Rather, Defendant is alleged to have received payments made from one foreign party to another,
facilitated through foreign originating and receiving banks, and made under a foreign contract that
effectuated the redemption of securities issued by a foreign investment company. To the extent
the payments allegedly may have transited through a U.S.-based account during the course of that
transaction, it was solely for the purpose of facilitating that transfer in U.S. dollars under a foreign
contract. The mere use of a correspondent account by a foreign bank to clear transfers for a foreign
contract denominated in U.S. dollars does not, as a matter of law, confer jurisdiction. *See Hau Yin
To v. HSBC Holdings, PLC*, 2017 WL 816136, at *6. (S.D.N.Y. Mar. 1, 2017), *aff'd* 700 F. App'x
66 (2d Cir. 2017) (rejecting personal jurisdiction over foreign defendants because their alleged
connection to the forum was the transmission of information and funds "to and from BLMIS . . .
[as an] incidental consequence[] of fulfilling a foreign contract"); *Hill v. HSBC Bank PLC*, 207
F.Supp.3d 333, 340 (S.D.N.Y. 2016) (finding transmission of information and funds to and from
BLMIS to be "incidental consequences of fulfilling a foreign contract . . . insufficient to 'project'
the Foreign Defendants into New York" and "not amount[ing] to 'purposeful availment' of the
laws of" the forum); *Tamam*, 677 F. Supp. 2d at 727 ("Courts in this district have routinely held
that merely maintaining a New York correspondent bank account is insufficient to subject a foreign
bank to personal jurisdiction.") (citing cases).

New York clears hundreds of thousands of foreign dollar transactions valued at over
$1.5 trillion each day. *See generally Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1395 (2018) ("In

New York each day, on average, about 440,000 [Clearing House Interbank Payments System (CHIPS)] transfers," the system for most large banking transactions, "occur, in dollar amounts totaling about $1.5 trillion.").  If the incidental use of U.S.-based correspondent accounts were sufficient to confer personal jurisdiction over foreign entities, New York would become a forum for any foreign commercial dispute, contrary to federal and state policy, merely because global transactions are frequently cleared in U.S. dollars.  *See Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*, 12 N.E.3d 456, 459-60 (N.Y. 2014) ("Our state's interest in the integrity of its banks . . . is not significantly threatened every time one foreign national, effecting what is alleged to be a fraudulent transaction, moves dollars through a bank in New York."); *see also Universal Trading & Inv. Co., Inc. v. Tymoshenko*, 2012 WL 6186471, at *3 (S.D.N.Y. 2012) ("[C]ourts have long recognized that there are significant policy reasons which caution against the exercise of personal jurisdiction based only on a correspondent bank account.") (quotation omitted).

Plaintiffs have cited *Arcapita* in prior briefing to argue that using a correspondent account in New York is sufficient to confer personal jurisdiction, but *Arcapita* is inapposite because the contacts there were materially more purposeful than those alleged here.  *Official Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 70 (S.D.N.Y. 2016). *Arcapita* concerned an investment scheme in which the debtor entered into placement agreements with defendant banks that allowed the banks to propose investments by sending offers to Arcapita specifying the currency and bank account for Arcapita to transfer funds.  *Id.*  Arcapita accepted three investment offers designated by the banks in U.S. dollars payable to correspondent accounts in New York.  *Id.*  The bankruptcy court found it had personal jurisdiction over the banks because the banks purposefully selected U.S. dollars and New York accounts, when under the placement

20

agreements the banks could have selected any currency and any account anywhere in the world. *See Id.* at 69-70 (noting bank could have selected accounts "anywhere . . . in the United States" and chose New York). *Id.*

Unlike in *Arcapita*, here Defendant did not select U.S. dollars as the base currency for alleged investments with Sentry; Sentry chose the base currency. *See* Sentry Articles, Arts. 1, 10(1)(c) (defining "Base Currency" as "the currency of the United States of America" and stating "payment shall be made to the Applicant in the Base Currency in respect of the redemption or purchase of Shares"). BNP Paribas SSL's use of a correspondent account in New York was necessitated by the BVI-based Sentry's choice of U.S. dollars and was incidental to its alleged foreign law contract with Sentry. This is not a purposeful U.S. contact. *See Tymoshenko*, 2012 WL 6186471, at *3 ("[C]ourts have long recognized that there are significant policy reasons which caution against the exercise of personal jurisdiction based only on a correspondent bank account."). The only purposeful act taken by Defendant alleged in the Complaint was its decision to invest in a BVI investment company and its alleged request to redeem funds from that company. The alleged receipt of payments occurred because Defendant decided to redeem shares through BNP Paribas SSL in the BVI. The alleged redemption of shares was the only immediate result of Defendant's affirmative conduct, and not the alleged receipt of redemption payments, which merely settled the securities transaction between BNP Paribas SSL and the Funds.

Plaintiffs have also relied on *Licci ex rel. Licci v. Lebanese Can. Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) to argue that use of a correspondent account in New York is itself sufficient to establish specific jurisdiction over Defendant, but Plaintiffs' reliance on *Licci* is misplaced. In *Licci*, the Second Circuit concluded that wire transfers from a correspondent bank account could establish personal jurisdiction when the transfers are part of the "principal wrong" alleged. *Id.* at

170-71.  The principal wrong in that case was the intentional use of a correspondent account to fund terrorist activity in violation of statutory duties in antiterrorism laws.  *See id.* at 171.

Here, there is no allegation that the transmission of funds through BNP Paribas SSL's purported correspondent account is the principal wrong that Plaintiffs are suing on.  *Plaintiffs allege no fraudulent scheme or breach of duty by Defendant at all*.  Plaintiffs bring a narrow, equitable claim to unwind a payment by the Funds' agent, Citco Fund Services, in breach of a duty that the agent may have owed to the Funds.  If money passed through a correspondent account in New York, that is entirely incidental to Plaintiffs' claims about a breach by Citco Fund Services and accordingly is insufficient to establish jurisdiction.  *See Hau Yin To*, 2017 WL 816136, at *7 n.6 (finding use of correspondent account incidental).  Similarly, Plaintiffs have relied on *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316 (2016), where the plaintiff alleged that the defendant knowingly used a correspondent account to launder money and pay bribes.  *Al Rushaid*, 28 N.Y.3d at 328.  But *Al Rushaid* simply reaffirms the holding of *Licci* that use of a correspondent account that is "integral" to an illegal scheme is sufficient to establish jurisdiction over a claim arising out of the scheme.  Defendant's alleged use of a correspondent account is entirely incidental, not integral, to Plaintiffs' claim and thus is not sufficient.  *Hau Yin To*, 2017 WL 816136, at *7 n.6 (distinguishing *Al Rushaid* as limited to use integral to fraud).

4.  Citco Bank's Use of a Correspondent Account Is Irrelevant to the Minimum Contacts Analysis

Plaintiffs advance a related argument that the Funds' own custodian, Citco Bank, based in Ireland, used a correspondent account to transfer Sentry redemption payments.  *See* Compl. Ex. A. Even if Defendant received redemption payments from Sentry – and again, it did not – there is no allegation that Defendant was involved in the selection of this correspondent account by the Funds' agent.  The fact that Citco Bank unilaterally chose to use a correspondent account is irrelevant to

22

whether the Court may exercise jurisdiction over *Defendant* because jurisdiction must be based on

the *defendant's* contacts with the forum, not plaintiff's. *See Walden*, 571 U.S. at 284; *Helicopteros*

*Nacionales*, 466 U.S. at 417 ("[The] unilateral activity of another party or a third person is not an

appropriate consideration when determining whether a defendant has sufficient contacts with a

forum State to justify an assertion of jurisdiction.").

**B.    The Exercise of Personal Jurisdiction Over Defendant Would Be Unreasonable**

Even if there existed sufficient "minimum contacts" to establish personal jurisdiction over

Defendant, the Court's exercise of jurisdiction must also be reasonable under the circumstances

for such exercise to be consistent with due process. *World-Wide Volkswagen Corp. v. Woodson*,

444 U.S. 286, 297 (1980) ("The Due Process Clause . . . gives a degree of predictability to the

legal system that allows potential defendants to structure their primary conduct with some

minimum assurance as to where that conduct will and will not render them liable to suit." (citation

omitted)). Courts apply a "sliding scale" in assessing whether jurisdiction is consistent with due

process: "the weaker the plaintiff's showing on minimum contacts, the less a defendant needs to

show in terms of unreasonableness to defeat jurisdiction." *In re CIL Limited*, 582 B.R. 46, 79

(Bankr. S.D.N.Y. 2018) (internal quotation marks and citation omitted); *see also Porina v.*

*Marward Shipping Co., Ltd.*, 2006 WL 2465819, at *6 (S.D.N.Y. Aug. 24, 2006) ("[I]f a

defendant's contacts with the United States are weak, the plaintiff has to make a stronger showing

of reasonableness in order to show that jurisdiction over the defendant is proper."). In evaluating

the reasonableness of exercising personal jurisdiction, "[a] court must consider the burden on

defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Asahi*,

480 U.S. at 113.

Plaintiffs here seek to rely on the most incidental of contacts (if any) to establish

jurisdiction. *See supra* Pt. A. Plaintiffs must therefore make a *stronger showing* that the exercise

of jurisdiction would be reasonable, but each of the factors that the Court must assess in determining reasonableness weigh against exercising jurisdiction:  the U.S. has a minimal (if any) interest in this litigation, the burden on Defendant in litigating here is high, and Plaintiffs cannot show that New York is more reasonable than other available forums including the BVI, Luxembourg, or France.  Because the alleged contacts are insignificant and all of the reasonableness factors weigh against the Court's exercise of jurisdiction, the Court should dismiss Defendant.

*First*, the United States' interest in adjudicating this dispute is minimal at best.  The dispute is between exclusively foreign parties arising solely under foreign law pursuant to a foreign contract governing a purely foreign transaction.  The case was only brought before this Court because Plaintiffs mistakenly believed that Defendant had consented to jurisdiction – a position now conclusively rejected by the Court.  Had Plaintiffs not filed a petition for Chapter 15 recognition, there would be no subject matter jurisdiction in federal court over this claim at all for what is a private dispute between foreign parties.  *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 685 (S.D.N.Y. 2011) (Preska, J.) ("[T]hese claims are disputes between two private parties that have existed for centuries and are 'made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789.'").  The claim for knowing receipt is itself non-core, there are no alleged debtor assets in the United States, and Plaintiffs have not sought relief in their pending Chapter 15 case in years.  *Id.* at 682  ("Here, there are no assets in the United States.  The Plaintiffs' actions seek assets, so their location is relevant.  Plaintiffs do not seek discovery or stays of proceedings in the United States.  Thus, *the ancillary character of the Chapter 15 cases here is at a low ebb*—it is certainly not within the core jurisdiction of the bankruptcy court to aid the BVI courts in these cases because there are no assets sought in the United States."  (emphasis added)).

24

The Supreme Court has cautioned against finding jurisdiction over such a claim between *foreign* parties arising under *foreign* law.  *Asahi*, 480 U.S. at 115 ("Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field."); *see also Mashreqbank PSC*, 12 N.E.3d at 459-60 (noting minimal interest of New York in pursuing every purported fraud that passes through correspondent accounts).

      *Second*, defending Plaintiffs' claim before this Court would impose substantial burdens on Defendant.  Defendant is French, and discovery of documents about these redemption payments in the United States would potentially expose Defendant to civil and criminal liability in its home country.  *See* Bench Ruling Granting in Part and Denying in Part the Foreign Representatives Mot. Seeking Limited Relief, *Fairfield Sentry Ltd., (In Liquidation), et al., v. Theodoor GGC Amsterdam, et al.*, No. Adv. Pro. No. 10-03496, ECF No. 799-2 (July 19, 2012) ("The various respondents have described . . . the strong and undeniable interest of many nations in enforcing their banking secrecy laws.  Thus, yielding to the Foreign Representative's Disclosure Request implicates the significant bank customer confidentiality laws of no fewer than 30 countries . . . . As such, this Court is hard-pressed to find any compelling United States' interest in mandating discovery here at this juncture of the pending litigation.").

      *Third*, Plaintiffs have not demonstrated that it is more reasonable for them to litigate their claims against Defendant in New York rather than in the BVI, where the Funds are at home and where a court is administrating its main bankruptcy proceeding, or in France, where Defendant is at home and where French courts could address the privacy and bank secrecy interests.  *See, e.g.*, Cutajar Decl. ¶¶ 11-21.  Indeed, Plaintiffs initially chose the BVI as the preferable and most convenient forum to pursue related claims.  Only upon losing at the highest level in the BVI court system did Plaintiffs then discontinue their suits in that forum, and improperly continue them here

25

under new legal theories in what they hoped would be a more advantageous forum. *See Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1031 (2021) (noting that jurisdiction had been found improper where "the plaintiffs were engaged in forum-shopping"). Plaintiffs' strategic maneuvering undercuts any claim that it is more reasonable for them to litigate their claims here in New York rather than elsewhere and confirms that the assertion of personal jurisdiction over Defendant in this Court would be unreasonable.

Courts have held that defendants should be dismissed in circumstances where their "contacts with [the forum] only 'barely satisfy[y] the minimum contacts standard,'" and "a majority of the reasonableness factors weigh against the exercise of jurisdiction." *See, e.g.*, *Rocky Mountain Chocolate Factory v. Arellano*, 2017 WL 4697503, at *11 (D. Colo. Oct. 19, 2017) (quoting *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004); *Benton*, 375 F.3d at 1080 (The defendant's "contacts with [the forum] were quite limited, barely satisfying the minimum contacts standard. As a result, [the defendant] need not make a particularly strong showing in order to defeat jurisdiction under this reasonableness inquiry. Because the majority of the . . . reasonableness factors weigh in [the defendant's] favor, . . . exercise of personal jurisdiction . . . would offend traditional notions of fair play and substantial justice."); *Manko Window Systems, Inc. v. Prestik*, 2017 WL 4355580, at *9 (D. Kan. Sept. 29, 2017) ("[B]ecause [Defendant's] contacts with Kansas are weak and because the reasonableness factors discussed above counsel against the exercise of personal jurisdiction, the Court grants Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2)."). Assuming *arguendo* that the Plaintiffs can make a showing that the minimum contacts standard is satisfied, such a showing could only be by the narrowest of margins and dismissal would be warranted on the basis of the reasonableness factors.

## CONCLUSION

Because the Complaint fails to provide "any basis to demonstrate that [this Court] would have . . . personal jurisdiction" over Defendant, the Court should grant the instant motion to dismiss Defendant. *See Spiegel v. Schulman*, 604 F.3d 72, 78 (2d Cir. 2010).

Dated: October 29, 2021
       New York, New York

Respectfully submitted,

ALLEGAERT BERGER & VOGEL LLP

By: */s/ John F. Zulack*
     John F. Zulack
     Christopher Allegaert
     Lauren J. Pincus
     Bianca Lin

111 Broadway, 20th Floor
New York, NY 10006
T: 212-571-0550
F: 212-571-0555
jzulack@abv.com
callegaert@abv.com
lpincus@abv.com
blin@abv.com

*Counsel for Rothschild & Co Asset Management Europe (formerly known as Rothschild & Cie Gestion), as manager of the Elan Gestion Alternative fund (sued as Rothschild & Cie Banque-EGA)*

27