**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 Case |
| FAIRFIELD SENTRY LIMITED, et al., | Case No. 10-13164 (CGM) |
| Debtor in Foreign Proceedings. | Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | Adv. Pro. No. 10-03496 (CGM) |
| Plaintiffs, | |
| v. | Administratively Consolidated |
| THEODOOR GGC AMSTERDAM, et al., | |
| Defendants. | |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | Adv. Pro. No. 10-03627 (CGM) |
| Plaintiffs, | |
| v. | |
| BNP PARIBAS SECURITIES SERVICES LUXEMBOURG, et al., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ANIMA SGR S.P.A (F/K/A CLESSIDRA SGR S.P.A)'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION UNDER RULE 12(B)(2)**

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ...................................................................................... 1

II.  BACKGROUND ............................................................................................................. 5

III.  ARGUMENT ................................................................................................................... 8

    A.  Anima's Alleged Contacts with the Forum Are Insufficient to Establish
        Jurisdiction ............................................................................................................ 8

        1.  Alleged Foreseeability of Sentry's Investment in BLMIS Does Not Satisfy
            Minimum Contacts ..................................................................................... 9

        2.  Alleged Use of Correspondent Account and Investment in U.S. Dollars
            Does Not Support Minimum Contacts ...................................................... 13

        3.  Citco Bank's Use of a Correspondent Account is Irrelevant to the
            Minimum Contacts Analysis ..................................................................... 18

    B.  The Exercise of Personal Jurisdiction Over Anima Would Be Unreasonable ...... 19

IV.  CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316 (2016).......................................................18

*Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102 (1987) .......................11, 14, 19, 20

*Benton v. Cameco Corp.*, 375 F.3d 1070 (10th Cir. 2004) ...........................................22

*Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68 (2d Cir. 2018)....................................8

*In re CIL Limited*, 582 B.R. 46 (Bankr. S.D.N.Y. 2018)................................................19

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ...............................................................9

*El Ajou v. Dollar Land Holdings Ltd.* (1994) ...............................................................7

*In re Fairfield Sentry Ltd.*, 596 B.R. 275 (Bankr. S.D.N.Y. 2018) ...........................................8, 12

*In re Fairfield Sentry Ltd.*, 627 B.R. 546 (S.D.N.Y. Bankr. 2021) (Morris, C.J.)...................10, 11

*In re Fairfield Sentry Ltd.*, Adv. Pro. No. 10-03496 (SMB), 2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021) ...............................................................7

*Fairfield Sentry Ltd. (in Liquidation) v. Migani* UKPC 9 (2014)...............................................6, 8

*In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665 (S.D.N.Y. 2011) (Preska, J.) ..............................20

*In re Fairfield Sentry Ltd.*, No. 10-03496 (SMB), 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ...............................................................3, 7, 8, 10

*In re Fairfield Sentry Ltd.*, No. 10-13164 (SMB), 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020).......................................................10, 13, 14

*Fairfield Sentry Ltd. v. Citibank NA London*, No. 19-cv-3911 (VSB) (S.D.N.Y. July 21, 2021) ...............................................................1, 3, 21

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. July 28, 2016)...............................................................3, 6

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017 (2021) ...........................21

*Hau Yin To v. HSBC Holdings, PLC*, No. 15-CV-3590-LTS-SN, 2017 WL 816136, . (S.D.N.Y. Mar. 1, 2017), *aff'd* 700 F. App'x 66 (2d Cir. 2017)........................................15, 18

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ..............................9, 19

*Hill v. HSBC Bank PLC*, 207 F.Supp.3d 333 (S.D.N.Y. Sept. 15, 2016)......................................15

*J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011) ...........................................................12

*Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386 (2018) .....................................................................16

*Koehler v. Bank of Berm. Ltd.*, 101 F.3d 863 (2d Cir. 1996)..........................................................8

*Langenberg v. Sofair*, No. 03 CV 8339 KMK, 2006 WL 2628348 (S.D.N.Y. Sept. 11,
    2006) ...........................................................................................................................................8

*Licci ex rel. Licci v. Lebanese Can. Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) ......................17, 18

*Manko Window Systems, Inc. v. Prestik*, No. 16-2818-JAR-JPO, 2017 WL 4355580 (D.
    Kan. Sept. 29, 2017) ................................................................................................................22

*Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*, 12 N.E.3d 456 (N.Y. 2014) ..16, 21

*In re Mexican Gov't Bonds Antitrust Litig.*, No. 18-CV-2830 (JPO), 2020 WL 7046837
    (S.D.N.Y. Nov. 30, 2020) ........................................................................................................13

*Official Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56
    (Bankr. S.D.N.Y. 2016) ......................................................................................................16, 17

*Picard v. Bureau of Labor Ins. (In re Sec. Inv'r Prot. Corp.)*, 480 B.R. 501 (Bankr.
    S.D.N.Y. 2012) (Lifland, J.) .....................................................................................................13

*Porina v. Marward Shipping Co.*, No. 05 CIV. 5621 (RPP), 2006 WL 2465819 (S.D.N.Y.
    Aug. 24, 2006) ..........................................................................................................................19

*Rocky Mountain Chocolate Factory v. Arellano*, No. 17-cv-0582-WJM-CBS, 2017 WL
    4697503 (D. Colo. Oct. 19, 2017) ...........................................................................................22

*Société d'Assurance de l'Est SPRL v. Citigroup Inc.*, No. 10-civ-4754 JGK, 2011 WL
    4056306 (S.D.N.Y. Sept. 13, 2011)..........................................................................................14

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521
    (S.D.N.Y. 2017)...........................................................................................................................8

*Spiegel v. Schulman*, 604 F.3d 72 (2d Cir. 2010) ........................................................................22

*Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17 (2d Cir. 2004) .............................................8

*Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720 (S.D.N.Y. 2010) .....................................4, 14, 15

*In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659 (2d Cir. 2013)................................9

*U.S. Bank National Association v. Bank of America N.A.*, 916 F.3d 143 (2d Cir. 2019) ..............10

*Universal Trading & Inv. Co., Inc. v. Tymoshenko*, No. 11 Civ. 7877 (PAC) 2012 WL
6186471 (S.D.N.Y. 2012) ...............................................................................................16, 17

*Walden v. Fiore*, 571 U.S. 277 (2014) ................................................................................. *passim*

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317 (2d Cir. 2016) ...........................................8

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ...............................................19

Defendant Anima SGR S.p.A. (f/k/a Clessidra SGR S.p.A.) Anima(sued as "Milan Clessidra a/k/a Clessidra SGR SpA Anima," and hereinafter referred to as "<u>Anima</u>"), an Italian hedge fund, by and through its undersigned counsel, submits this memorandum of law in support of its motion to dismiss the Fifth Amended Complaint ("<u>Complaint</u>," Dkt. 143) filed by Plaintiffs as the liquidators for Fairfield Sentry Ltd. ("<u>Sentry</u>") and Fairfield Sigma Ltd. ("<u>Sigma</u>," and together with Sentry, "<u>Plaintiffs</u>" or the "<u>Funds</u>") pursuant to Federal Rule of Civil Procedure 12(b)(2).

## I.    PRELIMINARY STATEMENT

After three separate decisions from this Court largely granting prior motions to dismiss, Plaintiffs' only remaining claim (constructive trust) is one for knowing receipt under British Virgin Islands ("<u>BVI</u>") law.  Through their final remaining claim, Plaintiffs ask this Court to sit as a BVI Court of equity would in order to adjudicate whether redemption payments paid by two BVI funds to Anima, an Italian fund, must be returned.  Plaintiffs have not established that the Court has personal jurisdiction over Anima with respect to such claims.  Indeed, Plaintiffs allege virtually nothing specifically about Anima, mentioning it by name in only a single paragraph that asserts that (a) "some or all" redemptions "may have been paid to" Anima, and (b) Anima is "a corporate entity organized under the laws of Italy and having has [sic] its registered address at Via del Lauro, 7, Milan, MI 20121, Italy."  Compl. ¶ 44.

In light of the paucity of Anima-specific allegations, the bulk of this brief necessarily addresses Plaintiffs' allegations and arguments directed either to other defendants or to all defendants as an undifferentiated group.  With respect to those allegations, the only purported connection between the transfers and New York is that money passed through a correspondent bank account held at BNP Paribas in New York on its way from the Funds' Irish custodian, the

1

Dublin branch of Citco Bank Nederland N.V. ("Citco Bank"), to Anima in Italy. Indeed, Plaintiffs'

allegations demonstrate that every relevant and material aspect of the case is foreign:

- Anima is an Italian fund organized under the laws of and located in Italy. It is not alleged to conduct any business in the United States.

- The Funds are BVI hedge funds that are now in liquidation in their home jurisdiction of the BVI.

- Anima, or its record holder (*i.e.*, BNP Paribas Securities Services Luxembourg ("BNP Paribas SSL")), was contractually due the redemption under the Funds' Articles of Association (the "Articles"), which are corporate documents governed by BVI law.

- The Articles provide a BVI contractual right to redeem shares in the Funds at that Fund's Net Asset Value ("NAV") when the shares were tendered to the Fund's Dutch administrator, Citco Fund Services (Europe) B.V. ("Citco Fund Services" or "Citco Administrator").

- Citco Fund Services, which is alleged to have calculated the NAV, is located abroad in the Netherlands.

- Plaintiffs allege no relevant activities by Anima in or directed at the United States.

Plaintiffs have elsewhere, when it has served their purposes, acknowledged the foreign

nature of these lawsuits. As recently as July of this year – barely three months ago – Plaintiffs told

the District Court in a pending appeal seeking reinstatement of certain dismissed claims:[1]

> ***The redemption transfers at issue here were purely foreign***. The Citco Administrator (a foreign entity) managed the share register and processed the redemption requests abroad, and the Funds (also foreign entities) transferred redemption payments to Defendants (also chiefly foreign entities). . . . As Defendants concede, ***every relevant component of the transactions at issue here occurred outside the territorial jurisdiction of the United States***.

---

[1] The appeal concerns whether the Section 546(e) safe harbor bars Plaintiffs' now-dismissed statutory avoidance claims. Plaintiffs argue that the safe harbor does not bar foreign transfers, like those at issue here. Anima agrees that the transfers were foreign, but argues that the location of the transfer is immaterial to the application of the safe harbor in these proceedings.

Pls'-Appellants' Opening Br. for Second-Round Appeal at 24, *Fairfield Sentry Ltd. v. Citibank NA London*, No. 19-cv-3911 (VSB) (S.D.N.Y. July 21, 2021), Dkt. 440 ("Plaintiffs' Appeal") (emphasis added and internal citations omitted).

The foreign claim before this Court was only filed in this Court because Plaintiffs made a mistake of law more than a decade ago.  Specifically, Plaintiffs mistakenly read the subscription agreement for the purchase of shares in the Funds as providing a basis to pursue their claim against Anima in New York.  This Court rejected that theory because Plaintiffs' claims are for redemptions and does not arise out of the subscription agreements.  *In re Fairfield Sentry Ltd.*, No. 10-03496 (SMB), 2018 WL 3756343, at *11 (Bankr. S.D.N.Y. Aug. 6, 2018) ("*Fairfield I*") (adhering to the Privy Council's holding "that the Subscription Agreement was irrelevant to actions to recover the inflated redemption payments").  This has left Plaintiffs grasping to justify the legal basis for litigating against Anima and dozens of others in New York, a forum with no connection to the redemption transaction at issue.  As this Court noted during argument:

> It just sounds like you litigated these issues or you should litigate them in the BVI. I don't understand why they're here. . . . [A]t some point you commenced these cases here. . . .  And the question is why you didn't commence them in the BVI?

*See* Tr. Of July 27, 2016 Hr'g. at 11-14, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. July 28, 2016), Dkt. No. 906.

To Anima's knowledge, Plaintiffs have advanced only two purported bases for personal jurisdiction in prior briefing in an attempt to avoid the inevitable conclusion that this lawsuit does not belong here.  As discussed herein, neither of those bases satisfies the U.S. Constitution's minimum contacts test for exercising jurisdiction over Anima.

*First*, Plaintiffs argue that the minimum contacts test is satisfied because Anima knew that the Funds were directly or indirectly investing the Funds' own money with Bernard L. Madoff

Investment Securities LLC ("BLMIS").  But this allegation is not relevant to Plaintiffs' actual claim (*i.e.*, knowing receipt), which turns on the *foreign redemption* payments from the Funds and their allegations of Citco Fund Services' bad faith calculation of those payments in the Netherlands. *See* Compl. ¶¶ 8, 17.  Plaintiffs' claims here are not about, and do not arise out of, any investment with BLMIS.  Even if the Funds' investments with Madoff were relevant, however, those investments were not made by Anima and are not the sort of minimum contacts that would support personal jurisdiction over Anima.  As the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014) establishes, the defendants' knowledge of the *plaintiffs'* contacts with the forum (here, the Funds' contacts with BLMIS) are insufficient to establish personal jurisdiction.

*Second*, Plaintiffs allege that redemption payments from Sentry to  BNP Paribas SSL were paid to an account in the United States.  *See* Compl. ¶ 20; Ex. A.  But the law is clear that mere use of a bank account at a U.S. financial institution to facilitate the receipt of dollar-denominated payments does not subject BNP Paribas SSL, let alone Anima, to personal jurisdiction in the United States.  *See Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010) ("Courts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction." (citing cases)).  Foreign banks often maintain correspondent accounts denominated in dollars to facilitate the clearing of foreign dollar transactions.  These accounts are both common, because foreign banks cannot generally directly hold dollar accounts in their home countries, and essential to international commerce and to the economy because they facilitate clearance of more than a trillion dollars in transactions each day.  Making a payment in U.S. dollars, and facilitating that payment through a U.S. bank account, has been widely recognized in this Circuit not to give rise to personal jurisdiction; were it otherwise, virtually anyone in the world who does business in U.S. dollars

would potentially be subject to personal jurisdiction in New York. Moreover, Plaintiffs' claims do not arise out of the use of any correspondent account, even if such use were a sufficiently purposeful contact.

*Finally*, even if minimum contacts were satisfied, the exercise of jurisdiction would be unreasonable under the circumstances and, for that reason, impermissible. The majority of relevant evidence (if not all of it) is overseas in the BVI, the Netherlands, France, or Italy. The United States has little to no interest in adjudicating this foreign law claim between exclusively foreign parties for the recovery of purely foreign payments under a foreign law contract. The federal court system only has subject matter jurisdiction over the case because the claim is related to an ancillary Chapter 15 case that effectively serves no purpose other than as a vehicle for forum shopping. Plaintiffs' interests in litigating in this forum similarly are very low. They have proffered no reason why the United States is a more reasonable forum than their home jurisdiction of the BVI or Anima's home jurisdiction of Italy. Lastly, the burden on Anima to litigating in New York is significant. The witnesses and evidence in this action are all overseas and Anima, an Italian fund, is subject to binding obligations under foreign secrecy and privacy law that may potentially expose Anima to serious penalties in Italy to the extent the case proceeds into discovery.

For these reasons, Anima respectfully submits that the claims against it should be dismissed for lack of personal jurisdiction.

## II.    BACKGROUND

These cases are ancillary to the foreign liquidation of the Funds in the BVI. The Funds were placed into liquidation in 2009 before the Commercial Division of the Eastern Caribbean High Court of Justice, British Virgin Islands after BLMIS's fraud was publicly revealed. [2]

---

[2] Compl. ¶ 28.

5

Between October 2009 and March 2010, Plaintiffs commenced actions in the BVI against a number of the Funds' alleged investors seeking restitution on the theory that the Funds mistakenly made redemption payments prior to BLMIS's collapse, [3] and contemporaneously (and subsequently) brought more than 300 actions in the United States against a partially overlapping group of defendants with overlapping theories of liability. Plaintiffs repeatedly have asserted that they brought their claims in the United States based on the (mistaken) belief that defendants consented to personal jurisdiction in New York when they signed subscription agreements for the Funds containing a forum selection clause.[4] The New York actions, including this action against Anima, were consolidated before this Court after the Funds' foreign liquidators' petitions for Chapter 15 recognition were granted. The cases shortly thereafter were stayed pending resolution of the BVI actions, which were poised to present potentially dispositive rulings on claims in the BVI and New York actions.

In 2014, the Privy Council, the court of last resort for appeals from the BVI, affirmed dismissal of the Liquidators' BVI law claims for restitution based on mistake. Starting in 2016, after receiving that unfavorable decision, Plaintiffs discontinued all remaining BVI actions,[5] and

---

[3] *See* Declaration of William Hare in Support of Motion for Leave to Amend, ¶ 15, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-03627-cgm (S.D.N.Y. Oct. 21, 2016), Dkt. No. 925 (the "Hare Decl.").

[4] *See* Tr. July 27, 2016 Hr'g. at 11-14, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-3496 (Bankr. S.D.N.Y. July 28, 2016), Dkt. No. 906 ("THE COURT: It just sounds like you litigated these issues or you should litigate them in the BVI. I don't understand why they're here. [Counsel for Plaintiffs]: Well, Judge, the issues are here because there's a forum selection clause, and because the cases are here.").

[5] *See* Hare Decl. ¶ 68. In the BVI Court, the Liquidators unsuccessfully litigated on a "mistaken" payment theory, premised on the Fund's alleged miscalculation of their NAV. The Liquidators lost those claims at all levels of the BVI court system. *See Fairfield Sentry Ltd. (in Liquidation) v. Migani* [2014] UKPC 9, ¶ 23 ("Migani") (concluding the Liquidators' approach is "an impossible construction"). They also lost on their claim that redeeming investors did not give good consideration for the redemptions.

began prosecuting the New York actions under a new theory that the payment of the redemptions was not merely mistaken but the result of bad faith by the Funds' administrator, Citco Fund Services.

This Court has issued several decisions largely rejecting Plaintiffs' claims and personal jurisdiction arguments, although it has not fully resolved the issue of personal jurisdiction in each individual case. Relevant to the Court's personal jurisdiction analysis in this case now, in August 2018, the Court held that the instant action did not arise out of the subscription agreements and that the forum selection clause contained in the subscription agreements accordingly did not apply.[6]

The sole remaining claim against Anima in this action is a knowing receipt claim. *See* Compl. ¶¶ 179-93. Knowing receipt is a specific type of equitable claim that permits a BVI court to find that the circumstances of a transfer of assets is such that, although the recipient received legal title and possession, equitable title was retained by the transferor – rendering the transferee an involuntary trustee. To plead a claim for knowing receipt, "the plaintiff must show, first, a disposal of his assets in breach of fiduciary duty; second, the beneficial receipt by the defendant of assets which are traceable as representing the assets of the plaintiff; and third, knowledge on the part of the defendant that the assets he received are traceable to a breach of fiduciary duty." *In re Fairfield Sentry Ltd.*, Adv. Pro. No. 10-03496 (SMB), 2021 WL 771677, at *3 (Bankr. S.D.N.Y. Feb. 23, 2021) ("*Fairfield IV*") (quoting *El Ajou v. Dollar Land Holdings Ltd.* [1994] 2 All E.R. 685, 700). Plaintiffs here are pursuing this relief with respect to redemption payments allegedly

---

[6]    *Fairfield I*, 2018 WL 3756343, at *12 ("[W]hile the Subscription Agreement governs subscriptions and refers to the Articles, the Articles govern redemptions and make no mention of the Subscription Agreement…Accordingly, the Defendants' consent to the Subscription Agreement does not constitute consent to personal jurisdiction . . . .").

made to defendants in this action under this BVI-law "knowing receipt" theory. *See* Compl. Ex. A. The amount of those redemption payments was allegedly premised on the NAV of the Funds as calculated by the Funds and their administrative agent, Citco Fund Services. The redemption payments themselves were owed under an enforceable contract upheld, notwithstanding BLMIS's fraud, both by the Privy Council and this Court. *Migani*, ¶¶ 21-24; *In re Fairfield Sentry Ltd.*, 596 B.R. 275, 295-97 (Bankr. S.D.N.Y. 2018) ("*Fairfield II*").

## III.    ARGUMENT

### A.    Anima's Alleged Contacts with the Forum Are Insufficient to Establish Jurisdiction

This Court has previously held that defendants in these cases did not consent to personal jurisdiction in New York by subscribing to the Funds. *See Fairfield I*, 2018 WL 3756343, at *12. Plaintiffs do not allege any other form of consent to jurisdiction in the United States and, accordingly, must identify some basis other than consent to carry their "burden of establishing jurisdiction over the defendant." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 334 (2d Cir. 2016) (quoting *Koehler v. Bank of Berm. Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996)). Plaintiffs must make this showing with respect to "*each defendant*," *Langenberg v. Sofair*, No. 03 CV 8339 KMK, 2006 WL 2628348, at *6 (S.D.N.Y. Sept. 11, 2006) (emphasis in original), and "*each* claim asserted." *Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 586 (S.D.N.Y. 2017) (quoting *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)) (emphasis in original). At the motion to dismiss stage, Plaintiffs bear the pleading burden and "must make a prima facie showing that jurisdiction exists" over Anima consistent with due process. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018) (internal quotation marks omitted). Where they have not done so, their claims should be dismissed.

8

Plaintiffs do not allege that the Court has general jurisdiction over Anima, an Italian fund that is not "at home" in the United States, and so must plead facts supporting the exercise of specific jurisdiction over Anima.  *See Daimler AG v. Bauman*, 571 U.S. 117, 136-37 (2014).  To do so, Plaintiffs must assert that (1) their claims arise out of Anima's sufficient "minimum contacts with the relevant forum," and (2) "the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted).  The minimum contacts inquiry focuses on "the relationship among the defendant, the forum, and the litigation," a relationship that "must arise out of contacts that the defendant *himself* creates with the forum State."  *Walden*, 571 U.S. at 284 (quotations omitted) (emphasis in original).  Plaintiffs have failed to meet this pleading burden.

### 1.      Alleged Foreseeability of Sentry's Investment in BLMIS Does Not Satisfy Minimum Contacts

Plaintiffs assert that this Court has jurisdiction over Anima based on an allegation in the Complaint that Anima invested in the Funds while "knowing and intending that the Funds would invest substantially all of that money" in BLMIS.  *See* Compl. ¶ 20.  But that allegation is jurisdictionally irrelevant for at least three reasons.

*First*, the allegation that, when it purchased shares in the Funds, Anima knew that *the subscription payments* into the Funds may be comingled with subscriptions from others, and the net surplus of those payments (in excess of redemption payments) would be invested *by the Funds* with BLMIS, is entirely unrelated to Plaintiffs' claim against Anima and thus cannot support jurisdiction.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").  Plaintiffs' claim is not predicated on whether or not the funds they are

seeking to recover ever were placed with or controlled by BLMIS. In fact, the Plaintiffs seek to recover these payments regardless of whether or not they were ever actually invested in BLMIS. Furthermore, Plaintiffs' claim is not premised on the decision to *invest* with the Funds as the basis for either liability or jurisdiction. *See Fairfield I*, 2018 WL 3756343, at *17-27 (finding subscription agreements irrelevant to claim because not based on subscription). Rather, Plaintiffs' claim for knowing receipt relates to and arises out of the calculation of the NAV calculated by the foreign Funds' Dutch administrator, Citco Fund Services, and the Funds' subsequent alleged disbursement of redemption payments on the basis of those calculations from their Irish bank accounts. *See* Compl. ¶¶ 136, 159, 178. Requests for such redemptions were made by tendering shares to Citco Fund Services in the Netherlands and the redemptions were funded from the Funds' bank accounts held at Citco Bank in Ireland. *See In re Fairfield Sentry Ltd.*, No. 10-13164 (SMB), 2020 WL 7345988, at *7 (Bankr. S.D.N.Y. Dec. 14, 2020) ("*Fairfield III*") (finding all transfers paid by Citco Bank). As the Plaintiffs have elsewhere conceded, every material element of the transaction is "purely foreign." Plaintiffs' Appeal at 24.

For the same reason, *U.S. Bank National Association v. Bank of America N.A.*, 916 F.3d 143 (2d Cir. 2019), which this Court applied to hold that it may exercise jurisdiction over Andrés Piedrahita in its decision in the Fairfield Greenwich Group case, *In re Fairfield Sentry Ltd.*, 627 B.R. 546, 568 (S.D.N.Y. Bankr. 2021) (Morris, C.J.) ("*FGG*"), does not establish jurisdiction here. *U.S. Bank* found specific jurisdiction in Indiana over a defendant that made misrepresentations while selling a bundle of mortgages because the misrepresentations related specifically to a mortgage for an Indiana property and breach of a promise to cure by taking action in Indiana. *See U.S. Bank*, 916 F.3d at 151-52 (describing breach and obligation to cure). In *FGG*, this Court found specific jurisdiction over Mr. Piedrahita with respect to claims for the return of management

and performance fees he received from FGG because he earned these fees by performing work that involved him spending a "substantial amount of time" in New York. *FGG*, 627 B.R. at 568. Unlike in those cases, the claims against Anima are not based on any action taken by Anima in the United States. Quite the opposite: Plaintiffs seek to recover against Anima because Citco Fund Services, which was the Funds' agent in the Netherlands, purportedly breached a duty it owed to the Funds in the BVI when it paid money to BNP Paribas SSL, a French financial institution, who then allegedly paid such funds to Anima, an Italian fund. None of those facts has anything to do with the United States.

*Second*, mere knowledge that Sentry would invest the money it raised in the BVI with BLMIS in New York is insufficient as a matter of law to support jurisdiction. The Supreme Court's decision in *Walden* is dispositive on this point. In *Walden*, a Nevada-based plaintiff sued a Georgia police officer in Nevada court for an unlawful seizure of money in a Georgia airport. *See Walden*, 571 U.S. at 288. The police officer knew that the plaintiff had connections to Nevada and that the seizure would delay return of plaintiff's property to Nevada, but the Supreme Court nonetheless held it unconstitutional to exercise personal jurisdiction over the police officer in Nevada. *See id.* at 289. As the Supreme Court explained, the foreseeability of plaintiff's connection to the forum is irrelevant to whether there is jurisdiction over defendant because it "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id*. The Supreme Court instead has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* at 284; *see also Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987) ("The substantial connection . . . between the defendant and the forum State

necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*.") (quotation omitted) (emphasis in original).

The assertion that Anima knew the Funds would later invest with BLMIS, even if true, falls short even of the facts of *Walden*.  Once Anima transferred subscription money to BNP Paribas SSL , who then transferred it to the Funds, the money was no longer Anima's following the entry into a contract to exchange the subscription money for shares.[7]  Although some of the money invested in the Funds was transferred by the Funds to BLMIS, and some of the redemption payments made by the Funds may have been funded by transfers the Funds received from BLMIS, that was not universally or even typically the case.  As Plaintiffs allege, the Funds netted subscriptions against redemptions, and accordingly, the Funds often funded redemption payments with money that came in from new investments.  As a result, that subscription money was never placed with BLMIS in New York at all.  *See* Compl. ¶ 51 (alleging that subscription money was used to pay redemptions as a "shortcut").  The law does not support Plaintiffs' expansive view that an investment company can sue its investors in any jurisdiction where that investment company itself decides to make investments, much less where the funds at issue may not even have been derived from those investments.

*Third*, Plaintiffs' suggestion that money placed with the Funds may have made its way to BLMIS is not a basis for asserting personal jurisdiction; it is nothing more than the type of threadbare "stream of commerce" theory of personal jurisdiction rejected by the Supreme Court. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882, 886 (2011) ("[I]t is not enough that [a]

---

[7] *See Fairfield II*, 596 B.R. 275, at 288 ("In rejecting Sentry's arguments relating to the Certification Issue, the Privy Council considered the provisions of Articles 9, 10 and 11, and concluded that the NAV had to be definitively determined at the time of the subscription or redemption; otherwise, the scheme was "unworkable."); *see also Migani* ¶ 10 ("The Subscription Agreement binds the subscriber to his subscription and to the terms of the Fund Documents.").

defendant might have predicted that its goods will reach the forum State," but rather the defendant must "engage[] in conduct purposefully directed at [the forum]."); *In re Mexican Gov't Bonds Antitrust Litig.*, No. 18-CV-2830 (JPO), 2020 WL 7046837, at *3-4 (S.D.N.Y. Nov. 30, 2020) (holding neither an attempt to profit from conduct underlying claim nor foreseeability of a harm in forum were sufficient to establish jurisdiction in absence of a defendant's contact with forum).

Notably, this case is very different from *Picard v. Bureau of Labor Ins. (In re Sec. Inv'r Prot. Corp.)*("*BLI*"), 480 B.R. 501, 516-19 (Bankr. S.D.N.Y. 2012) (Lifland, J.), in which Judge Lifland held that a defendant's investment with Sentry was sufficient to establish personal jurisdiction *with respect to claims arising from the liquidation of BLMIS*. [8]   In that case, the allegations concerned transfers by BLMIS from New York, and the court held that the decision to invest in a fund that would ultimately invest with BLMIS gave rise to personal jurisdiction with respect to claims arising from that *BLMIS* investment.  *Id*.  But Plaintiffs' claims in this case do not arise from the BLMIS investment; they arise from the redemption payments made by the BVI Funds, though their Irish custodian, to foreign defendants.  *See Fairfield III*, 2020 WL 7345988, at *6 ("All of the redemption payments were made by the Dublin Branch of Citco Bank where the Funds maintained accounts.").

      **2.**      **Alleged Use of Correspondent Account and Investment in U.S. Dollars Does Not Support Minimum Contacts**

Plaintiffs also claim that minimum contacts are established because the redemption

---

[8] And in any event, this holding in *BLI* is drawn into question by the U.S. Supreme Court's subsequent opinion in *Walden*.  The Bankruptcy Court opinion in *BLI* relied on BLI's alleged knowledge of the feeder fund's investments in BLMIS, *Picard v. BLI*, 480 B.R. at 517, which, as discussed above, is the type of foreseeability argument the Supreme Court rejected in *Walden*.  *See* 571 U.S. at 288.

payments made by Sentry "went through" a correspondent bank account in the United States.[9] This argument regarding the passive receipt of money transmitted by the Funds themselves does not support the exercise of personal jurisdiction. *See, e.g.*, *Walden*, 571 U.S. at 284 (The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."); *see also Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 112 (1987) ("The substantial connection . . . between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*.") (quotation omitted) (emphasis in original).

Further, it is common knowledge that foreign financial institutions often use correspondent accounts for receipt and transmittal of U.S. dollar payments, such as the redemption payments from Sentry, because foreign banks typically cannot hold U.S. dollar denominated funds. *See e.g.*, *Société d'Assurance de l'Est SPRL v. Citigroup Inc.*, No. 10-civ-4754 JGK, 2011 WL 4056306 at *7 (S.D.N.Y. Sept. 13, 2011) (explaining that the defendants use correspondent bank accounts for the purpose of converting Congolese Francs to US dollars); *Tamam*, 677 F. Supp. 2d at 725 (noting that the defendant maintained correspondent bank accounts abroad in order to facilitate currency conversion and international financial transactions). The redemption payments from Sentry traveled from Sentry in the BVI by way of its Irish custodian Citco Bank to foreign shareholders by way of a correspondent account located in New York maintained for the purpose of facilitating clearing the U.S. dollar transactions. *Fairfield III* at *6 ("All of the redemption payments were

---

[9] As a threshold matter, these allegations do not support an exercise of personal jurisdiction over Anima because there are no non-conclusory allegations that Anima owned, controlled, or directed payments into such account. Plaintiffs allege that these were "BNP Paribas" correspondent accounts, and assert in wholly conclusory, non-defendant-specific fashion that payments were made into them "[p]er [s]hareholder [d]irection." Compl. Ex. A.

made by the Dublin Branch of Citco Bank where the Funds maintained accounts.").

The alleged incidental use of a bank account in the United States to facilitate U.S. dollar-denominated payments to settle a foreign securities transaction (here, the redemption of shares in a BVI company by its French shareholder) does not, as a matter of controlling law, give rise to personal jurisdiction. Again, the redemption payments at issue here were not directed by Anima, and there is no allegation that Anima took advantage of the United States' financial system as the object of any purposeful conduct. Rather, BNP Paribas SSL and Anima are alleged to have received payments made from one foreign party to another, facilitated through foreign originating and receiving banks, and made under a foreign contract that effectuated the redemption of securities issued by a foreign investment company. The mere use of a correspondent account by a foreign bank to clear transfers for a foreign contract denominated in U.S. dollars does not, as a matter of law, confer jurisdiction over the foreign bank. *See Hau Yin To v. HSBC Holdings, PLC*, No. 15-CV-3590-LTS-SN, 2017 WL 816136, at *6. (S.D.N.Y. Mar. 1, 2017), *aff'd* 700 F. App'x 66 (2d Cir. 2017) (rejecting personal jurisdiction over foreign defendants because their alleged connection to the forum was the transmission of information and funds "to and from BLMIS . . . [as an] incidental consequence[] of fulfilling a foreign contract"); *Hill v. HSBC Bank PLC*, 207 F.Supp.3d 333, 340 (S.D.N.Y. Sept. 15, 2016) (finding transmission of information and funds to and from BLMIS to be "incidental consequences of fulfilling a foreign contract . . . insufficient to 'project' the Foreign Defendants into New York" and "not amount[ing] to 'purposeful availment' of the laws of" the forum); *Tamam*, 677 F. Supp. 2d at 727 ("Courts in this district have routinely held that merely maintaining a New York correspondent bank account is insufficient to subject a foreign bank to personal jurisdiction.") (citing cases).

New York clears hundreds of thousands of foreign dollar transactions valued at over

$1.5 trillion each day. *See generally Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1395 (2018) ("In

New York each day, on average, about 440,000 [Clearing House Interbank Payments System

(CHIPS)] transfers," the system for most large banking transactions, "occur, in dollar amounts

totaling about $1.5 trillion."). If the incidental use of U.S.-based correspondent accounts were

sufficient to confer personal jurisdiction over foreign entities, New York would become a forum

for any foreign commercial dispute, contrary to federal and state policy, merely because global

transactions are frequently cleared in U.S. dollars. *See Mashreqbank PSC v. Ahmed Hamad Al

Gosaibi & Bros. Co.*, 12 N.E.3d 456, 459-60 (N.Y. 2014) ("Our state's interest in the integrity of

its banks . . . is not significantly threatened every time one foreign national, effecting what is

alleged to be a fraudulent transaction, moves dollars through a bank in New York."); *see also

Universal Trading & Inv. Co., Inc. v. Tymoshenko*, No. 11 Civ. 7877 (PAC) 2012 WL 6186471,

at *3 (S.D.N.Y. 2012) ("[C]ourts have long recognized that there are significant policy reasons

which caution against the exercise of personal jurisdiction based only on a correspondent bank

account.") (quotation omitted).

Plaintiffs have cited *Arcapita* in prior briefing to argue that using a correspondent account

in New York is sufficient to confer personal jurisdiction, but *Arcapita* is inapposite because the

contacts there were materially more purposeful than those alleged here. *Official Comm. of

Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 70 (Bankr. S.D.N.Y. 2016).

*Arcapita* concerned an investment scheme in which the debtor entered into placement agreements

with defendant banks that allowed the banks to propose investments by sending offers to Arcapita

specifying the currency and bank account for Arcapita to transfer funds. *See id.* Arcapita accepted

three investment offers designated by the banks in U.S. dollars payable to correspondent accounts

in New York. *See id.* The bankruptcy court found it had personal jurisdiction over the banks

because the banks purposefully selected U.S. dollars and New York accounts, when under the placement agreements the banks could have selected any currency and any account anywhere in the world. *See id.* at 69-70 (noting bank could have selected accounts "anywhere . . . in the United States" and chose New York).

Unlike in *Arcapita*, here defendants did not select U.S. dollars as the base currency for its investments with Sentry; Sentry chose the base currency. *See* Sentry Articles, Arts. 1, 10(1)(c) (defining "Base Currency" as "the currency of the United States of America" and stating "payment shall be made to the Applicant in the Base Currency in respect of the redemption or purchase of Shares"). The use of a correspondent account in New York was necessitated by the BVI-based Sentry's choice of U.S. dollars and was incidental to its foreign law contract with Sentry. This is not a purposeful U.S. contact. *See Tymoshenko*, 2012 WL 6186471, at *3 ("[C]ourts have long recognized that there are significant policy reasons which caution against the exercise of personal jurisdiction based only on a correspondent bank account."). The only purposeful act taken by Anima alleged in the Complaint was its decision to invest in a BVI investment company and its request to redeem funds from that company. The receipt of payments occurred because Anima decided to redeem shares in the BVI. The redemption of shares was the only immediate result of Anima's affirmative conduct and not the receipt of redemption payments, which merely settled the securities transaction with the Funds.

Plaintiffs have also relied on *Licci ex rel. Licci v. Lebanese Can. Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) to argue that use of a correspondent account in New York is itself sufficient to establish specific jurisdiction over Anima, but Plaintiffs' reliance on *Licci* is misplaced. In *Licci*, the Second Circuit concluded that wire transfers from a correspondent bank account could establish personal jurisdiction when the transfers are part of the "principal wrong" alleged. *Id.* at

17

170-71.  The principal wrong in that case was the intentional use of a correspondent account to fund terrorist activity in violation of statutory duties in antiterrorism laws.  *See id.* at 171.

Here, there is no allegation that the transmission of funds through a correspondent account is the principal wrong that Plaintiffs are suing to remedy.  *Plaintiffs allege no fraudulent scheme or breach of duty by Anima at all.*  Plaintiffs bring a narrow, equitable claim to unwind a payment by the Funds' agent, Citco Fund Services, in breach of a duty that the agent may have owed to the Funds.  If money passed through a correspondent account in New York, that is entirely incidental to Plaintiffs' claims about a breach by Citco Fund Services and accordingly is insufficient to establish jurisdiction.  *See Hau Yin To*, 2017 WL 816136, at *7 n.6 (finding use of correspondent account incidental).  Similarly, Plaintiffs have relied on *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316 (2016), where the plaintiff alleged that the defendant knowingly used a correspondent account to launder money and pay bribes.  28 N.Y.3d at 328.  But *Al Rushaid* simply reaffirms the holding of *Licci* that use of a correspondent account that is "integral" to an illegal scheme is sufficient to establish jurisdiction over a claim arising out of the scheme.  The correspondent account's role here is entirely incidental, not integral, to Plaintiffs' claim and thus is not sufficient.  *See Hau Yin To*, 2017 WL 816136, at *7 n.6 (distinguishing *Al Rushaid* as limited to use integral to fraud).

### 3.   Citco Bank's Use of a Correspondent Account is Irrelevant to the Minimum Contacts Analysis

Plaintiffs advance a related argument that the Funds' own custodian, Citco Bank, based in Ireland, used a correspondent account to transfer the redemption payments to BNP Paribas SSL .  *See* Compl. Ex. A.  There is no allegation that BNP Paribas SSL or Anima were involved in the selection of this correspondent account by the Funds' agent.  The fact that Citco Bank unilaterally chose to use a correspondent account is irrelevant to whether the Court may exercise jurisdiction *over Anima* because jurisdiction must be based on the *defendant's* contacts with the forum, not

plaintiff's.  *See Walden*, 571 U.S. at 284; *Helicopteros Nacionales*, 466 U.S. at 417 ("[The]

unilateral activity of another party or a third person is not an appropriate consideration when

determining whether a defendant has sufficient contacts with a forum State to justify an assertion

of jurisdiction.").

**B.**    **The Exercise of Personal Jurisdiction Over Anima Would Be Unreasonable**

Even if there existed sufficient "minimum contacts" to establish personal jurisdiction over

Anima, the Court's exercise of jurisdiction over Anima must also be reasonable under the

circumstances for such exercise to be consistent with due process. *World-Wide Volkswagen Corp.*

*v. Woodson*, 444 U.S. 286, 297 (1980) ("The Due Process Clause . . . gives a degree of

predictability to the legal system that allows potential defendants to structure their primary conduct

with some minimum assurance as to where that conduct will and will not render them liable to

suit." (citation omitted)).  The Courts apply a "sliding scale" in assessing whether jurisdiction is

consistent with due process:  "the weaker the plaintiff's showing on minimum contacts, the less a

defendant needs to show in terms of unreasonableness to defeat jurisdiction." *In re CIL Limited*,

582 B.R. 46, 79 (Bankr. S.D.N.Y. 2018) (internal quotation marks and citation omitted); *see also*

*Porina v. Marward Shipping Co.*, No. 05 CIV. 5621 (RPP), 2006 WL 2465819, at *6 (S.D.N.Y.

Aug. 24, 2006) ("[I]f a defendant's contacts with the United States are weak, the plaintiff has to

make a stronger showing of reasonableness in order to show that jurisdiction over the defendant is

proper.").  In evaluating the reasonableness of exercising personal jurisdiction, "[a] court must

consider the burden on defendant, the interests of the forum State, and the plaintiff's interest in

obtaining relief." *Asahi*, 480 U.S. at 113.

Plaintiffs here seek to rely on the most incidental of contacts to establish jurisdiction. *See*

*supra* Pt. A. Plaintiffs must therefore make a *stronger showing* that the exercise of jurisdiction

would be reasonable, but each of the factors that the Court must assess in determining

19

reasonableness weigh *against* exercising jurisdiction:  the U.S. has a minimal (if any) interest in this litigation, the burden on Anima in litigating here is high, and Plaintiffs cannot show that New York is more reasonable than other available forums including the BVI or Italy.  Because the alleged contacts are insignificant and all of the reasonableness factors weigh against the Court's exercise of jurisdiction, the Court should dismiss Anima.

First, the United States' interest in adjudicating this dispute is minimal at best.  The dispute is exclusively between foreign parties arising solely under foreign law pursuant to a foreign contract governing a purely foreign transaction.  The case was only brought before this Court because Plaintiffs mistakenly believed that defendants had consented to jurisdiction – a position now conclusively rejected by the Court.  Had Plaintiffs not filed a petition for Chapter 15 recognition, there would be no subject matter jurisdiction in federal court over this claim at all for what is a private dispute between foreign parties.  *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 685 (S.D.N.Y. 2011) (Preska, J.) ("[T]hese claims are disputes between two private parties that have existed for centuries and are 'made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789.'").  The claim for knowing receipt is itself non-core, there are no alleged debtor assets in the United States, and Plaintiffs have not sought relief in their pending Chapter 15 case in years.  *Id.* at 682 ("Here, there are no assets in the United States.  The Plaintiffs' actions seek assets, so their location is relevant.  Plaintiffs do not seek discovery or stays of proceedings in the United States.  Thus, *the ancillary character of the Chapter 15 cases here is at a low ebb*—it is certainly not within the core jurisdiction of the bankruptcy court to aid the BVI courts in these cases because there are no assets sought in the United States.") (emphasis added).  The Supreme Court has cautioned against finding jurisdiction over such a claim between *foreign* parties arising under *foreign* law.  *Asahi*, 480 U.S. at 115 ("Great care and reserve should be

exercised when extending our notions of personal jurisdiction into the international field."); *see also Mashreqbank PSC*, 12 N.E.3d at 459-60 (noting minimal interest of New York in pursuing every purported fraud that passes through correspondent accounts).

*Second*, defending Plaintiffs' claim before this Court would impose substantial burdens on Anima. Anima is an Italian fund, and discovery of documents about these redemption payments in the United States would potentially expose Anima to liability in its home country. *See, e.g.,* Bench Ruling Granting in Part and Denying in Part the Foreign Representatives Mot. Seeking Limited Relief, *Fairfield Sentry Ltd., (In Liquidation), et al., v. Theodoor GGC Amsterdam, et al.*, Adv. Pro. No. 10-03496 (Bankr. S.D.N.Y. July 19, 2012), Dkt. No. 799-2 ("The various respondents have described . . . the strong and undeniable interest of many nations in enforcing their banking secrecy laws. Thus, yielding to the Foreign Representative's Disclosure Request implicates the significant bank customer confidentiality laws of no fewer than 30 countries . . . . As such, this Court is hard-pressed to find any compelling United States' interest in mandating discovery here at this juncture of the pending litigation.").

*Third*, Plaintiffs have not demonstrated that it is more reasonable for them to litigate their claims against Anima in New York rather than in the BVI, where the Funds are at home and where a court is administrating its main bankruptcy proceeding, or in Italy, where Anima is at home. Indeed, Plaintiffs initially chose the BVI as the preferable and most convenient forum to pursue related claims. Only upon losing at the highest level in the BVI court system did Plaintiffs then discontinue their suits in that forum, and improperly continue them here under new legal theories in what they hoped would be a more advantageous forum. *See Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1031 (2021) (noting that jurisdiction had been found improper where "the plaintiffs were engaged in forum-shopping"). Plaintiffs' strategic maneuvering

undercuts any claim that it is more reasonable for them to litigate their claims here in New York rather than elsewhere and confirms that the assertion of personal jurisdiction over Anima in this Court would be unreasonable.

Courts have held that defendants should be dismissed in circumstances where their "contacts with [the forum] only 'barely satisf[y] the minimum contacts standard,'" and "a majority of the reasonableness factors weigh against the exercise of jurisdiction." *See, e.g.*, *Rocky Mountain Chocolate Factory v. Arellano*, No. 17-cv-0582-WJM-CBS, 2017 WL 4697503, at *11 (D. Colo. Oct. 19, 2017) (quoting *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004); *Benton*, 375 F.3d at 1080 (The defendant's "contacts with [the forum] were quite limited, barely satisfying the minimum contacts standard.  As a result, [the defendant] need not make a particularly strong showing in order to defeat jurisdiction under this reasonableness inquiry.  Because the majority of the . . . reasonableness factors weigh in [the defendant's] favor, . . . exercise of personal jurisdiction . . . would offend traditional notions of fair play and substantial justice."); *Manko Window Systems, Inc. v. Prestik*, No. 16-2818-JAR-JPO, 2017 WL 4355580, at *9 (D. Kan. Sept. 29, 2017) ("[B]ecause [Defendant's] contacts with Kansas are weak and because the reasonableness factors discussed above counsel against the exercise of personal jurisdiction, the Court grants Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2)."). Assuming *arguendo* that the Plaintiffs can make a showing that the minimum contacts standard is satisfied, such a showing could only be by the narrowest of margins and dismissal would be warranted on the basis of the reasonableness factors.

## IV.    CONCLUSION

Because the Complaint fails to provide "any basis to demonstrate that [this Court] would have [] personal jurisdiction" over Anima, the Court should grant the instant motion to dismiss. *See Spiegel v. Schulman*, 604 F.3d 72, 78 (2d Cir. 2010).

Dated:  October 29, 2021
    New York, New York

By: /s/ Jeffrey Resetarits
    Jeffrey Resetarits
    Randall Martin

**SHEARMAN & STERLING LLP**
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
E-mail: jeffrey.resetarits@shearman.com
E-mail: randall.martin@shearman.com

*Counsel for Anima SGR S.p.A. (f/k/a Clessidra SGR S.p.A.)*