UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>        Debtor in Foreign<br>        Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (CGM)<br><br>Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN<br>LIQUIDATION), et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>BNP PARIBAS SECURITIES SERVICES<br>LUXEMBOURG, et al.,<br><br>        Defendants. | Adv. Pro. No. 10-03627 (CGM) |

## <u>MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS OF ROTHSCHILD & CO ASSET MANAGEMENT EUROPE, AS MANAGER OF DEFENDANT ELAN GESTION ALTERNATIVE FUND</u>

Date: April 5, 2023

SELENDY GAY ELSBERG PLLC

David Elsberg
Maria Ginzburg
Jordan Goldstein
Lena Konanova
David S. Flugman
Joshua S. Margolin
1290 Avenue of the Americas
New York, New York 10104
Telephone: 212-390-9000

-and-

BROWN RUDNICK LLP

David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, New York 10036
Telephone: 212-209-4800

# TABLE OF CONTENTS

**Pages**

PRELIMINARY STATEMENT ................................................................1

BACKGROUND ................................................................................4

    A.    The Funds................................................................................4

    B.    Relevant Entity Relationships...................................................5

    █    ████████████████████████████.................................5

    D.    EGA's Decision To Invest In The Funds....................................6

    E.    EGA's Investment In The Funds .............................................10

STANDARD....................................................................................12

ARGUMENT...................................................................................13

I.    EGA Has Sufficient Minimum Contacts With The United States....................13

    A.    EGA Knowingly And Intentionally Invested In Madoff Feeder Funds ................15

        1.    EGA Purposefully Availed Itself Of The United States Via Its Intentional Investment In The Funds ........................................16

        2.    EGA's Intentional Investment In The Funds Directly Relates To The Liquidators' Claims ..........................................24

    B.    EGA Engaged In Other Business Activity Directed At The United States ..........25

    C.    The Court May Exercise Jurisdiction Over EGA Even If The Transfers Are Deemed Foreign For Purposes Of The Bankruptcy Safe Harbor Analysis.....................................................................27

    D.    The Court Should Reject EGA's "Group Pleading" Argument............................28

II.    The Exercise Of Jurisdiction Over EGA Is Reasonable ..................................29

CONCLUSION................................................................................34

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
    677 F.3d 60 (2d Cir. 2012)................................................................27

*In re Ampal-Am. Israel Corp.*,
    562 B.R. 601 (Bankr. S.D.N.Y. 2017)..................................................27

*In re Bernard L. Madoff Investment Securities LLC* ("*Lombard Odier II*"),
    2023 WL 395225 (S.D.N.Y. Jan. 25, 2023) ...........................................3, 19, 22, 23

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
    137 S. Ct. 1773 (2017)................................................................33

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)................................................................13, 25

*Cunningham v. Gen. Motors LLC*,
    2021 WL 827124 (S.D.N.Y. Mar. 4, 2021) ...........................................34

*CutCo Indus., Inc. v. Naughton*,
    806 F.2d 361 (2d Cir. 1986)................................................................14

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)................................................................14

*Drake v. Lab. Corp. of Am. Holdings*,
    2008 WL 4239844 (E.D.N.Y. Sept. 11, 2008) ...........................................12, 13

*In re Eur. Gov't Bonds Antitrust Litig.*,
    2020 WL 4273811 (S.D.N.Y. Jul. 23, 2020) ...........................................14, 17, 25

*In re Fairfield Sentry Ltd.*,
    2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ...........................................26

*In re Fairfield Sentry Ltd.*,
    596 B.R. 275 (Bankr. S.D.N.Y. 2018)..................................................27

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021)................................................................33

*Gucci Am., Inc. v. Weixing Li*,
    135 F. Supp. 3d 87 (S.D.N.Y. 2015)..................................................31

*Iragorri v. United Techs. Corp.*,
274 F.3d 65 (2d Cir. 2001) ............................................................................32

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
732 F.3d 161 (2d Cir. 2013) ...........................................................14, 28, 31

*McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*,
295 F. Supp. 3d 404 (S.D.N.Y. 2017) ............................................................12

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996) ...........................................................12, 13, 29, 30

*In re Motors Liquidation Co.*,
565 B.R. 275 (Bankr. S.D.N.Y. 2017) ............................................................26

*MSP Recovery Claims, Series LLC v. Takeda Pharm. Am., Inc.*,
2021 WL 4461773 (S.D.N.Y. Sept. 29, 2021) ..............................................14

*Nike, Inc. v. Wu*,
349 F. Supp. 3d 310 (S.D.N.Y. 2018) ............................................................31

*Obabueki v. Int'l Bus. Machines Corp.*,
2001 WL 921172 (S.D.N.Y. Aug. 14, 2001) ............................................12, 13

*Picard v. Banque Lombard Odier & Cie SA* (*In re Bernard L. Madoff*) ("*Lombard Odier I*"),
2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ................................ *passim*

*Picard v. Barfield Nominees Ltd.* (*In re Bernard L. Madoff*),
2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28, 2022) ...............................3, 18

*Picard v. Bureau of Lab. Ins.*,
2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016) ......................................28

*Picard v. Bureau of Labor Ins.* (*SIPC v. Bernard L. Madoff Inv. Sec. LLC*)
"*BLI*", 480 B.R. 501 (Bankr. S.D.N.Y. 2012) .....................................16, 22, 26, 28

*Picard v. Cathay Life Ins. Co.* (*In re Bernard L. Madoff*),
2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022) ................................ *passim*

*Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*),
627 B.R. 546 (Bankr. S.D.N.Y. 2021) .....................................1, 2, 13, 14

*Picard v. JP Morgan Chase & Co.* (*In re Bernard L. Madoff Inv. Sec. LLC*),
2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) ......................................17

*Picard v. Maxam Absolute Return Fund, L.P.*,
460 B.R. 106 (Bankr. S.D.N.Y. 2011) ...........................................................14, 18

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
   917 F.3d 85 (2d Cir. 2019) ................................................................................................18

*In re Platinum & Palladium Antitrust Litig.*,
   449 F. Supp. 3d 290 (S.D.N.Y. 2020) ...............................................................................25

*RJR Nabisco, Inc. v. European Cmty.*,
   579 U.S. 325 (2016) ..........................................................................................................27

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
   2022 WL 17742686, (Bankr. S.D.N.Y. Dec. 15, 2022) ....................................................18

*Strauss v. Credit Lyonnais, S.A.*,
   175 F. Supp. 3d 3 (E.D.N.Y. 2016) ...................................................................................30

*Suez Water N.Y. Inc. v. E.I. Du Pont Nemours Co.*,
   2022 WL 36489 (S.D.N.Y. Jan. 4, 2022) ..........................................................................15

*In re Sumitomo Copper Litig.*,
   120 F. Supp. 2d 328 (S.D.N.Y. 2000) ...............................................................................14

*Sunward Elecs., Inc. v. McDonald*,
   362 F.3d 17 (2d Cir. 2004) ..........................................................................................26, 28

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
   916 F.3d 143 (2d Cir. 2019) ...............................................................................13, 29, 30

*Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*,
   2015 WL 4040882 (S.D.N.Y. July 2, 2015) .....................................................................29

*Walden v. Fiore*,
   571 U.S. 277 (2014) .....................................................................................................22, 23

**Statutes**

Federal Rule of Bankruptcy Procedure 7004 ................................................................................13

Federal Rule of Bankruptcy Procedure 7012 ..................................................................................1

Federal Rule of Civil Procedure 12(b)(2) ........................................................................1, 12, 13

**Other Authorities**

Jason Szep, *Savings Lost to Madoff, Elderly Forced Back to Work*, Reuters (Feb.
   6, 2009) ...............................................................................................................................1

Kenneth M. Krys and Greig Mitchell (the "Liquidators"), in their capacities as the duly appointed Liquidators and Foreign Representatives of Fairfield Sigma Limited (In Liquidation) ("Sigma") and non-party Fairfield Sentry Limited (In Liquidation) ("Sentry" and, together with Sigma, the "Funds" or the "Fairfield Funds") in the above-captioned adversary proceeding (together, with the other adversary proceedings now pending against the Funds' former shareholders, the "U.S. Redeemer Actions"), respectfully submit this memorandum of law in opposition to Rothschild & Co Asset Management Europe's (formerly known as Rothschild & Cie Gestion) ("RAMEU"), as manager of the Elan Gestion Alternative fund (the "EGA Fund") (sued as Rothschild & Cie Banque-EGA) (collectively, "Defendant" or "EGA"), motion to dismiss the Fifth Amended Complaint ("Complaint" or "Compl.") (10-ap-3627, Dkt. 143)[1] under Federal Rule of Civil Procedure 12(b)(2) as made applicable here by Rule 7012 of the Federal Rules of Bankruptcy Procedure ("Motion" or "Mot.") (10-ap-3627, Dkt. 177).

## PRELIMINARY STATEMENT

The Liquidators seek to recover at least ███████[2] that EGA received as a redemption of its investments in Bernie Madoff's Ponzi scheme. Several investors in the Fairfield Funds saw their life savings, retirement funds, and pensions wiped out in an instant when the scheme collapsed in December 2008.[3] But as a sophisticated entity with inside knowledge about Madoff's

---

[1] Unless otherwise specified, docket citations refer to filings in the above-captioned action.

[2] EGA received ███████ from Sigma through the redemption payment at issue. For purposes of this brief, the Liquidators have applied the exchange rate as of the date of that redemption payment out of Sigma and calculated the dollar value of the Sigma redemption to be approximately ███████. This number may vary if the Court ultimately determines that a different exchange rate applies.

[3] *See generally* Jason Szep, *Savings Lost to Madoff, Elderly Forced Back to Work*, Reuters (Feb. 6, 2009), https://www.reuters.com/article/us-madoff-victims/savings-lost-to-madoff-elderly-forced-back-to-work-idUSTRE5156FB20090207.

fraud, EGA was able to get out early and reap a massive profit for itself and its clients before

Madoff's investment firm was put into bankruptcy. EGA now attempts to evade responsibility by

minimizing its own substantial and purposeful connections with the U.S.; EGA should be held to

account and its motion to dismiss denied.

The facts relevant to this motion are simple. When EGA withdrew its investment from

Sigma—██████████████████████████████████—it received an inflated redemption

payment that was substantially sourced from investors' monies that Fairfield had invested in

Madoff's eponymous New York investment firm Bernard L. Madoff Securities LLC ("BLMIS"),

through which Madoff operated his Ponzi scheme. ████████████████████████████████,

at the expense of other investors, to receive a redemption payment from Sigma—the same

redemption payment the Liquidators seek to recover in this action—EGA retained BNP Paribas

Securities Services, S.A. ("BNP SS") as an agent.

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

EGA is subject to this Court's jurisdiction as a result of that conduct.

For the Court to exercise specific jurisdiction over a defendant, the defendant must have

sufficient contacts with the forum that relate to the claims at issue, and the exercise of jurisdiction

must be reasonable. EGA's extensive, intentional contacts with the U.S. more than sufficiently

support this Court's exercise of jurisdiction over it.

*First*, EGA's contacts with the U.S. were voluminous and are directly related to the

Liquidators' claims. For example, EGA:



- Subscribed for at least ███████ shares in Sigma and █████ shares in Sentry—███████—worth approximately ███████, from █████,[4] with the sole purpose of investing in U.S.-based BLMIS and after reviewing private placement memoranda ("PPMs") communicating that its investments would be placed with BLMIS, a registered U.S. broker dealer;[5]

- ██████████████████████████████ and

- ██████████████████████████████

Courts have held that contacts nearly identical to these support the exercise of personal jurisdiction. Indeed, this Court recently found personal jurisdiction existed based on similar investments in the Funds in actions brought by the BLMIS Trustee.[6] And these contacts directly relate to the crux of the Liquidators' claims: that EGA redeemed its Sigma shares knowing that the payment it would receive in return would be inflated due to inaccurate and fraudulent value statements. Without these U.S. contacts, there would have been no investment, no redemptions, and no benefit to EGA. The factual nexus between EGA's forum contacts and the Liquidators' claims more than sufficiently supports the exercise of specific personal jurisdiction.

---

[4] The dollar value of EGA's Sigma subscription and its Sigma shares resulting from ████████ ██████ have been calculated using the exchange rate as of the value date of the subscription ██████, respectively. They are subject to the same caveat as discussed above, *see supra* note 2.

[5] Throughout this brief, the Liquidators refer to EGA's "investment" with BLMIS. The Liquidators do not allege that EGA was invested in BLMIS itself, but instead refer to EGA's investment in BLMIS by way of the Funds.

[6] *See, e.g.*, *Picard v. Banque Lombard Odier & Cie SA* (*In re Bernard L. Madoff*) ("*Lombard Odier I*"), 2022 WL 2387523, at *3 (Bankr. S.D.N.Y. June 30, 2022), *leave to appeal denied sub nom. In re Bernard L. Madoff Investment Securities LLC* ("*Lombard Odier II*"), 2023 WL 395225 (S.D.N.Y. Jan. 25, 2023); *Picard v. Cathay Life Ins. Co.* (*In re Bernard L. Madoff*) ("*Cathay Life Ins.*"), 2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022); *Picard v. Barfield Nominees Ltd.* (*In re Bernard L. Madoff*) ("*Barfield*"), 2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28, 2022).

3

*Second*, this Court's exercise of personal jurisdiction over EGA is more than reasonable, and allowing the suit to proceed is consistent with notions of fair play and substantial justice. The United States has a substantial interest in this dispute, as it concerns EGA's deliberate choice to invest ▮▮▮▮▮▮ in, and wrongfully profit from, a fraudulent scheme in the U.S. securities market at the expense of other investors. Any burden EGA faces as a litigant in this forum is minimal at best, and can be mitigated through electronic transmission of document productions and redactions to address asserted privacy concerns arising from foreign law. EGA has not come close to meeting its burden of presenting a compelling case that exercising jurisdiction would be unreasonable.

This Court should deny EGA's Motion and reach the merits of the Liquidators' claims.

## BACKGROUND

### A.    The Funds

Sentry and Sigma—along with non-party, Fairfield Lambda—were collectively the largest BLMIS "feeder funds," funneling billions of dollars into New York-based BLMIS over 18 years. Compl. ¶¶ 26-27, 46-47. From their inception in 1990, until the widespread disclosure of Madoff's fraud in December 2008, the Funds sought out new investments through the sale of shares and transferred substantially all net proceeds to their New York accounts, which were managed by BLMIS. *Id.* ¶¶ 5, 20, 26-27, 48. Sentry transferred its proceeds directly to BLMIS in New York, while Sigma, which was established for Euro-denominated investments, transferred proceeds to Sentry. *See id.* ¶¶ 46-47.

**B.      Relevant Entity Relationships**

The EGA Fund "is a fund which, under French law, is not an incorporated entity and has no personality." Ex. 1 at 2.[7] During the relevant period, ██████████████████████████████████ ████████████████████████████████████████████████████████████████████████████. *See* Ex. 2 at 3 ███████████████████████████████████████████ ████████████████████████████). Consequently, t████████████████████████████ ████████████████. *See* Ex. 1 at 2 (noting that the EGA Fund "acts through its manager, [RAMEU]"). Therefore, in the relevant motion to dismiss in this case—as in this opposition to that motion—the EGA Fund and RAMEU are treated as one and the same. *See* Mot. at 1 (treating the EGA Fund and RAMEU as a collective, singular defendant).

████████████████████████████ RAMEU—which was fully consolidated under Rothschild & Cie Banque, *see* Ex. 3 at 18—████████████████████████████████ ████████████████████ *See* Ex. 4 at -136. ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████. *See id.* ████████████████████████

In connection with EGA's investment in the Fairfield Funds, ████████████████ ████████████████████████████████████████████████████ ████████████████████████. *See* Ex. 4. ████████████ ████████████████████████████████████████████████████ ████████████ Ex. 4 at -136. ████████████████████████████████

---

[7] Unless indicated otherwise, all exhibits refer to those attached to the Declaration of David S. Flugman ("Flugman Decl.").

██████████████████████████████████████████████████████████

████████████████████████████ *Id.* at -140-141; *see also* Ex. 2 at 3 (██████████

██████████████████████████████████████████████████████████

██████████████). ██████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████ Ex. 4 at -146.

### D.      EGA's Decision To Invest In The Funds

EGA invested in two Fairfield feeder funds—Sentry and Sigma—through BNP SS

██████████████████████ (the "Subscription Period"), for a total of approximately ████████ shares

between the two Funds. *See* Ex. 5 at -787; Ex. 6 at -109, -095; Ex. 7 at 6; Ex. 8 at -024. ████

██████████████████████████████████, *see* Ex. 9; Ex. 10; Ex. 11, leaving it with a

total of ████████ Sigma shares—the same amount of shares it subsequently redeemed in

████████████████████████████████████, *see* Ex. 12.



Ex. 14

Ex. 15

*see also* Ex. 16 at FG-05743341

*see* Ex. 17 at -636; Ex. 19 at -557

*see, e.g.*, Ex. 17; Ex. 18; Ex. 19; Ex. 20;



*see* Ex. 22 at -219;

Ex. 21 at -640;

Ex. 23 at -522; Ex. 24;

*see, e.g.*, Ex. 25; Ex. 26; Ex. 27; Ex. 28;

*see, e.g.*, Ex. 22; Ex. 29; Ex. 30; Ex. 31;

- Ex. 32 at SECSEV0985542; Ex. 33 at -876; and

Ex. 34 at -784

*see, e.g.,* Ex. 34 at -784

. *See, e.g.*, Ex. 35 at -550 (Sentry PPM 1); Ex. 36 at -274 (Sentry PPM 2); Ex. 37 at -668 (Sigma PPM 1); Ex. 38 at -726 (Sigma PPM 2); Ex. 36 at -332 (Sentry Due Diligence Questionnaire 1); Ex. 22 at -248 (Sentry Due Diligence Questionnaire 2); Ex. 39 at FG-05496828 (Sentry Due Diligence Questionnaire 3); Ex. 40 (Sentry and Sigma Tear Sheets); Ex. 22 at -269, -271 (Sentry Tear Sheets); *see also* Ex. 39 at FG-05496858 (Sentry Return Profile Analysis); Exs. 41 and 42 (Monthly Fund Reports from FGG U.S.); Ex. 22 at -220 (Letter including Official List Notice of Sentry's Admission to the Irish Stock Exchange);

*id.*at -223 (Sentry Directors' Report and Financial Statements); Ex. 43 (Sentry Semi-Annual

Letter).[8]

These documents made clear that ████████████████████████████████████

███████████████████████. ██████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████ Ex. 36 at -344; *see also* Ex. 38 at -732 and -746 ██████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████ Ex. 36 at -343 ████████████████████████████████████████████

█████████████████ Ex. 35 at -560; *see also* Ex. 38 at -744 ███████████

██████████████████████████████████████████ Ex. 39 at FG-

05496846 ████████████████████████████████████████████████████

██████████████████████████ Ex. 22 at -221 █████████████████████

████████████████████████████████████████████████████████████████████





███████████ Ex. 33 ████████████████████████████

██████ Ex. 40 at -961, -963 ███████████████████████

████████████████████████████████████████████"); Ex.

38 at -738 █████████████████████████████████████████

██ *see also* Ex. 34 at -786 ███████████████████████████

█████████████████

### E.    EGA's Investment In The Funds

EGA, through BNP SS, invested in the Fairfield Funds from ██████████. █

████████, BNP SS subscribed into ██████ shares of Sentry on behalf of EGA, *see* Ex. 5

at -787; Ex. 6 at -109; in ██████, BNP SS subscribed into ██████ shares of Sentry on behalf

of EGA, *see* Ex. 6 at -095; Ex. 7 at 6; and in ██████, BNP SS subscribed into ██████ shares

of Sigma on behalf of EGA, Ex. 8 at -024.[10] EGA subsequently █████████████████

████████████████████████████████, *see* Ex.

9; Ex. 10; Ex. 11, leaving it with a total of ██████ Sigma shares, *see* Ex. 10 (███████

████████████████████); Ex. 11 (████████████

---

[9] ████████████████████████████████████████ Ex. 34 at -783-784.
████████ *Id.* at -786.

[10] ████████████████████████████████████████
████ Ex. 5 (at -787)████████████████████
████████ Ex. 6 (at -109)██████████████
████████ Ex. 6 (at -095)██████
████████ Ex. 7 (at 6)████████████

███████████████████████████████████████████); Ex. 8 at -024 (███████████

████████████████████████████).

     Either EGA or BNP SS, on EGA's behalf, ███████████████████████████

███████████████████████████████████████████████████████████. [11]

*E.g.*, Ex. 35 at -540 (Sentry Long Form Subscription Agreement); Ex. 37 at -704 (Sigma Long

Form Subscription Agreement). [12] These agreements required the signatory (either EGA or BNP

SS [13]) to ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████. Ex. 35 at -541-542 at ¶ 7; Ex. 37 at -707 at ¶ 7. █

███████████████████████████████████████████████████████████

---

[11] While ████████████████████████████████████, *see* Ex. 35 at -588 (

████████████████████████████████████████), -603 (

██████████),

████████████████████████████████, *see* Ex. 8 at -036.

████████████████████████████████████████████ *See* Ex. 45 at 3.
Regardless, ████████████

████████████████████ *See* Exs. 5 at -074 and 6 at -109 (

████████████████████████); Exs. 6 at -095 and 7 at 6 (

████████████); Ex. 8 at -024 (████████████████████████████).

[12] ████████████████████████████████████████████████████████

████████████████████████ *see also* Compl. ¶ 23 (alleging that BNP SS agreed to submit to the
jurisdiction of New York courts in connection with proceedings related to Sentry and Sigma).

[13] As noted, *supra* note 11, ████████████████████████████████████████

████████████████████████████ *see* Ex. 8 at -036.

████████████████████████████████████████████ *Id.* at -037. However,
whether BNP SS signed the relevant subscription agreements on EGA's behalf as its agent or EGA
signed the agreements itself does not matter for personal jurisdiction purposes. *See supra* Section
I.A.1.

██████████████████████████████████████. *See* Ex. 35; Ex. 37. ██████████

████████████████████████████████████████████████████████████

██████████████████████████████. *E.g.*, Ex. 36 at -289, -312, -314; Ex. 35 at -540, -564, -588-589. Either EGA or BNP SS, on EGA's behalf, █████████████████████

████████████████████████████████████████████████████████████

████████████████████████████. *See, e.g.*, Ex. 35 at -601 (Sentry Short Form Subscription Agreement).

## STANDARD

Courts in this Circuit apply one of three standards to Rule 12(b)(2) motions. If the motion is assessed solely on the pleadings, the plaintiff may defeat the motion based on "legally sufficient allegations" alone. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566-67 (2d Cir. 1996), *cert. denied*, 519 U.S. 1007 (1996). If discovery is permitted *and* the court holds an evidentiary hearing, "the plaintiff must demonstrate the court's personal jurisdiction over the defendant by a preponderance of the evidence." *Id.* at 567. And where, as here, the court assesses the motion after jurisdictional discovery but *without* holding an evidentiary hearing, the plaintiff need only make a factually supported *prima facie* showing of jurisdiction. *See id.* (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Obabueki v. Int'l Bus. Machines Corp.*, 2001 WL 921172, at *2 (S.D.N.Y. Aug. 14, 2001).

In this context, the court must credit the facts averred in the pleadings and motion papers as true and must "construe[] the pleadings and affidavits in the light most favorable to the plaintiff … resolv[ing] all doubts in plaintiff's favor, notwithstanding any 'controverting presentation by the moving party.'" *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 295 F. Supp. 3d 404, 409 (S.D.N.Y. 2017) (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85-86 (2d Cir. 2013)); *accord Drake v. Lab. Corp. of Am. Holdings*, 2008 WL 4239844, at *1 (E.D.N.Y.

Sept. 11, 2008) ("Despite this higher burden, the Court must 'credit [Plaintiff's] averments of jurisdictional facts as true.'" (quoting *Metro. Life Ins. Co.*, 84 F.3d at 567)). Likewise, the court must draw "reasonable inference[s]" in the plaintiff's favor based on facts developed in discovery. *Drake*, 2008 WL 4239844, at *5; *see also Obabueki*, 2001 WL 921172, at *1 (stating that the court must draw reasonable inferences in the plaintiff's favor notwithstanding the fact that the parties had engaged in jurisdictional discovery).[14]

## **ARGUMENT**

This Court has personal jurisdiction over EGA because EGA has sufficient minimum contacts with the United States and because the exercise of jurisdiction over EGA is reasonable.

## I.    **EGA Has Sufficient Minimum Contacts With The United States**

EGA has sufficient minimum contacts with the United States to permit this Court to exercise jurisdiction over it. Jurisdiction under Bankruptcy Rule 7004 is assessed based upon the defendant's "contacts with the United States, rather than with the forum state," and there is no need for the Court to address the forum state's long-arm statute. *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*) ("*FGG*"), 627 B.R. 546, 565 nn.12, 13 (Bankr. S.D.N.Y. 2021) (citing *In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 619 (Bankr. S.D.N.Y. 2015)). Demonstrating the requisite minimum contacts for specific personal jurisdiction requires showing (1) a defendant's "purposeful availment" of the forum (2) that "arises out of or relates to" the alleged misconduct. *FGG*, 627 B.R. at 566; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 475 (1985); *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019)

---

[14] The Liquidators have not pursued discovery on the merits from EGA, including, for example, documents demonstrating that EGA knew the Funds' net asset values were inflated. To the extent the Court considers those allegations in resolving EGA's Rule 12(b)(2) motion, it should credit those allegations as true per the standard applicable in the absence of jurisdictional discovery. *See Metro. Life Ins. Co.*, 84 F.3d at 566-67.

(citing *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1785-86 (2017)). Courts assess both prongs based on the "totality of the circumstances." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci IV*"), 732 F.3d 161, 170 (2d Cir. 2013).

Satisfying the first prong, "purposeful availment," requires showing that the defendant has sufficient contacts with the forum resulting from the defendant's own actions. *FGG*, 627 B.R. at 566. The defendant's activities "need not have taken place within the forum, and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (cleaned up) (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Moreover, a defendant "can purposefully avail itself of a forum by directing its agents … to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014). Imputing an agent's conduct for jurisdictional purposes does not require "a formal agency relationship between the defendant and [its] agent," *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 336 (S.D.N.Y. 2000). Rather, courts may impute an agent's conduct within or aimed at the forum to the principal when, based on "the realities of the relationship in question rather than the formalities of agency law," *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986), the court concludes that the "alleged agent acted in [the forum] for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal." *In re Eur. Gov't Bonds Antitrust Litig.*, 2020 WL 4273811, at *6 (S.D.N.Y. Jul. 23, 2020).

Satisfying the second prong, "arises out of or relates to," requires showing that there is a "sufficiently close link" between the defendant's contacts and the claims at issue. *MSP Recovery Claims, Series LLC v. Takeda Pharm. Am., Inc.*, 2021 WL 4461773, at *3 (S.D.N.Y. Sept. 29, 2021) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1032 (2021)). A causal relationship between the plaintiff's claims and the defendant's forum contacts is *not*

14

required. *See, e.g.*, *Cathay Life Ins.*, 2022 WL 16626325, at *4 (citing *Ford Motor Co.*, 141 S. Ct. at 1027). An "affiliation between the forum and the underlying controversy" is sufficient. *Id.* (quoting *Goodyear Dunlap Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also Suez Water N.Y. Inc. v. E.I. Du Pont Nemours Co.*, 2022 WL 36489, at *8 (S.D.N.Y. Jan. 4, 2022) (holding that the claims must be "arguably connected" to, rather than "completely unmoored" from, the contacts at issue (quoting *Licci v. Lebanese Canadian Bank, SAL* ("*Licci III*"), 984 N.E.2d 893, 900-01 (N.Y. 2012))).

The facts averred and evidence presented by the Liquidators, which must be taken as true for purposes of this motion, are sufficient to satisfy both prongs of the minimum contacts test. EGA purposefully availed itself of the United States by intentionally investing in BLMIS feeder funds Sentry and Sigma via BNP SS with the express intention of profiting from BLMIS's investments in the U.S. securities market (**Section I.A**, *infra*) and engaging in other business activity aimed at the United States (**Section I.B**, *infra*), each of which constitutes an independent basis for the Court's exercise of personal jurisdiction over EGA. Each of those contacts is closely related to the Liquidators' claims. EGA therefore has sufficient minimum contacts with the United States.

### A.    EGA Knowingly And Intentionally Invested In Madoff Feeder Funds

The facts averred and evidence presented by the Liquidators make clear that EGA intentionally invested in BLMIS feeder funds Sentry and Sigma, knowing that the Funds were designed to subsequently invest that money in New York-based BLMIS. EGA is subject to this Court's jurisdiction with respect to its Sigma redemption as a result of that conduct.

1. **EGA Purposefully Availed Itself Of The United States Via Its Intentional Investment In The Funds**

This Court, applying Judge Lifland's decision in *Picard v. Bureau of Labor Ins.* (*SIPC v. Bernard L. Madoff Inv. Sec. LLC*) ("*BLI*"), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012), recently held that "[a] party 'purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS.'" *Cathay Life Ins.*, 2022 WL 16626325, at *3. *BLI* applies with at least equal force here.

In *BLI*, Judge Lifland held—in a similar action seeking to reclaim redemption payments made by the Fairfield Sentry fund—that a foreign defendant "purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." 480 B.R. at 517. As here, the *BLI* defendant subscribed in Sentry after engaging in "diligence on Fairfield Sentry and its investment strategies" and after reviewing "a private placement memorandum and other information about Fairfield Sentry, including specifics about the Fund's investment strategy and past results and trades in the S & P 100," provided to it by FGG. *Id.* at 517. And ███████████████ ██████████████, the *BLI* defendant "signed [a] Subscription Agreement [that] incorporated the [offering memorandum]," meaning the defendant knew "Sentry was required to invest at least 95% of its assets" in BLMIS, which would hold the assets in accounts in New York to be "invested in U.S. Securities…." *Id.*

It does not matter for the purpose of determining personal jurisdiction whether EGA or BNP SS signed the relevant subscription agreements, since—if BNP SS did so—it was clearly acting as EGA's agent. BNP SS's conduct in investing in the Funds was taken on behalf and for

16

the benefit of EGA: ████████████████████████████████████████████

█████ and the EGA Fund was the beneficial owner of those shares. ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████ Ex. 4 at -140-141

(emphasis added); *see also id.* at -148 (██████████████████████████████

████████████████████████████████████████████████████████

███████); Ex. 6 at -099, -101 (██████████████████████████████

██████████████████████).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████ Ex. 4 at -141, -146. There is no

evidence that EGA ever expressed any objection to BNP SS's conduct upon receipt of this notice

or information. BNP SS's conduct in executing the relevant transactions is therefore imputed to

EGA for purposes of personal jurisdiction. *See, e.g.*, *In re Eur. Gov't Bonds Antitrust Litig.*, 2020

WL 4273811, at *6.

Courts repeatedly have employed *BLI*'s reasoning to find jurisdiction in similar

circumstances. *See, e.g.*, *Picard v. JP Morgan Chase & Co.* (*In re Bernard L. Madoff Inv. Sec.*

*LLC*), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) ("[*BLI*] confirmed that

defendants who invested directly or indirectly with BLMIS and received payments from BLMIS

as initial transferees or as subsequent transferees of those initial transferees [are] subject to the

Court's personal jurisdiction"); *Maxam Absolute Return Fund, L.P.*, 460 B.R. at 118 (finding jurisdiction over defendant that "engaged in a series of repeated transactions that intentionally channeled investor money into the BLMIS Ponzi scheme in New York"); *cf. In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 105 (2d Cir. 2019) ("When these investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going.").

Most recently, this Court cited *BLI* in exercising personal jurisdiction over several defendants in actions brought by the BLMIS Trustee seeking to recoup similar redemption payments as the one at issue here. *See, e.g.*, *Cathay Life Ins.*, 2022 WL 16626325; *Barfield*, 2022 WL 4542915; *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC ("Inteligo"),* 2022 WL 17742686 (Bankr. S.D.N.Y. Dec. 15, 2022). This Court exercised jurisdiction based on allegations of similar facts as those averred here: that the defendant "knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry and Fairfield Sigma"; that Sentry "invested 95% of its assets in BLMIS and that Fairfield Sigma invested 100% of its assets in Fairfield Sentry"; that the defendant



; that the defendant

; and that the defendant

. *Compare Inteligo*, 2022 WL 17742686, at *2-3, *Cathay Life Ins.*, 2022 WL 16626325, at *3, *and Barfield*, 2022 WL 4542915, at *3, *with* Compl. ¶ 20 (alleging that EGA invested in the Funds while knowing and intending that its investments would be passed along to BLMIS), *and* Ex. 21 (

); Exs. 41 and 42 (

█████ ); Ex. 15 ( ████████████████████████████████████████

████████████████████████████████████████████████

█████████████ ). In light of these allegations, this Court held that defendants

"intentionally directed its investment to New York-based BLMIS, through Fairfield Sentry,"

which in turn was a basis for exercising personal jurisdiction pursuant to *BLI*. *Lombard Odier I*,

2022 WL 2387523, at *3; *see also Lombard Odier II*, 2023 WL 395225, at *4 (denying appeal

from *Lombard Odier I* and concluding that this Court's decision was based on proper application

of "settled precedent").

Here, the Funds' offering documents ( ██████████████████ *BLI*, *Cathay*

*Life Insurance*, *Lombard Odier I*, and others), as well as EGA's ████████████████

████████████████ , all demonstrate that EGA, a sophisticated investor, invested ███

████████████ in Sentry and Sigma with the intention, knowledge, and expectation that those

investments would be channeled into BLMIS. EGA obtained pecuniary gains through these

investments in the form of its ████████ Sigma redemption payment. Under *BLI* and this

Court's recent decisions, that defeats EGA's Motion.

Specifically, as in *BLI*, ██████████████████████████

████████████████████████████████████████████████

██████████████



Ex. 35 at -555, -556, -560;

*cf*. Exs. 38 at -732 and 37 at -674

19



███████████████████████████████████████████████████████ Ex. 35 at -561.[15]

3. ███████████████████████████████████████████████████████

*See* Ex. 35 at -560, -565-567, -571.

4. ███████████████████████████████████████████████████████

*See* Ex. 38 at -737, -744.[16]

And EGA's ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████.[17]

For example, EGA ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[15] ███████████████████████████████████████████████████████
███████████████████████████████████████ *See, e.g.*, Ex. 38 at -732, -738, -744, -746; *see also* Ex. 33 ███████████████████████████████████████████████████ Ex. 40 at -961 ███████████████████████████████████████

[16] ███████████████████████████████████████ *See* No. 11-ap-02732, Dkt. 17-4 at 8-9, 14-16.

[17] ███████████████████████████████████████████████████████
███████████████████████████████████████ *See, e.g.*, Ex. 46 ███████████████████████████████████████████████████ Ex. 47 ██████ Ex. 12 ███████████████████████████████████████
██████████.



Ex. 36 at -0344; *see also id.* at -336, -343 (

); *id.* at -458, -466 (

). EGA also

Ex. 39 at FG-05496816; *see also id.* at FG-05496846; *id.* at FG-05496849

(

).

EGA also

*See, e.g.*, Exs. 41 and 42.

*See, e.g.*, Ex. 36 at -333

*id.* at -284, -458



Ex. 38 at -735, -763

see Ex. 14.

See Ex. 16 at FG-05743341.

. *BLI*, 480 B.R. at 517. EGA thus instructed BNP SS to execute its subscriptions into both Sentry and Sigma while "knowing, intending and contemplating that the substantial majority of funds … would be transferred to BLMIS in New York to be invested in the New York securities market." *Id.* As in *BLI*, that suffices to establish jurisdiction over EGA. *See Lombard Odier I*, 2022 WL 2387523, at *3; *Lombard Odier II*, 2023 WL 395225, at *4-5.

EGA's attempts to distinguish *BLI* fail. EGA incorrectly asserts that the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014), bars jurisdiction here. Mot. 4, 13-14. *Walden* does no such thing. The *Walden* Court held there was no jurisdiction because, unlike EGA here, the defendant did not do anything to avail himself of the benefits and protections of the forum. In *Walden*, the defendant was a Georgia police officer who searched the plaintiffs and physically seized cash from them while they were passing through the state. The plaintiffs attempted to sue

22

the officer in their home state of Nevada, arguing that jurisdiction existed on the basis that the officer knew the plaintiffs were Nevada residents. 571 U.S. at 288-91. The Supreme Court rejected that theory, stating that "the plaintiff cannot be the *only* link between the defendant and the forum," as "the defendant's conduct … must form the necessary connection with the forum State." *Id*. at 289 (emphasis added). In so concluding, the Court relied on the fact that the defendant "never traveled to, conducted activities within, *contacted anyone in, or sent anything* or anyone to Nevada." *Id*. (emphasis added).

By contrast, the Liquidators do not argue (and *BLI* did not hold) that EGA is subject to jurisdiction because of the Funds' own contacts with the U.S., or EGA's knowledge of those contacts, or the mere foreseeability that the money they invested in the Funds would end up in the United States. Rather, as explained above, EGA instructed BNP SS to invest in Madoff feeder funds with the *express aim* of having those investments placed with a U.S.-based investment fund to take advantage of the U.S. securities markets and while knowing that the Funds were ███████████████████████████████████████████████████████████████. *See* Ex. 35 at -561; Ex. 37 at -680. And EGA did all of this ████████████████████ ██████████████████████████████. *See infra* Section I.B.

That conduct is not attributable to the Funds, nor are the resulting contacts "random, fortuitous, or attenuated." *Walden*, 571 U.S. at 286 (quoting *Burger King Corp*., 471 U.S. at 475). Rather, jurisdiction here, as in *BLI*, stems directly from EGA's own deliberate actions aimed at the United States. *Lombard Odier II*, 2023 WL 395225 (concluding that *Walden* does not foreclose jurisdiction in this context because "New York is not just where Defendant's money happened to end up"). Even after *Walden*, Sentry's mere involvement in facilitating some of those actions does not foreclose jurisdiction. *Id.*; *see also Walden*, 571 U.S. at 286 ("[A] defendant's contacts with

the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties.").

> **2.    EGA's Intentional Investment In The Funds Directly Relates To The Liquidators' Claims**

EGA's intentional investment in the Funds via BNP SS is directly related to the Liquidators' claims. To demonstrate a sufficient relationship between its claims and EGA's forum contacts, the Liquidators need only show "an affiliation between the forum and the underlying controversy." *Cathay Life Ins.*, 2022 WL 16626325, at *4. That standard is satisfied here.

The sole purpose for subscribing for shares of the Funds was to ultimately redeem those shares; otherwise, the Funds would hold the money in perpetuity. Without the subscriptions EGA would have had no shares to redeem and could not have received the redemption payment to which its subscriptions gave rise. The two are inextricably linked.

EGA asserts that the Liquidators' claims "relate[] to and arise[] out of the calculation of the NAV," and, from this premise, it somehow draws the conclusion that the Liquidators' claims are therefore wholly unrelated to EGA's subscription in the Funds. Mot. 12-13. But EGA cannot artificially decouple its subscriptions in the Funds from its redemptions. This Court previously rejected that argument, when this Court held that "subsequent transfer claims against [d]efendant[s] for monies [they] received from the Fairfield Funds … are directly related to [those defendants'] investment activities with Fairfield and BLMIS." *Lombard Odier I*, 2022 WL 2387523, at *4.

EGA further argues that the Liquidators have not independently established jurisdiction over each individual subsequent transfer. Mot. 11. The Court has also rejected this argument in a parallel proceeding by the BLMIS Trustee, where this Court held that "[b]y alleging that Defendant intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to each

24

subsequent transfer that originated with BLMIS." *Lombard Odier I*, 2022 WL 2387523, at *6. The Liquidators, just like the Trustee, alleged that EGA intentionally invested in BLMIS and have therefore established jurisdiction as to each subsequent transfer.

**B.    EGA Engaged In Other Business Activity Directed At The United States**

EGA's additional U.S.-oriented business activity also supports the exercise of jurisdiction here. Business contacts have long been considered a basis for the exercise of jurisdiction over a foreign defendant where that conduct is sufficiently related to the claims at issue. *See, e.g.*, *Burger King Corp.*, 471 U.S. at 475-76 (collecting cases). That is true even where the defendant conducted most or even all of this business while overseas, *see In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 319 (S.D.N.Y. 2020) (explaining that conduct that "occurs entirely out-of-forum" may support jurisdiction "if the defendant expressly aimed its conduct at the forum" (quoting *Licci IV*, 732 F.3d at 173)), *rev'd in part on other grounds*, 61 F.4th 242 (2d Cir. 2023), and even where the conduct is carried out by the defendant's agent, *see In re Eur. Gov't Bonds Antitrust Litig.*, 2020 WL 4273811, at *6 (S.D.N.Y. July 23, 2020). EGA has at least two categories of such contacts relevant here.

*First*, the



. *See, e.g.*,

Ex. 35 at -542, -591; Ex. 37 at -709[18]; *see also* Compl. ¶ 23 (alleging that BNP SS agreed to submit

---

[18]


to the jurisdiction of New York courts in connection with proceedings related to Sentry and Sigma). Judge Bernstein previously held that those provisions, standing alone, did not amount to a consent to personal jurisdiction in this action. *In re Fairfield Sentry Ltd.*, 2018 WL 3756343, at *11 (Bankr. S.D.N.Y. Aug. 6, 2018).[19] But they nonetheless support the exercise of jurisdiction: "A choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law" and signal a lack of objection to litigating at least some disputes in U.S. courts. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004); *see also In re Motors Liquidation Co.*, 565 B.R. 275, 288-89 (Bankr. S.D.N.Y. 2017) (holding that forum selection and choice of law clauses "support[ed] finding personal jurisdiction"); *Lombard Odier I*, 2022 WL 2387523, at *5 n.2 (same); *BLI*, 480 B.R. at 516, 517 n.15 (same).

*Second*, ███████████████████████████████████████████ ███████████████████████████████████████████████ *see* Ex. 21; Ex. 41; Ex. 42, ███████████████████████████████████████ ███████████████████████ *see* Ex. 34 at -786, ██████████████████ ████████████, *see* Ex. 14. ███████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████

_____

████████████████████████████████████████████████ ██████████████

[19] The Liquidators are appealing that decision to the Second Circuit.

[20] ██████████████████████████████████████████████ █████████████████ *See supra* note 9.

Those contacts, particularly when considered alongside EGA's intentional investment in Madoff feeder funds, support this Court's exercise of personal jurisdiction over EGA. And each of these contacts plainly relate to the Liquidators' claims. The forum-selection and choice-of-law clauses were contained in the subscription agreements that gave rise to the redemption payment at issue here. ██████████████████████████████████████████████████████████

██████████████████████████████████████████████████. *In re Fairfield Sentry Ltd.*, 596 B.R. 275, 301 (Bankr. S.D.N.Y. 2018). That is more than sufficient to conclude that the above contacts relate to the Liquidators' claims and therefore support the exercise of jurisdiction. *See Cathay Life Ins.*, 2022 WL 16626325, at *4.

### C.    The Court May Exercise Jurisdiction Over EGA Even If The Transfers Are Deemed Foreign For Purposes Of The Bankruptcy Safe Harbor Analysis

EGA attempts to make much ado about nothing by insisting that the Liquidators have previously conceded "[t]he redemption transfers at issue here were purely foreign" and that "every relevant component of the transactions at issue here occurred outside the [U.S.]" Mot. 3 (quoting Pls.' Appellants' Opening Br. for Second-Round Appeal at 24, *Fairfield Sentry Ltd. v. Citibank NA London*, No. 19-cv-3911, Dkt. 440 (S.D.N.Y. July 21, 2021) ("Pls.' Opening Br.")); *see also id.* at 12 ("As the Plaintiffs have elsewhere conceded, every material element of the transaction is 'purely foreign.'" (quoting Pls.' Opening Br. at 24)). EGA quotes the Liquidators' appellate brief out of context and ignores black-letter law holding that "[t]he tests for personal jurisdiction and extraterritoriality are not the same." *In re Ampal-Am. Israel Corp.*, 562 B.R. 601, 613 n.14 (Bankr. S.D.N.Y. 2017); *see also Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012) (distinguishing the two tests).

For this reason, the set of facts relevant to the personal jurisdiction inquiry is different from the set of facts relevant to the extraterritoriality inquiry. *Compare RJR Nabisco, Inc. v. European*

27

*Cmty.*, 579 U.S. 325, 337 (2016) (explaining that the extraterritoriality inquiry focuses on "conduct relevant to the statute's focus"), *with Licci IV*, 732 F.3d at 170 (holding that the specific personal jurisdiction inquiry focuses on the "totality" of the defendant's forum contacts that give rise or relate to the plaintiff's claim). In this action, "the focus [of the *extraterritoriality*] analysis is the location of the transfer" itself. *Picard v. Bureau of Lab. Ins.*, 2016 WL 6900689, at *19 (Bankr. S.D.N.Y. Nov. 22, 2016), *vacated and remanded on other grounds*, 917 F.3d 85. By contrast, the personal jurisdiction inquiry addresses a much broader set of facts, *see supra* Sections I.A-I.B, including, EGA's knowledge and intent in making the investments that gave rise to the redemption at issue, *see BLI*, 480 B.R. at 517, ███████████████████████████████████ ███████████████████████████, *see Cathay Life Ins.*, 2022 WL 16626325, at *3, and ███ ███████████████████████████████████, *see Sunward Elecs.*, 362 F.3d at 23.

The Liquidators referred to the redemption transfers as "purely foreign," because under applicable law the only "*relevant component[s]*" of the redemption transfers for purposes of the extraterritoriality analysis were in fact foreign, Pls.' Opening Br. at 24 (emphasis added), not because it "served their purposes." Mot. 3. The Liquidators' characterization of the transfers as foreign for purposes of extraterritoriality has no bearing on this motion.[21]

### D.    The Court Should Reject EGA's "Group Pleading" Argument

EGA argues that because the Liquidators engaged in so-called "group pleading" with respect to their jurisdictional allegations, they cannot satisfy their burden of establishing personal jurisdiction on an individualized basis. Mot. 17. Not so. As the Defendant acknowledges, the Liquidators' complaint includes allegations specific to EGA. *See* Mot. 1; Compl. ¶ 42 ("Based on

---

[21] For years, the Liquidators have consistently made these extraterritoriality and personal jurisdiction arguments in tandem, pointing out that transfers that are "foreign" for purposes of extraterritoriality may still support personal jurisdiction. *See* Pls.' Opening Br. at 68-69.

Sentry and Sigma records, some or all of the Redemption Payments made to BNP Paribas SSL may have been paid to an account holder or holders associated with the Beneficial Shareholder, Rothschild & Cie Banque-EGA."). And where the complaint does generalize amongst groups of defendants, it does so because the Liquidators' allegations apply with equal force to each defendant within that group. "Nothing … prohibits [the Liquidators from] collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015). And, post-discovery, the question is not just what the Liquidators alleged, but whether the Liquidators have averred facts that, when credited, establish personal jurisdiction. *Metro. Life Ins. Co.* 84 F.3d at 567.

Here, the Liquidators have averred facts based on documents and information uncovered during discovery which support the Court's exercise of personal jurisdiction over EGA. These facts show EGA's intent to invest in the U.S. securities market and engagement in additional business activity connected to the claims at issue. Based on those facts specific to EGA and its relevant forum contacts, the Liquidators have met their burden to establish jurisdiction over EGA on an individualized basis.

## II.    The Exercise Of Jurisdiction Over EGA Is Reasonable

Exercising specific jurisdiction over EGA—which, through its agent BNP SS, deliberately chose to invest in and profit from the U.S. securities market—is "reasonable under the circumstances" presented here. *U.S. Bank Nat'l Ass'n*, 916 F.3d at 150 (quoting *Bristol-Myers Squibb*, 137 S. Ct. at 1786). Because the Liquidators have made "a threshold showing of minimum contacts," the burden is on EGA to "present[] 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Metro. Life Ins. Co.*, 84 F.3d at 568 (quoting *Burger King Corp.*, 471 U.S. at 477). EGA has not done so.

To assess reasonableness, courts consider: "(1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the 'interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and (5) 'the shared interests of the several States in furthering fundamental substantive social policies.'" *U.S. Bank Nat'l Ass'n*, 916 F.3d at 151 n.5 (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987)). "The primary concern is the burden on the defendant," *id.* (cleaned up), and dismissals on reasonableness grounds "should be few and far between," *Metro. Life Ins. Co.*, 84 F.3d at 575. These factors strongly support the exercise of jurisdiction in this case.

In an effort to characterize the exercise of jurisdiction as unreasonable, EGA argues that: (1) the United States' interest in this dispute is "minimal at best"; (2) EGA would face "substantial burdens" litigating here because discovery "would potentially expose" it to "civil and criminal liability"; and (3) the Liquidators have not demonstrated that it is "more reasonable" to litigate here than elsewhere. Mot 24-26. These arguments are meritless.

*First*, contrary to EGA's assertion, courts have long recognized that the U.S. has a strong interest in ensuring that its financial system is not used for unlawful purposes. *See, e.g.*, *Strauss v. Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 31 (E.D.N.Y. 2016) ("[T]he Court also may take into account 'the United States' and New York's interest in monitoring banks and banking activity to ensure that its system is not used' [for unlawful purposes]." (quoting *Licci IV*, 732 F.3d at 174)). At its core, the case is about EGA's decision to indirectly invest in and reap profits from BLMIS and the U.S. securities market through feeder funds. Allowing foreign investors like EGA to evade U.S. jurisdiction in these circumstances simply because they chose to invest through a foreign-based conduit as part of their scheme would ignore the reality of the transactions, allowing those

30

investors to reap all the benefits of the U.S. securities market without any of the corresponding obligations.

EGA argues that the United States' interests are minimal because subject matter jurisdiction would not exist over the Liquidators' "non-core" claim but for the Chapter 15 recognition of the Liquidators' foreign liquidation proceedings. Mot. 24. That counterfactual argument is a red herring. This Court has already found that it has subject matter jurisdiction and should find now that the United States has an interest in this dispute.

*Second*, EGA has no legally cognizable burden here. As in *Lombard Odier I*, "Defendant has actively participated in this Court's litigation for over ten years. It is represented by U.S. counsel and 'irrevocably' submitted to the jurisdiction of New York courts[] when it signed its subscription agreements with the Fairfield Funds." 2022 WL 2387523, at *5. And "the conveniences of modern communication and transportation ease any burden the defense of this case in New York might impose on" EGA. *See Licci*, 732 F.3d at 174 (citation omitted).

EGA argues that engaging in document discovery about redemption payments in the United States "would *potentially* expose" it "to civil and criminal liability" under foreign law. Mot. 25 (emphasis added). However, EGA has already substantially completed its production of documents for purposes of jurisdictional discovery, directly contradicting its argument. EGA produced such jurisdictionally relevant documents to the Liquidators ██████████████████ ████████████████████, clearly demonstrating its ability to engage in discovery without violating foreign law.

Even if EGA had legitimate discovery concerns, they have no place "in the context of assessing the reasonableness of an exercise of personal jurisdiction." *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 333 (S.D.N.Y. 2018) (cleaned up), *aff'd*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018); *see Gucci*

*Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 99 (S.D.N.Y. 2015) (noting "no other courts"

considered this type of foreign law argument, and "declin[ing] to be the first"). EGA does not cite

a single case in which a court has declined to exercise personal jurisdiction because some aspect

of discovery theoretically "could implicate"—not even necessarily violate—foreign laws at some

future indeterminate point.

 *Third*, EGA's assertion that the Liquidators "have not demonstrated that it is *more*

reasonable for them to litigate their claims against EGA in New York rather than in the BVI … or

in France," Mot. 25 (emphasis added), is flatly inconsistent with personal jurisdiction law. EGA

does not provide any legal support for the proposition that the existence of an alternate forum has

any bearing on personal jurisdiction or renders the exercise of jurisdiction in the United States

unreasonable.[22] A different jurisdiction's concurrent ability to hear claims has no bearing on

whether it is *unreasonable* for a U.S. court to likewise do so. In addition, this Court hears other

cases about the very same Ponzi-scheme. *See, e.g.*, *Irving H. Picard, Trustee for the Liquidation

of Bernard L. Madoff Investment Securities LLC v. Alpha Prime Fund Limited et al.*, No. 09-ap-

013496 (Bankr. S.D.N.Y.). It is reasonable for this case, involving the same scheme and same

Defendant, to be litigated in the same Court.

 *Finally*, EGA's characterization of the Liquidators' selection of this forum as

"maneuvering," Mot. 26, is baseless. It is contradicted by the chronology of this case: over 200

suits were pending in this Court before any substantive decision was issued by any BVI court, and

---

[22] EGA's argument sounds vaguely like a *forum non conveniens* argument, but it did not move to
dismiss on those grounds. Even if such a motion were before the Court (it is not), the Court would
"begin with the assumption that the plaintiff's choice of forum will stand unless the defendant
meets the burden" of demonstrating otherwise. *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71
(2d Cir. 2001). "The plaintiff's choice of forum should rarely be disturbed" "[u]nless the balance
is strongly in favor of the defendant." *Id.* at 70 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501,
508 (1947)), which it is not here.

it was the BVI action *defendants* that pushed the BVI litigation into the preliminary issues process and thereafter cited that process as support for a stay of the U.S. litigation (over the Liquidators' objections). *See Fairfield Sentry Ltd. (In Liquidation) v. Theodoor GGC Amsterdam*, No. 10-ap-03496 (Bankr. S.D.N.Y), Dkt. 925 (Hare Decl. dated Oct. 21, 2016); *id.* Dkt. 1407 (Molton Decl. dated April 6, 2017); *id.* Dkt. 1406 (Liquidators' Br. dated April 6, 2017) at 17-19.

Moreover, EGA cites dicta from a single case, *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1031 (2021), in which the Supreme Court distinguished its ruling in another personal jurisdiction case, *Bristol-Myers Squibb*, 137 S. Ct. 1773, where the plaintiffs had engaged in forum shopping. In *Ford*, the Supreme Court upheld the exercise of personal jurisdiction on the ground that "the connection between plaintiffs' claims and [defendant's] activities" in the forum states was "close enough." 141 S. Ct. at 1032. In *Bristol-Myers Squibb*, the Supreme Court found a lack of personal jurisdiction when non-California plaintiffs sued Bristol-Myers in California over a drug that Bristol-Myers sold nationwide. 137 S. Ct. at 1778-79. In *Ford*, the Court explained that the *Bristol-Myers* result turned on the complete lack of *plaintiffs'* contacts with California: they had neither purchased nor ingested the drug in California, nor had they been injured there. 141 S. Ct. at 1031-32. Here, EGA's intent to invest in BLMIS via the Funds and its additional contacts with the United States are closely connected to the Liquidators' claims, as explained above. *Ford* therefore supports the exercise of jurisdiction here, and *Bristol-Myers Squibb* is wholly inapplicable. EGA has failed to establish that the exercise of jurisdiction is unreasonable.[23]

---

[23] EGA also cites out-of-circuit cases for the proposition that defendants should be dismissed where their contacts "only barely satisfy the minimum contacts standard" and "a majority of the reasonableness factors weigh against the exercise of jurisdiction." Mot. 26. But cases in which the reasonableness analysis warrants dismissal notwithstanding a showing of sufficient minimum

In sum, EGA has failed to establish that the exercise of jurisdiction is unreasonable, where it intentionally invested in Madoff feeder funds. EGA cannot now shield itself from liability after benefiting from those U.S. investments.

## **CONCLUSION**

For the reasons discussed above, the Court should deny EGA's Motion.

---

contacts are "few and far between." *Cunningham v. Gen. Motors LLC,* 2021 WL 827124, at *2 (S.D.N.Y. Mar. 4, 2021) (quoting *Metro. Life Ins. Co.*, 84 F.3d at 575). In any event, this is not such a case. Here, the minimum contacts standard is squarely satisfied. Nor does EGA come close to showing that a majority of the reasonableness factors weighs in its favor and against the Liquidators, so the out-of-circuit cases on which it relies are inapplicable.

Date: April 5, 2023

Respectfully submitted,

SELENDY GAY ELSBERG PLLC

/s/    David Elsberg
David Elsberg
Maria Ginzburg
Jordan Goldstein
Lena Konanova
David S. Flugman
Joshua S. Margolin
1290 Avenue of the Americas
New York, New York 10104
Telephone: 212-390-9000
delsberg@selendygay.com
mginzburg@selendygay.com
jgoldstein@selendygay.com
lkonanova@selendygay.com
dflugman@selendygay.com
jmargolin@selendygay.com

-and-

BROWN RUDNICK LLP
David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, New York 10036
Telephone: 212-209-4800
dmolton@brownrudnick.com
mkrzyzowski@brownrudnick.com

*Attorneys for the Plaintiffs Joint Liquidators*