UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FAIRFIELD SENTRY LIMITED, et al.,<br><br>　　　　　Debtor in Foreign<br>　　　　　Proceedings. | Chapter 15 Case<br><br>Case No. 10-13164 (CGM)<br><br>Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al.,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>BNP PARIBAS SECURITIES SERVICES LUXEMBOURG, ET AL.,<br><br>　　　　　Defendants. | Adv. Pro. No. 10-03627 (CGM) |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Date: May 11, 2023

SELENDY GAY ELSBERG PLLC

David Elsberg
Maria Ginzburg
Jordan Goldstein
Lena Konanova
David S. Flugman
Joshua S. Margolin
Lauren Zimmerman
1290 Avenue of the Americas
New York, NY 10104
Telephone: 212-390-9000

-and-

BROWN RUDNICK LLP

David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800

## <u>TABLE OF CONTENTS</u>

<u>Pages</u>

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ....................................................................................................................5

    A.    The Funds ...................................................................................................5

    B.    BNP SSL's Spoliation Of ESI Reflecting Jurisdictional Contacts And The
Court's Adverse Inference .........................................................................5

    C.    BNP SSL's Investment In The Funds .........................................................7

STANDARD .......................................................................................................................12

ARGUMENT ......................................................................................................................13

I.    BNP SSL Has Sufficient Minimum Contacts With The United States ...........................13

    A.    BNP SSL Knowingly And Intentionally Invested In Madoff Feeder Funds .........15

        1.    BNP SSL Purposefully Availed Itself Of The United States Via Its
Intentional Investment In The Funds .........................................................15

        2.    BNP SSL's Intentional Investment In The Funds Directly Relates
To The Liquidators' Claims......................................................................22

    B.    BNP SSL Engaged In Other Business Activity In And Directed At The
United States ..........................................................................................23

        1.    Evidence Indicates BNP SSL Engaged In Business Activity In And
Directed At The United States ..................................................................24

        2.    The Court Should Infer That More Extensive Evidence of U.S.
Business Activity Once Existed And Has Been Destroyed ......................25

    C.    BNP SSL Utilized U.S. Correspondent Accounts To ██████████
Receive Redemption Payments From Sentry .............................................26

        1.    BNP SSL Deliberately Utilized U.S. Correspondent Accounts ...............27

        2.    BNP SSL Utilized U.S. Correspondent Accounts To Effectuate At
Least ██ Wire Transfers........................................................................32

        3.    BNP SSL's Correspondent Account Use Was Sufficiently Related
To The Harms Alleged.............................................................................34

D.      The Court May Exercise Jurisdiction Over BNP SSL Even If The
Transfers Are Deemed Foreign For Purposes Of The Bankruptcy Safe
Harbor Analysis ......................................................................................................34

II.     The Exercise Of Jurisdiction Over BNP SSL Is Reasonable..............................................36

CONCLUSION.........................................................................................................................40

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto,*
　　677 F.3d 60 (2d Cir. 2012)..................................................................................35

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,*
　　98 F.3d 25 (2d Cir. 1996)....................................................................................25

*In re Ampal-Am. Israel Corp.,*
　　562 B.R. 601 (Bankr. S.D.N.Y. 2017)................................................................35

*In re Arcapita Bank B.S.C.(C),*
　　2022 WL 1620307 (S.D.N.Y. May 23, 2022) ....................................................30

*Averbach v. Cairo Amman Bank,*
　　2020 WL 486860 (S.D.N.Y. Jan. 21, 2020) ...................................................32, 33

*In re Bernard L. Madoff Investment Securities LLC ("Lombard Odier II"),*
　　2023 WL 395225 (S.D.N.Y. Jan. 25, 2023) ...........................................4, 17, 21

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.,*
　　137 S. Ct. 1773 (2017).........................................................................................40

*Burger King Corp. v. Rudzewicz,*
　　471 U.S. 462 (1985).......................................................................................13, 23

*Cunningham v. Gen. Motors LLC,*
　　2021 WL 827124 (S.D.N.Y. Mar. 4, 2021) .....................................................37, 40

*Drake v. Lab. Corp. of Am. Holdings,*
　　2008 WL 4239844 (E.D.N.Y. Sept. 11, 2008) ...............................................12, 13

*In re Eur. Gov't Bonds Antitrust Litig.,*
　　2020 WL 4273811 (S.D.N.Y. July 23, 2020) ...................................................23

*In re Fairfield Sentry Ltd.,*
　　2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018)................................22, 23, 24

*In re Fairfield Sentry Ltd.,*
　　596 B.R. 275 (Bankr. S.D.N.Y. 2018).............................................................26, 31

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.,*
　　141 S. Ct. 1017 (2021).........................................................................................40

*Gucci Am., Inc. v. Weixing Li,*
    135 F. Supp. 3d 87 (S.D.N.Y. 2015)......................................................................38

*Hau Yin To v. HSBC Holdings PLC,*
    2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ......................................................30, 31

*Hill v. HSBC Bank PLC,*
    207 F. Supp. 3d 333 (S.D.N.Y. 2016).............................................................30, 31

*Iragorri v. United Techs. Corp.,*
    274 F.3d 65 (2d Cir. 2001)...........................................................................39

*J. McIntyre Mach., Ltd. v. Nicastro,*
    564 U.S. 873 (2011)...................................................................................21

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
    673 F.3d 50 (2d Cir. 2012)...........................................................................3, 9

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci IV*"),
    732 F.3d 161 (2d Cir. 2013)................................................................... *passim*

*Loginovskaya v. Batrachenko,*
    764 F.3d 266 (2d Cir. 2014).........................................................................36

*In re Madoff Sec.,*
    513 B.R. 222 (S.D.N.Y. 2014).......................................................................36

*Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.,*
    12 N.E.3d 456 (N.Y. 2014)..........................................................................33

*McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani,*
    295 F. Supp. 3d 404 (S.D.N.Y. 2017).............................................................12

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
    84 F.3d 560 (2d Cir. 1996)..................................................................12, 13, 36

*In re Motors Liquidation Co.,*
    565 B.R. 275 (Bankr. S.D.N.Y. 2017)..............................................................24

*MSP Recovery Claims, Series LLC v. Takeda Pharm. Am., Inc.,*
    2021 WL 4461773 (S.D.N.Y. Sept. 29, 2021)....................................................14

*Nike, Inc. v. Wu,*
    349 F. Supp. 3d 310 (S.D.N.Y. 2018).............................................................38

*Obabueki v. Int'l Bus. Machines Corp.,*
    2001 WL 921172 (S.D.N.Y. Aug. 14, 2001)................................................12, 13

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
   549 B.R. 56 (S.D.N.Y. 2016) .................................................................................28, 29, 30, 33

*Picard v. ASB Bank Corp. (In re Madoff)*,
   2022 WL 17087667 (Bankr. S.D.N.Y. Nov. 18, 2022) ............................................................25

*Picard v. Banque Lombard Odier & Cie SA (In re Bernard L. Madoff)* ("*Lombard
   Odier I*"),
   2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022) ..................................................... *passim*

*Picard v. Barfield Nominees Ltd. (In re Bernard L. Madoff)*,
   2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28, 2022) ..............................................................4

*Picard v. Bureau of Lab. Ins.*,
   2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016) ............................................................35

*Picard v. Bureau of Lab. Ins. (SIPC v. Bernard L. Madoff Inv. Sec. LLC)* ("*BLI*"),
   480 B.R. 501 (Bankr. S.D.N.Y. 2012) ......................................................................... *passim*

*Picard v. Cathay Life Ins. Co. (In re Bernard L. Madoff)* ("*Cathay Life Ins.*"),
   2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022) ..................................................... *passim*

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)* ("*FGG*"),
   627 B.R. 546 (Bankr. S.D.N.Y. 2021) ..........................................................................13, 14, 34

*Picard v. JP Morgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) ............................................................16

*Picard v. LGT Bank in Liechtenstein Ltd. (In re Madoff)*,
   2023 WL 2003960 (Bankr. S.D.N.Y. Feb. 14, 2023) ......................................................25, 26

*Picard v. Maxam Absolute Return Fund, L.P.*,
   460 B.R. 106 (Bankr. S.D.N.Y. 2011) ........................................................................14, 16

*Picard v. Meritz Fire & Marine Ins. Co. Ltd. (In re Bernard L. Madoff)*,
   2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) ............................................................27

*Picard v. Parson Finance Panama S.A. (In re Bernard L. Madoff)*,
   2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) ..............................................................19

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
   917 F.3d 85 (2d Cir. 2019) ........................................................................................16

*In re Platinum & Palladium Antitrust Litig.*,
   449 F. Supp. 3d 290 (S.D.N.Y. 2020) ..........................................................................23

*Ralph Lauren Corp. v. CSR Grp., Inc.*,
   2016 WL 4919961 (S.D.N.Y. Sept. 14, 2016) ..................................................................25

*RJR Nabisco, Inc. v. European Cmty.*,
  579 U.S. 325 (2016)................................................................................35

*Rushaid v. Pictet & Cie*,
  68 N.E.3d 1 (N.Y. 2016)........................................................................30

*Schansman v. Sberbank of Russia PJSC*,
  2021 WL 4482172 (S.D.N.Y. Sept. 30, 2021)........................................33

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  594 B.R. 167 (Bankr. S.D.N.Y. 2018)..............................................34, 39

*Strauss v. Credit Lyonnais, S.A.*,
  175 F. Supp. 3d 3 (E.D.N.Y. 2016) .......................................................37

*Suez Water N.Y. Inc. v. E.I. Du Pont Nemours Co.*,
  2022 WL 36489 (S.D.N.Y. Jan. 4, 2022) ..............................................14

*Sunward Elecs., Inc. v. McDonald*,
  362 F.3d 17 (2d Cir. 2004)...............................................................24, 35

*Tamam v. Fransabank SAL*,
  677 F. Supp. 2d 720 (S.D.N.Y. 2010)....................................................31

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
  916 F.3d 143 (2d Cir. 2019)......................................................13, 36, 37

*Universal Trading & Inv. Co., Inc. v. Tymoshenko*,
  2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012) ...................................33, 34

*Walden v. Fiore*,
  571 U.S. 277 (2014)..........................................................................20, 21

**Statutes**

Federal Rule of Bankruptcy Procedure 7004...............................................13

Federal Rule of Bankruptcy Procedure 7012.................................................1

Federal Rule of Civil Procedure 12(b)(2) .....................................................1

Federal Rule of Civil Procedure 30(b)(6) .....................................................6

Federal Rule of Civil Procedure 34(a) ..........................................................5

Federal Rule of Civil Procedure 37(e) ..........................................................6

**Other Authorities**

*Incidental*, Black's Law Dictionary (11th ed. 2019) ....................................................................31

Jason Szep, *Savings Lost to Madoff, Elderly Forced Back to Work*, Reuters (Feb.
6, 2009) ....................................................................................................................................1

Kenneth M. Krys and Greig Mitchell (the "Liquidators"), in their capacities as the duly appointed Liquidators and Foreign Representatives of Fairfield Sentry Limited (In Liquidation) ("Sentry") and Fairfield Sigma Limited (In Liquidation) ("Sigma" and, together with Sentry, the "Funds") in the above-captioned adversary proceeding, respectfully submit this memorandum of law in opposition to Defendant BNP Paribas Securities Services Luxembourg's ("BNP SSL"),[1] motion to dismiss the Fifth Amended Complaint ("Complaint" or "Compl.") (Dkt. 143)[2] under Federal Rule of Civil Procedure 12(b)(2) as made applicable here by Rule 7012 of the Federal Rules of Bankruptcy Procedure ("Motion" or "Mot.") (Dkt. 169).

## PRELIMINARY STATEMENT

The Liquidators seek to recover at least $46.9 million in payments[3] that BNP SSL received as redemptions of its investment in Bernie Madoff's Ponzi scheme on behalf of its clients. Several Fairfield investors saw their life savings, retirement funds, and pensions wiped out in an instant when the scheme collapsed in December 2008.[4] But as a sophisticated entity with inside knowledge about Madoff's fraud, BNP SSL was able to get out early and reap a massive profit for

---

[1] According to its interrogatory responses, "[BNP SSL] was a branch… of an entity incorporated in France." Ex. 1 at 21. Discovery shows ███████████████████████████████████████ ███████████████████████████, Ex. 2 at -989 ████████████████████████████████. The Liquidators' references to "BNP SSL" herein therefore include the BNP SS entity as a whole.

[2] Unless otherwise specified, docket citations refer to filings in the above-captioned action and all exhibit citations refer to those attached to the Declaration of David S. Flugman ("Flugman Decl.")

[3] BNP SSL redeemed $39,662,951.91 from Sentry and approximately €5,739,087.36 from Sigma through the redemption payments at issue. For purposes of this brief, the Liquidators have applied the exchange rate as of the date of each redemption payment out of Sigma and calculated the dollar value of the Sigma redemptions to be approximately $7,364,992.84. This number may vary if the Court ultimately determines that a different exchange rate applies.

[4] *See generally* Jason Szep, *Savings Lost to Madoff, Elderly Forced Back to Work*, Reuters (Feb. 6, 2009), https://www.reuters.com/article/us-madoff-victims/savings-lost-to-madoff-elderly-forced-back-to-work-idUSTRE5156FB20090207.

itself and its clients before Madoff's investment firm was put into bankruptcy. BNP SSL now attempts to evade responsibility by minimizing its own substantial and purposeful connections with the U.S.; BNP SSL should be held to account and its motion to dismiss denied.

The facts relevant to this motion are simple. When BNP SSL withdrew its investments from two Fairfield Funds, it received inflated redemption payments that were substantially sourced from investors' monies that Fairfield had invested in Madoff's eponymous New York investment firm Bernard L. Madoff Securities LLC ("BLMIS"), through which Madoff operated his Ponzi scheme. Both ███████████████████ and, at the expense of other investors, to receive redemption payments from the Funds—the same redemption payments the Liquidators seek to recover in this action—BNP SSL deliberately and repeatedly utilized U.S. bank accounts. BNP SSL knew where its investments were going: it took these actions after ████████████ ████████████████████████████████████████████████████ ████████████████████████████████. BNP SSL is subject to this Court's jurisdiction as a result of that conduct.

For the Court to exercise specific jurisdiction over a defendant, the defendant must have sufficient contacts with the forum that relate to the claims at issue, and the exercise of jurisdiction must be reasonable. Evidence that the Liquidators have been able to obtain shows that BNP SSL:

- Subscribed for shares in Sentry and Sigma (including via transfer), worth more than ████████████, from 2004 through 2008,[5] with the sole purpose of investing in U.S.-based  BLMIS ████████████████████████████████████

---

[5] The dollar value of BNP SSL's Sigma subscriptions is calculated in the manner discussed above, *see supra* note 3, and is subject to the same caveat discussed therein.



- Utilized its U.S. correspondent account[8] to execute ███████████ ████████████ and to receive 12 redemption payments (worth $39,662,951.91) from Sentry;

- Signed several subscription agreements with Sentry and Sigma that subjected BNP SSL to the laws and jurisdiction of New York;

- ████████████████████████████████████████████████████████ and,

- ████████████████████████████████████████████

These facts alone are sufficient to establish this Court's jurisdiction. But the Court is not limited to considering just the facts evident from the limited discovery BNP SSL was able to produce or that the Liquidators have been able to obtain from third parties. As this Court held in its March 17, 2023 Order Granting the Joint Liquidators' Motion for Sanctions, Dkt. 247 (the "Spoliation Order"), BNP SSL intentionally spoliated evidence bearing directly on the question of personal jurisdiction. Pursuant to that finding, this Court can and should conclude that additional documentary evidence once existed and that that evidence would have shown that BNP SSL

---

[6] Throughout this brief, the Liquidators refer to BNP SSL's "investment" with BLMIS. The Liquidators do not allege that BNP SSL invested in BLMIS itself, but instead refer to its investment in BLMIS by way of the Funds.

[7] BNP SSL subscribed for shares in Sentry and Sigma on behalf of various "Beneficial Shareholders." Compl. ¶ 34; *see also* Compl. ¶ 35-43. Accordingly, BNP SSL subscribed to shares using, and redeemed shares from, accounts with Sentry and Sigma ████████████ ███████████████████. When referring to Sentry and Sigma subscriptions for the purpose of this Opposition, the Liquidators have only included subscriptions made by BNP SSL ████ ████████████████████████████████████████████████. BNP SSL's actual total investment was likely higher, but, as discussed *infra* at note 12, due to BNP SSL's spoliation, the Liquidators have been forced to rely on an incomplete set of records obtained from third parties.

[8] "Correspondent accounts are accounts in domestic banks held in the name of foreign financial institutions" that are used "to effect dollar transactions." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci II*"), 673 F.3d 50, 56 n.3 (2d Cir. 2012) (cleaned up).

engaged in extensive, intentional contacts with the United States in connection with its subscriptions in and redemptions from the Funds.

The existing evidence, together with that adverse inference, is plainly sufficient to support the exercise of personal jurisdiction. Indeed, this Court recently held as much regarding similar investments in the Funds in actions brought by the BLMIS Trustee.[9] And these contacts directly relate to the crux of the Liquidators' claims: that BNP SSL redeemed its shares knowing that the payments it would receive in return would be inflated due to inaccurate and fraudulent value statements. Without these U.S. contacts, there would have been no investment, no redemptions, and no benefit to BNP SSL. The factual nexus between BNP SSL's forum contacts and the Liquidators' claims more than sufficiently supports the exercise of specific personal jurisdiction.

This Court's exercise of personal jurisdiction over BNP SSL is also more than reasonable, and allowing the suit to proceed is consistent with notions of fair play and substantial justice. The United States has a substantial interest in this dispute, as it concerns BNP SSL's deliberate choice to invest ███████████ in, and wrongfully profit from, a fraudulent scheme in the U.S. securities market and to use the U.S. banking system to pull it off at the expense of other investors. Any burden BNP SSL faces as a litigant in this forum is minimal at best and can be mitigated through electronic transmission of document productions and redactions to address asserted privacy concerns arising from foreign law. BNP SSL has not met its burden of presenting a compelling case that exercising jurisdiction would be unreasonable.

---

[9] *See, e.g., Picard v. Banque Lombard Odier & Cie SA (In re Bernard L. Madoff)* ("*Lombard Odier I*"), 2022 WL 2387523, at *3 (Bankr. S.D.N.Y. June 30, 2022), *leave to appeal denied sub nom. In re Bernard L. Madoff Investment Securities LLC* ("*Lombard Odier II*"), 2023 WL 395225 (S.D.N.Y. Jan. 25, 2023); *Picard v. Cathay Life Ins. Co. (In re Bernard L. Madoff)* ("*Cathay Life Ins.*"), 2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022); *Picard v. Barfield Nominees Ltd. (In re Bernard L. Madoff)* ("*Barfield*"), 2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28, 2022).

The Court should deny BNP SSL's Motion and reach the merits of the Liquidators' claims.

## BACKGROUND

### A.    The Funds

Sentry and Sigma, along with non-party Fairfield Lambda, were collectively the largest BLMIS "feeder funds," funneling billions of dollars into New York-based BLMIS over 18 years. Compl. ¶¶ 46, 47. From their inception in 1990 until the widespread disclosure of Madoff's fraud in December 2008, the Funds sought out new investments through the sale of shares and transferred substantially all net proceeds to their New York accounts, which were managed by BLMIS. *Id.* ¶¶ 5, 46, 47. Sentry transferred its proceeds directly to BLMIS in New York, while Sigma, established for Euro-denominated investments, transferred its proceeds to Sentry. *Id.*

### B.    BNP SSL's Spoliation Of ESI Reflecting Jurisdictional Contacts And The Court's Adverse Inference

While existing records paint a partial picture of BNP SSL's activities related to its Fund investments, this Court has held that BNP SSL destroyed evidence that "would have been favorable to the Liquidators in establishing personal jurisdiction." Spoliation Order ¶ 3.

On August 5, 2021, this Court lifted the stay and opened discovery in this action. Dkt. 141. Over the following year, the Liquidators sought discovery from BNP SSL, including electronically stored information ("ESI")[10] that would be relevant to the jurisdictional inquiry before the Court. But BNP SSL had egregiously failed to preserve plainly relevant evidence. For 15 of the 31 potential custodians identified by BNP SSL, it preserved no emails at all from the relevant period (2002 to 2008). Although the remaining 16 custodians possessed some unknown quantity of emails

---

[10] "ESI" should encompass "any type of information that is stored electronically … such as email … [and] all current types of computer-based information." Fed. R. Civ. P. 34(a) advisory committee's note to 2006 amendment.

5

in archives from the relevant period, BNP SSL located no responsive, non-privileged emails for those custodians, and BNP SSL had no systematic process in place to preserve relevant emails. BNP SSL's custodians included individuals with the roles "Client Account Manager," "Account Manager/Agent," and "Relationship Manager," Ex. 28 at Ex. A. (BNP SSL's Supplemental Interrogatory Responses), who the Court can infer likely communicated both with BNP SSL's clients and with Citco and/or FGG in connection with BNP SSL's investments in the Funds. In total, BNP SSL produced *just five emails* (each with an attachment), all from a single group email address, and all received by that address in a 25-day period in 2007. The Liquidators took a Rule 30(b)(6) deposition and submitted spoliation briefing. *See* Dkt. 243-1(Memorandum of Law in Support of Motion for Sanctions); Dkt. 245-1 (Reply in Further Support of Motions for Sanctions). This briefing clearly demonstrated that BNP SSL deleted or destroyed relevant ESI pertinent to its Fairfield investments. *See* Dkt. 243-1; Dkt. 245-1.

After briefing and argument, the Court concluded that "(i) [BNP SSL] spoliated evidence in violation of Federal Rule of Civil Procedure 37(e) […]; (ii) [BNP SSL] acted with intent in doing so; and (iii) such spoliation has prejudiced the Liquidators." Spoliation Order; *see also* Dkt. 248 at 108:21-110:2, 115:14-123:10 (March 15, 2023 Hr'g Tr.). To remedy BNP SSL's spoliation, the Court entered an adverse inference against it "that any spoliated evidence would have been favorable to the Liquidators in establishing personal jurisdiction over Defendant." Spoliation Order ¶ 3. Accordingly, the Court will infer ESI that BNP SSL spoliated—such as emails and their attachments, word processing documents, spreadsheets, instant messages, or voicemails—would have reflected activities relevant to the exercise of personal jurisdiction over BNP SSL.[11]

---

[11] Further to the Spoliation Order, BNP SSL is also precluded from asserting that: (a) "[i]t did not communicate internally or externally about its investments in the Funds via email, including but

### C.      BNP SSL's Investment In The Funds

BNP SSL first invested in Sentry and Sigma in January 2004. Compl. ¶ 22; Ex. 3 (█████

███████████████████████). This was the beginning of BNP SSL's serial investments in

the Funds. From January 2004 through July 2008 (the "Subscription Period"), BNP SSL entered

into more than ██ individual subscription agreements (including for transfers) with Sentry and

Sigma, subscribing for a total of at least 63,635.84 shares. *See* Ex. 4 (████████████████

████████████████); Ex. 5 (██████████████████████████); Ex. 6 (██████

██████████████████████); Ex. 7 (██████████████████

██████████████); Ex. 8 (██████████████████████

███████).[12]

BNP SSL knew where the money was going. ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████. *See* Ex. 3 at -

131, Ex. 9 at -099 (██████████████████████████████████████

████████████████████████████████████████████████

---

not limited to (i) communications regarding its use of correspondent accounts and (ii) communications with U.S.-based entities or individuals;" (b) "[s]uch communications did not include diligence on the Funds, the Funds' investment strategy, and/or [BLMIS]"; and (c) "[s]uch communications are limited to the volume or frequency that the Liquidators can demonstrate by use of evidence produced by third parties[.]"

[12] As a result of BNP SSL's spoliation of relevant records, the Liquidators have not yet located a complete set of records reflecting all of BNP SSL's subscriptions. But BNP SSL must have subscribed for at least 63,635.84 shares in Sentry and Sigma because it redeemed that number of shares in the redemptions at issue in the Complaint.



Ex. 11 (

); *see also* Ex. 4 (                              ).

Ex. 10. Based on this, and pursuant to the Spoliation Order, this Court can and should also infer

that BNP SSL received, read, and had in its possession PPMs from throughout the Subscription

Period, and that BNP SSL would have been able to produce them in discovery had they not been

subsequently spoliated.

The PPMs



. Ex. 12 (                ) at -155, -161;

*see also* Ex. 13 (              ) at -644, -652.

. Ex. 14 at -272, -278 (                    ).

. *See,*

*e.g.*, Ex. 12 at -149 (

).

In addition to reviewing PPMs, the Court should infer that BNP SSL conducted diligence

into the Funds, which would have further confirmed that the Funds' primary purpose was to invest

in New York-based BLMIS. Surviving evidence obtained from third parties shows that ███

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ *see* Ex. 15 at -334, █████████████████

███████████████████████ Ex. 16, ████████████████████████████████████████████████████

█████████████████████████████████ Ex. 17 at -385-86. The Court should infer that BNP SSL

destroyed additional evidence of its diligence; indeed, the Spoliation Order (at ¶ 2(b)) precludes

BNP SSL from arguing that spoliated evidence "did not include diligence on the Funds[.]"

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

Ex. 12 at -160 (█████); *see also* Ex. 3 at -129 (█████████████████). ████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████ BNP

SSL was free to designate a bank account anywhere in the world, *see* Declaration of Sara Joyce

("Joyce Decl."), at 6-9, 11-13, but it *chose* ████████████████████████████████████████

to receive each of its Sentry redemption payments through a correspondent account in the United

States, housed at its U.S. affiliate, BNP Paribas New York ("BNP NY").[13] *See, e.g.,* Ex. 3 at -137-

138 (█████████████████████████████████████████████████████████████████████

---

[13] "Correspondent accounts are accounts in domestic banks held in the name of foreign financial
institutions" that are used "to effect dollar transactions." *Licci ex rel. Licci v. Lebanese Canadian
Bank, SAL* ("*Licci II*"), 673 F.3d 50, 56 n.3 (2d Cir. 2012) (internal citation and quotation omitted).

██████████████████████); *see also* Ex. 4 (████████████████████████).[14]

When it came time for BNP SSL to redeem its Sentry shares, BNP SSL ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████. For each of the relevant redemption requests, BNP SSL was free

to choose an account outside the United States. *See* Joyce Decl. at 6-9, 11-13. ████████

████████████████████████████████████████████████████████████████████

███████████████████████████████ Ex. 18 at -646 (██████████████████████

████████████████████████████████████████); Ex. 19 (████████████████

██████████████████████). █████████████████████████████████████████

████████████████████████████████████████████████████



Ex. 20 at -639 (██████████████████); *see also* Ex. 21 (████████████████████).

█████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

─────────────────────

[14] ████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████



Ex. 22 (██████████████████); *see also* Ex. 23 (██████████████████).

From June 17, 2004, through November 21, 2008 (the "Redemption Period"), BNP SSL requested (and the Funds processed) 15 redemptions and BNP SSL took payments totaling $46,993,332.47. Of these, Sentry wired 12 redemptions totaling $39,662,951.91—nearly 85% of the money BNP SSL received from the Funds—to BNP SSL's account at BNP NY, as BNP SSL directed in subscription agreements and redemption requests. Compl. ¶ 54 & Ex. A; Ex. 21 (██████████████████); Ex. 23 (██████████████████).

In addition to using U.S. correspondent bank accounts to facilitate ████████



redemptions, BNP SSL also ██████████████████

████████████████████████████████. ████████

████████████████████████████████

████████████████████████████. *See* Ex. 3 at -136; Ex. 24 at -086; *see also* Compl. ¶ 66 (describing the Equity & Derivatives Division). ████

████████████████████████████████

████████████████████████. *See, e.g.,* Exs. 25-26 (██████████

████████████████████████). ████████

████████████████████████████████

██████████████████████████████████████████████

██████ . Ex. 27. ██████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████ .

## **STANDARD**

Courts in this Circuit apply one of three standards to Rule 12(b)(2) motions. If the motion

is assessed solely on the pleadings, the plaintiff may defeat the motion based on legally sufficient

allegations alone. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566-67 (2d Cir.

1996), *cert. denied*, 519 U.S. 1007 (1996). If discovery is permitted *and* the court holds an

evidentiary hearing, "the plaintiff must demonstrate the court's personal jurisdiction over the

defendant by a preponderance of the evidence." *Id.* at 567. And where, as here, the court assesses

the motion after jurisdictional discovery but *without* holding an evidentiary hearing, the plaintiff

need only make a factually supported *prima facie* showing of jurisdiction. *See id.* (quoting *Ball v.*

*Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Obabueki v. Int'l Bus.*

*Machines Corp.*, 2001 WL 921172, at *2 (S.D.N.Y. Aug. 14, 2001).

In this context, the court must credit the facts averred in the pleadings and motion papers

as true and "construe[] the pleadings and affidavits in the light most favorable to the plaintiff …

resolv[ing] all doubts in plaintiff's favor, notwithstanding any 'controverting presentation by the

moving party.'" *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 295 F. Supp. 3d 404, 409

(S.D.N.Y. 2017) (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85-86 (2d

Cir. 2013)); *accord Drake v. Lab. Corp. of Am. Holdings*, 2008 WL 4239844, at *1 (E.D.N.Y.

Sept. 11, 2008) ("Despite this higher burden, the Court must 'credit [Plaintiff's] averments of

jurisdictional facts as true.'" (quoting *Metro. Life Ins. Co.*, 84 F.3d at 567)). Likewise, the court

12

must draw "reasonable inference[s]" in the plaintiff's favor based on facts developed in discovery. *Drake*, 2008 WL 4239844, at *5; *see also Obabueki*, 2001 WL 921172, at *1 (stating the court must draw reasonable inferences in plaintiff's favor notwithstanding the fact that the parties had engaged in jurisdictional discovery). BNP SSL has not argued otherwise.[15]

## ARGUMENT

This Court has personal jurisdiction over BNP SSL because BNP SSL has sufficient minimum contacts with the United States and because the exercise of jurisdiction over it is reasonable.

## I.    BNP SSL Has Sufficient Minimum Contacts With The United States

BNP SSL has sufficient minimum contacts with the United States to permit this Court to exercise jurisdiction over it. Jurisdiction under Bankruptcy Rule 7004 is assessed based upon the defendant's "contacts with the United States, rather than with the forum state," and there is no need for the Court to address the forum state's long-arm statute. *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*) ("*FGG*"), 627 B.R. 546, 565 nn.12, 13 (Bankr. S.D.N.Y. 2021) (citing *In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 619 (Bankr. S.D.N.Y. 2015)). Demonstrating the requisite minimum contacts for specific personal jurisdiction requires showing (1) a defendant's "purposeful availment" of the forum (2) that "arises out of or relates to" the alleged misconduct. *FGG*, 627 B.R. at 566; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 475 (1985); *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (citing *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1785-86 (2017)). Courts

---

[15] The Liquidators have not yet pursued discovery on the merits from BNP SSL, including, for example, documents demonstrating that BNP SSL knew the Funds' net asset values were inflated. To the extent the Court considers those allegations in resolving BNP SSL's Rule 12(b)(2) motion, it should credit them as true per the standard applicable in the absence of discovery. *See Metro. Life Ins. Co.*, 84 F.3d at 566-67.

assess both prongs based on the "totality of the circumstances." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci IV*"), 732 F.3d 161, 170 (2d Cir. 2013).

Satisfying the first prong, "purposeful availment," requires showing the defendant has sufficient contacts with the forum resulting from the defendant's own actions. *FGG*, 627 B.R. at 566. The defendant's activities "need not have taken place within the forum, and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (cleaned up) (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

Satisfying the second prong, "arises out of or relates to," requires showing that there is a "sufficiently close link" between the defendant's contacts and the claims at issue. *MSP Recovery Claims, Series LLC v. Takeda Pharm. Am., Inc.*, 2021 WL 4461773, at *3 (S.D.N.Y. Sept. 29, 2021) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1032 (2021)). A causal relationship between the plaintiff's claims and the defendant's forum contacts is *not* required. *See, e.g.*, *Cathay Life Ins.*, 2022 WL 16626325, at *4 (citing *Ford Motor Co.*, 141 S. Ct. at 1027). An "affiliation between the forum and the underlying controversy" is sufficient. *Id.* (quoting *Goodyear Dunlap Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also Suez Water N.Y. Inc. v. E.I. Du Pont Nemours Co.*, 2022 WL 36489, at *8 (S.D.N.Y. Jan. 4, 2022) (holding that the claims must be "arguably connected" to, rather than "completely unmoored" from the contacts at issue (quoting *Licci v. Lebanese Canadian Bank, SAL* ("*Licci III*"), 984 N.E.2d 893, 900-01 (N.Y. 2012))).

The facts averred and evidence presented by the Liquidators, which must be taken as true for purposes of this motion, are sufficient to satisfy both prongs of the minimum contacts test. BNP SSL purposefully availed itself of the United States by intentionally investing in BLMIS

14

feeder funds, Sentry and Sigma, with the express intention of profiting from BLMIS's investments in the U.S. securities market (**Section I.A**, *infra*), by engaging in other business activity within and aimed at the United States (**Section I.B**, *infra*), and by repeatedly directing funds into its U.S.-based correspondent account at BNP NY to effectuate ████████████████ redemptions from Sentry (**Section I.C**, *infra*). Each of those contacts is closely related to the Liquidators' claims. BNP SSL therefore has sufficient minimum contacts with the United States.

### A.    BNP SSL Knowingly And Intentionally Invested In Madoff Feeder Funds

The facts averred and evidence presented by the Liquidators make clear that BNP SSL intentionally invested in BLMIS feeder funds Sentry and Sigma knowing that the Funds were designed to subsequently invest that money in New York-based BLMIS. BNP SSL is subject to this Court's jurisdiction with respect to its Sentry and Sigma redemptions as a result of that conduct.

### 1.    BNP SSL Purposefully Availed Itself Of The United States Via Its Intentional Investment In The Funds

This Court, applying Judge Lifland's decision in *Picard v. Bureau of Labor and Insurance* (*SIPC v. Bernard L. Madoff Inv. Sec. LLC*) ("*BLI*"), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012), recently held that "[a] party 'purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS.'" *Cathay Life Ins.*, 2022 WL 16626325, at *3. *BLI* applies with at least equal force here.

In *BLI*, Judge Lifland held—in a very similar action seeking to reclaim redemption payments made by the same Fairfield Sentry fund—that a foreign defendant "purposefully availed itself of the benefits and protections of New York law by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS

in New York to be invested in the New York securities market." 480 B.R. at 517. ████, the *BLI*
defendant subscribed in Sentry after engaging in "diligence on Fairfield Sentry and its investment
strategies" and reviewing "a private placement memorandum and other information about Fairfield
Sentry, including specifics about the Fund's investment strategy and past results and trades in the
S&P 100," provided to it by FGG. *Id.* at 517. And, ████, the defendant "signed [a] Subscription
Agreement [that] incorporated the [offering memorandum]," meaning the defendant knew "Sentry
was required to invest at least 95% of its assets" in BLMIS, which would hold the assets in
accounts in New York to be "invested in U.S. Securities...." *Id.*

Since *BLI* was decided, courts repeatedly have employed *BLI*'s reasoning to find
jurisdiction in similar circumstances. *See, e.g.*, *Picard v. JP Morgan Chase & Co.* (*In re Bernard
L. Madoff Inv. Sec. LLC*), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) (noting that
*BLI* "confirmed that defendants who invested directly or indirectly with BLMIS and received
payments from BLMIS as initial transferees or as subsequent transferees of those initial transferees
[are] subject to the Court's personal jurisdiction"); *Maxam Absolute Return Fund, L.P.*, 460 B.R.
at 118 (finding jurisdiction over defendant that "engaged in a series of repeated transactions that
intentionally channeled investor money into the BLMIS Ponzi scheme in New York"); *cf. In re
Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 105 (2d Cir. 2019)
("When these investors chose to buy into feeder funds that placed all or substantially all of their
assets with Madoff Securities, they knew where their money was going.").

Most recently, this Court cited *BLI* in exercising personal jurisdiction over several
defendants in actions brought by the BLMIS Trustee seeking to recoup the very same kind of
redemption payments at issue here. *See, e.g.*, *Cathay Life Ins.*, 2022 WL 16626325; *Lombard
Odier I*, 2022 WL 2387523. This Court did so citing allegations of ████████████,

16

that the defendant: "knowingly directed funds to be invested with New York-based BLMIS through Fairfield Sentry"; that Sentry "invested almost all of its assets in BLMIS"; that the defendant reviewed PPMs substantively identical to those at issue in *BLI*; that the defendant signed subscription agreements incorporating the same; and that the defendant communicated with FGG employees in New York. *Compare Cathay Life Ins.*, 2022 WL 16626325, at *3 *and Lombard Odier I*, 2022 WL 2387523, at *3, *with* Compl. ¶ 20 (alleging that BNP SSL invested in the Funds while knowing and intending that its investments would be passed along to BLMIS), *and* Ex. 3; Ex. 9 at -131, ¶ 2 (███████████████████████████████████); Ex. 10 (███████ ███████████████████); Exs. 12-14 (██████); Ex. 15 at -334 (████████████); and Spoliation Order (granting adverse inference that "any spoliated evidence would have been favorable to the Liquidators in establishing jurisdiction over" BNP SSL). In light of these allegations, this Court held that defendants "intentionally directed its investment to New York-based BLMIS, through Fairfield Sentry," which in turn was a basis for exercising personal jurisdiction pursuant to *BLI. Lombard Odier I*, 2022 WL 2387523, at *3; *see also Lombard Odier II*, 2023 WL 395225, at *4 (denying appeal from *Lombard Odier I* and concluding that this Court's decision was based on proper application of "settled precedent").

Here, the Funds' offering documents (virtually identical to those in *BLI*, *Cathay Life Insurance*, *Lombard Odier I*, and others), █████████████████████████████ █████████████████████, all demonstrate that BNP SSL invested █████████████ in the Funds with the intention, knowledge, and expectation to channel its investments into BLMIS. Under *BLI* and this Court's recent decisions, that defeats BNP SSL's Motion.

Specifically, the available evidence █████████████████████████████████ ████████████████████████████████████████████████████████████████████

17



, Ex. 3 at -131; *see also* Ex. 9 at -099 (████████████████), and ████ ██████████████████████████████████████. Ex. 10. As such, the Court can and should infer that the ESI BNP SSL destroyed included Sentry and Sigma PPMs effective during the Subscription Period. As in *Lombard Odier I* and *BLI*, the PPMs BNP SSL would have received informed it that subscribing in the Funds amounted to an indirect investment in BLMIS in New York. *See supra* at 8-9; Ex. 12 at -161-62 ████████████████ ██████████████████████████████); Ex. 14 at -272 (████████ ██████████████████). ████████████████████████████ ██████████████. Ex. 3 at -131; Ex. 9 at -099; *see also BLI*, 480 B.R. at 517 ("BLI signed the Subscription Agreement, which incorporated the PPMs.").[16]

The Court should also infer that the ESI destroyed by BNP SSL would have included "diligence on Fairfield Sentry and its investment strategies." *BLI*, 480 B.R. at 517. For instance, ████████████████████████████████████████████████ ████████████████████████████████████████████████." Ex. 15 at -334; Ex., 17. ████████████████ it is reasonable to infer that BNP SSL conducted diligence into the Funds prior to investing. Because BNP SSL destroyed its electronic documents, this Court should infer, consistent with the Spoliation Order, that the deleted communications would have included jurisdictionally relevant documents, such as communications about the Funds' relationship with BLMIS, which purported to invest in the U.S. securities market.

This Court has likewise recognized other instances where ESI can reflect that a party had knowledge about the relationship between the Funds and BLMIS, demonstrating an intent to invest

---

[16] The PPM in *BLI* conveyed the same information as those referenced above. *See* No. 11-ap-02732 Dkt. 17 Ex. 4 at 8-9, 14-16.

in BLMIS via Funds. *See, e.g., Cathay Life Ins.*, 2022 WL 16626325, at *3 (citing to correspondence seeking clarification that funds in Sentry would be transferred to BLMIS); *Lombard Odier I*, 2022 WL 2387523 at *3 (citing to correspondence "with FGG employees located in New York via mail and email"). For example, in *Picard v. Parson Finance Panama S.A.* (*In re Bernard L. Madoff*) ("*Parson Finance*"), 2022 WL 3094092, at *4 (Bankr. S.D.N.Y. Aug. 3, 2022), this Court found that email correspondence supported purposeful availment of a defendant by reflecting defendant's intent "to invest with BLMIS through Fairfield Sentry . . . [and] purposeful[] avail[ment] of the privilege of doing business in New York." Because of BNP SSL's intentional spoliation, it should be presumed that, at a minimum, similar contacts would have been reflected in the record and would have demonstrated knowledge and intent to invest in BLMIS through the Funds. As was true of the *BLI* defendant, BNP SSL cannot escape jurisdiction for claims relating to an investment that it made while "[a]rmed with the fruits of [that] diligence." 480 B.R. at 517.[17]

BNP SSL's attempts to distinguish *BLI* fail. *First*, BNP SSL attempts to avoid *BLI* on the ground that it involved an action brought by the BLMIS Trustee. *See* Mot. 13-14 (arguing that *BLI* only applied to "claims arising from the liquidation of BLMIS"). *BLI*, however, did not turn upon

---

[17] BNP SSL has asserted that it "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" and it never "▮▮▮ ▮▮▮▮," Dkt. 244-1 at 5, 7, but BNP SSL has not established as much, and in any event cannot evade responsibility on that ground. *First*, the Court has explicitly rejected this argument, ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Dkt. 248 at 52:4-53:10 ("[Counsel for BNP SSL]: The nature of these businesses, they're execution only … they weren't doing diligence on Fairfield. […] THE COURT: But you can't say there aren't any because some have already been produced from the other side"). *Second*, the Court's sanctions order precludes BNP SSL from arguing that its communications "did not include diligence of the Funds, the Funds' investment strategy, and/or [BLMIS]," Spoliation Order ¶ 2, which BNP SSL has asserted is necessarily contrary to its alleged role as a "mere custodian," Dkt. 244-1 at 25 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

19

the degree of separation between the plaintiff and the defendant but, rather, on the defendant's *knowledge* that it was investing in BLMIS and its *intent* to profit from the U.S. securities market via that investment, which the *BLI* defendant made by investing in Sentry, just like BNP SSL here. *See* 480 B.R. at 517.

*Second*, BNP SSL incorrectly asserts that the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014), bars jurisdiction here. Mot. 11-13. *Walden* does no such thing. The *Walden* Court held there was no jurisdiction because, unlike BNP SSL here, the defendant did not do anything to avail himself of the benefits and protections of the forum. 571 U.S. at 288-91. In *Walden*, the defendant was a Georgia police officer who searched the plaintiffs and physically seized cash from them while they were passing through the state. *Id.* at 279-80. The plaintiffs attempted to sue the officer in their home state of Nevada, arguing that jurisdiction existed on the basis that the officer knew the plaintiffs were Nevada residents. *Id.* at 288-91. The Supreme Court rejected that theory, stating that "the plaintiff cannot be the *only* link between the defendant and the forum," as "the defendant's conduct … must form the necessary connection with the forum State." *Id*. at 285 (emphasis added). In so concluding, the Court relied on the fact that the defendant "never traveled to, conducted activities within, *contacted anyone in, or sent anything* or anyone to Nevada." *Id*. at 289 (emphasis added).

By contrast, the Liquidators do not argue (and *BLI* did not hold) that BNP SSL is subject to jurisdiction because of the Funds' own contacts with the U.S., or BNP SSL's knowledge of those contacts, or the mere foreseeability that the money it invested in the Funds would end up in the U.S. Rather, as explained above, BNP SSL invested in the Funds knowing that the ███████, Ex. 12 at -155, -162; Ex. 13 at -644, -652; Ex. 14 at -272, not that the Funds *might* "decide[] to

make investments" in the United States, Mot. 13. Moreover, as explained below, BNP SSL ████

████████████████████████████████████████████████████. That conduct is not

attributable to the Funds nor are the resulting contacts "random, fortuitous, or attenuated." *Walden*,

571 U.S. at 286 (quoting *Burger King Corp.*, 471 U.S. at 475). Rather, jurisdiction here, as in *BLI*,

stems directly from BNP SSL's own deliberate actions aimed at the United States. *See Lombard*

*Odier II*, 2023 WL 395225 (concluding that *Walden* does not foreclose jurisdiction in this context

because "New York is not just where Defendant's money happened to end up"). Even after *Walden*,

Sentry's mere involvement in facilitating some of those actions does not foreclose jurisdiction. *Id.*;

*see also Walden*, 571 U.S. at 286 ("[A] defendant's contacts with the forum State may be

intertwined with his transactions or interactions with the plaintiff or other parties.").[18]

Third, BNP SSL claims the Liquidators' argument depends on a disfavored stream of

commerce theory. Mot. 13. It does not. Per BNP SSL's own authority, the stream of commerce

theory in the personal jurisdiction context refers to the notion that "a defendant's placing goods

into the stream of commerce with the expectation that they will be purchased by consumers in the

forum State may indicate purposeful availment." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S.

873, 881-82 (2011) (cleaned up). But that is not the Liquidators' argument. Rather, the Liquidators

argue BNP SSL chose to invest in the Funds with the specific purpose of investing its clients'

money in U.S.-based BLMIS, and that it did so knowing that the Funds ████████████████████

████████████████████████████████████████████████████████████████████████

---

[18] BNP SSL also wrongly suggests that *Walden* effectively overruled *BLI*. Mot. 13 n.11. This Court
implicitly rejected this contention in *Lombard Odier I, Cathay Life Insurance*, and similar cases
when it applied *BLI* (on which the plaintiff relied) to find jurisdiction based on the defendants'
intentional investment in a Madoff feeder fund. *Lombard Odier I*, 2022 WL 2387523, at *4;
*Cathay Life Ins.*, 2022 WL 16626325, at *3; *see also Lombard Odier II*, 2023 WL 395225
(endorsing this Court's application of *BLI* to nearly identical investments). *BLI* remains good law
and supports the exercise of jurisdiction here.

██████. That satisfies the "purposeful availment" test and is not a stream of commerce argument.

### 2.    BNP SSL's Intentional Investment In The Funds Directly Relates To The Liquidators' Claims

BNP SSL's intentional investment in the Funds directly relates to the Liquidators' claims. To demonstrate a sufficient relationship between its claims and BNP SSL's forum contacts, the Liquidators need only show "an affiliation between the forum and the underlying controversy." *Cathay Life Ins.*, 2022 WL 16626325, at *4. The standard is satisfied.

BNP SSL's investments in the Funds were, at their core, a means of investing in a U.S. entity to take advantage of the U.S. securities market. BNP SSL fails in its attempt to artificially decouple its subscriptions in the Funds from its redemptions. The sole purpose for subscribing for shares of the Funds was to ultimately redeem those shares; otherwise, the Funds would hold the money in perpetuity. Without the subscriptions BNP SSL would have had no shares to redeem and could not have received the redemption payments to which its subscriptions gave rise. The two are inextricably linked.

BNP SSL asserts that the Liquidators' claims "relate[] to and arise[] out of the calculation of the NAV ... and the Funds' subsequent [] disbursement of redemption payments" and, from this premise, BNP SSL somehow draws the conclusion that the Liquidators' claims are wholly unrelated to BNP SSL's subscription in the Funds. Mot. 10-11. But BNP SSL cannot artificially decouple its subscriptions in the Funds from its redemptions. This Court previously rejected that argument in the Trustee actions when this Court held that "subsequent transfer claims ... for monies [defendants] received from Fairfield Sentry ... are directly related to [those defendants'] investment activities with Fairfield and BLMIS." *Lombard Odier I*, 2022 WL 2387523, at *4.[19]

---

[19] BNP SSL similarly argues that *Fairfield I* held that subscription agreements were wholly irrelevant to the exercise of personal jurisdiction. Mot. 2-3, 7 (citing *In re Fairfield Sentry Ltd.*

BNP SSL cannot seek refuge by asserting the Liquidators have not independently established jurisdiction over every subsequent transfer. The Court has already rejected this argument in a parallel proceeding by the BLMIS Trustee, where this Court recently held that "[b]y alleging that Defendant intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer…." *Id.* at *5. The Liquidators, just like the Trustee, alleged that BNP SSL intentionally invested in BLMIS and have therefore established jurisdiction as to each subsequent transfer.

**B.    BNP SSL Engaged In Other Business Activity In And Directed At The United States**

BNP SSL's additional U.S.-oriented business activity related to the Liquidators' claims also supports the exercise of jurisdiction here. Business contacts have long been considered a basis for the exercise of jurisdiction over a foreign defendant where that conduct is sufficiently related to the claims at issue. *See, e.g.*, *Burger King Corp.*, 471 U.S. at 475-76 (collecting cases). That is true even where the defendant conducted most or even all of this business while overseas, *see In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 319 (S.D.N.Y. 2020) (explaining that conduct that "occurs entirely out-of-forum" may support jurisdiction "if the defendant expressly aimed its conduct at the forum'" (quoting *Licci IV*, 732 F.3d at 173)), *rev'd in part on other grounds*, 61 F.4th 242 (2d Cir. 2023), and even where the conduct is carried out by the defendant's agent, *see In re Eur. Gov't Bonds Antitrust Litig.*, 2020 WL 4273811, at *6 (S.D.N.Y. July 23, 2020). BNP SSL has at least two categories of such relevant contacts.

---

("*Fairfield I*"), 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018)). BNP SSL is flat wrong; *Fairfield I* held that, as a matter of contract interpretation, the New York forum selection clause in the subscription agreements did not amount to consent to jurisdiction in these actions. 2018 WL 3756343, at *10-12. The question of whether those agreements—or the defendants' subscription in the Funds more generally—could support jurisdiction on another basis was not before the court. *Fairfield I* is therefore inapposite as to this issue.

1.    **Evidence Indicates BNP SSL Engaged In Business Activity In And Directed At The United States**

The existing documentary record evidences business activities by BNP SSL in and directed at the United States in connection with its Fund investments. For instance, ███████████████ ████████████████████████████████████████████████████████████████ ████████████. Ex. 3 at -132-133; (████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████); Ex. 9 at -101 (█████████████████████████████████ ██████████); *see also* Compl. ¶ 23 (alleging that BNP SSL agreed to submit to the jurisdiction of New York courts in connection with proceedings related to Sentry and Sigma). Judge Bernstein previously held that those provisions, standing alone, did not amount to consent to personal jurisdiction in this action. *Fairfield I*, 2018 WL 3756343, at *11.[20] But they nonetheless support the exercise of jurisdiction: "A choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law" and signal a lack of objection to litigating at least some disputes in U.S. courts. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004); *see also In re Motors Liquidation Co.*, 565 B.R. 275, 288-89 (Bankr. S.D.N.Y. 2017) (holding that forum selection and choice of law clauses "support[ed] finding personal jurisdiction"); *Lombard Odier I*, 2022 WL 2387523, at *5 n.2 (same); *BLI*, 480 B.R. at 516, 517 n.15 (same). And the forum-selection and choice-of-law clauses directly relate to this case: they were contained in the subscription agreements that gave rise to the redemption payments at issue here.

BNP SSL also ████████████████████████████████████████████████████████

---

[20] The Liquidators are appealing that decision to the Second Circuit.

████████████████████████████████████████. *See, e.g.*, Exs. 25-26. BNP SSL executed subscription

agreements ██████████████████████████████████████████████████████

████████████████████████████████████████████████, Ex. 3 at -136; Ex. 4 at -086, and

████████████████████████████████████████████████████████████████

██████, Ex. 27. These intentional contacts with the United States in connection with BNP SSL's

subscriptions and redemptions strongly support this Court's exercise of jurisdiction. *See Lombard

Odier I*, 2022 WL 2387523, at *4.

### 2.    The Court Should Infer That More Extensive Evidence of U.S. Business Activity Once Existed And Has Been Destroyed

This Court should also infer that BNP SSL destroyed evidence of business contacts with

the United States. Courts have long recognized that ESI—such as emails and their attachments,

word processing documents, spreadsheets, instant messages, or voicemails—are critical means by

which businesses transact, and as such can be sufficient to establish jurisdiction if aimed at the

forum. *See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 30 (2d Cir. 1996)

(questioning "whether, in an age of e-mail and teleconferencing, the absence of actual personal

visits to the forum is any longer of critical consequence"); *Ralph Lauren Corp. v. CSR Grp., Inc.*,

2016 WL 4919961, at *3 (S.D.N.Y. Sept. 14, 2016) (finding New York long-arm statute satisfied

based on regular emails and telephone calls to New York). As this Court has likewise recognized,

emails can demonstrate activities in or directed at the U.S. that directly bear on jurisdiction in

actions similar to this. For instance, this Court has cited as favorable in establishing jurisdiction

ESI reflecting: a party's regular communications with entities in the U.S., such as FGG, *see Picard

v. LGT Bank in Liechtenstein Ltd. (In re Madoff)*, 2023 WL 2003960, at *3 (Bankr. S.D.N.Y. Feb.

14, 2023); travel to, and meetings between a party and entities in, New York, including FGG and

Madoff, *see Picard v. ASB Bank Corp. (In re Madoff),* 2022 WL 17087667, at *3 (Bankr. S.D.N.Y.

25

Nov. 18, 2022); and detailed discussions of diligence concerning Fairfield and BLMIS, *see LGT Bank*, 2023 WL 2003960, at \*3. The Liquidators have established that BNP SSL destroyed ESI,

███████████████████████████████████████████████████

██████████████████████████████████████████. Consistent

with the adverse inference in the Spoliation Order, the Court should presume BNP Paribas

Securities engaged, at a minimum, in such activities—just like other defendants in related BLMIS

actions. *See* Spoliation Order ¶ 3 (providing that "any spoliated evidence would have been

favorable to the Liquidators in establishing personal jurisdiction over Defendant").

Alongside the contacts demonstrated ███████████████████████

███████████████████████████████████████████████████

██████████████████████████ (discussed above in Sections I.A, *supra*, and I.C,

*infra*, respectively)—ESI evidence that would exist but for BNP SSL's intentional spoliation

supports this Court's exercise of personal jurisdiction over BNP SSL. And each of these contacts

plainly relate to the Liquidators' claims. For instance, BNP SSL's presumptive due-diligence-

related activity contributed to its knowledge that the NAVs were inaccurate—a core element of

the Liquidators' constructive trust claims. *Fairfield II*, 596 B.R. 301. That is more than sufficient

to conclude that the above contacts relate to the Liquidators' claims and therefore support the

exercise of jurisdiction. *See Cathay Life Ins.*, 2022 WL 16626325, at \*4.

### C.    BNP SSL Utilized U.S. Correspondent Accounts To ████████████ Receive Redemption Payments From Sentry

Nearly 85% of the redemptions at issue in this case were from Sentry. BNP SSL's

intentional and recurring use of U.S. correspondent accounts to ████████████████████

receive each of the at-issue Sentry redemption payments independently supports the exercise of

jurisdiction with respect to those redemption payments. A defendant's use of an in-forum

correspondent account is sufficient to establish personal jurisdiction where said use is "deliberate," "recurring," and sufficiently related to the harm for which the plaintiff seeks redress. *Licci IV*, 732 F.3d at 171-73. BNP SSL's correspondent account use satisfies each of those three prongs.[21]

### 1.    BNP SSL Deliberately Utilized U.S. Correspondent Accounts

BNP SSL's correspondent account use was deliberate. A defendant's correspondent account use is "deliberate" if it "indicates desirability and a lack of coincidence." *Licci IV*, 732 F.3d at 168 (quoting *Licci III*, 984 N.E.3d at 901). BNP SSL's choice to use a U.S. correspondent account in ███████████████████ redemption payments was a conscious and volitional one—not mere coincidence—that supports the exercise of jurisdiction. *See, e.g., Picard v. Meritz Fire & Marine Ins. Co. Ltd.* (*In re Bernard L. Madoff*), 2022 WL 3273044, at *3 (Bankr. S.D.N.Y. Aug. 10, 2022) ("Where a defendant chooses to use a United States bank account to receive funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional."); *Cathay Life Ins.*, 2022 WL 16626325, at *3 ("[Defendant] used bank accounts in New York to send subscription payments to and receive redemption payments from Fairfield Sentry"); *Licci IV*, 732 F.3d at 170-71.

BNP SSL chose to use its own U.S.-based correspondent account (rather than an offshore account) ███████████████████ to receive its redemption payments from Sentry. *See* Ex. 3 at -137-138; *see also* Ex. 4. ███████████████████████████████
█████████████████████████████████████. Ex. 3 at -137-138; Exs. 4-8 (█████████████████████████████████████

---

[21] While BNP SSL did not designate a U.S. correspondent account for its redemption of Sigma shares, it is still subject to jurisdiction with respect to those redemptions, as the Liquidators' jurisdictional theories detailed in Sections I.A, *supra*, and I.C, *infra*, do not turn on correspondent account use and independently support jurisdiction over the Sigma redemptions.



██████████████████████████████████████████████████████. Ex. 3 at -137-138 (████████████████); Ex. 18 at -646 (██████████████); *see also* Ex. 19 (██████████████████████); Ex. 22 (██████████████████████); Ex. 23 (██████████). BNP SSL had complete control over which account it used for those transfers. *See* Joyce Decl. at 11-13 (concluding that Fairfield Sentry investors could have used foreign, U.S. dollar denominated correspondent accounts to ██████ receive ████████████ redemption payments, respectively, without employing correspondent banking services in the U.S.). ████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████.

In addition to using its own U.S. correspondent account, ████████████████████ ██████████████████████████████████████████. Courts have held that a defendant's transfer of monies to a third-party's U.S. account can support the exercise of jurisdiction. *See Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank* ("*Arcapita I*"), 549 B.R. 56, 68-69, 70 n.18 (S.D.N.Y. 2016). ████████████████████████ ██████████████████████████████████████████████. *See, e.g.,* Ex. 12 at -160. BNP SSL thus knew at the time of its investments in Sentry ████████████████████ ██████████████████████████████████. BNP SSL nonetheless *chose* Sentry rather than investing in a different fund that lacked such a requirement. *E.g.*, Ex. 14 at -284 (██████████████████████████). ██████████████████████████████ ████████████████—it was a direct consequence of its affirmative choice to invest in Sentry, fully aware that investing in Sentry would involve ██████████████████████████████████████ ████████████████.



██████████████████████████████████████████████████████. Ex. 3 at -137-138 (████████████████); Ex. 18 at -646 (██████████████); *see also* Ex. 19 (██████████████████████); Ex. 22 (██████████████████████); Ex. 23 (██████████). BNP SSL had complete control over which account it used for those transfers. *See* Joyce Decl. at 11-13 (concluding that Fairfield Sentry investors could have used foreign, U.S. dollar denominated correspondent accounts to ██████ receive ████████████ redemption payments, respectively, without employing correspondent banking services in the U.S.). ████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████.

In addition to using its own U.S. correspondent account, ████████████████████ ██████████████████████████████████████████. Courts have held that a defendant's transfer of monies to a third-party's U.S. account can support the exercise of jurisdiction. *See Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank* ("*Arcapita I*"), 549 B.R. 56, 68-69, 70 n.18 (S.D.N.Y. 2016). ████████████████████████ ██████████████████████████████████████████████. *See, e.g.,* Ex. 12 at -160. BNP SSL thus knew at the time of its investments in Sentry ████████████████████ ██████████████████████████████████. BNP SSL nonetheless *chose* Sentry rather than investing in a different fund that lacked such a requirement. *E.g.*, Ex. 14 at -284 (██████████████████████████). ██████████████████████████████ ████████████████—it was a direct consequence of its affirmative choice to invest in Sentry, fully aware that investing in Sentry would involve ██████████████████████████████████████ ████████████████.

clean



██████████████████████████████████████████████████████. Ex. 3 at -137-138 (████████████████); Ex. 18 at -646 (██████████████); *see also* Ex. 19 (██████████████████████); Ex. 22 (██████████████████████); Ex. 23 (██████████). BNP SSL had complete control over which account it used for those transfers. *See* Joyce Decl. at 11-13 (concluding that Fairfield Sentry investors could have used foreign, U.S. dollar denominated correspondent accounts to ██████ receive ████████████ redemption payments, respectively, without employing correspondent banking services in the U.S.). ████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████.

In addition to using its own U.S. correspondent account, ████████████████████ ██████████████████████████████████████████. Courts have held that a defendant's transfer of monies to a third-party's U.S. account can support the exercise of jurisdiction. *See Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank* ("*Arcapita I*"), 549 B.R. 56, 68-69, 70 n.18 (S.D.N.Y. 2016). ████████████████████████ ██████████████████████████████████████████████. *See, e.g.,* Ex. 12 at -160. BNP SSL thus knew at the time of its investments in Sentry ████████████████████ ██████████████████████████████████. BNP SSL nonetheless *chose* Sentry rather than investing in a different fund that lacked such a requirement. *E.g.*, Ex. 14 at -284 (██████████████████████████). ██████████████████████████████ ████████████████—it was a direct consequence of its affirmative choice to invest in Sentry, fully aware that investing in Sentry would involve ██████████████████████████████████████ ████████████████.

BNP SSL's attempts to minimize the significance of its use of U.S. accounts fail. *First*, contrary to BNP SSL's suggestion that it had no choice but to use a U.S. account, Mot. 15, 17-19, nothing in the subscription agreements, redemption request forms, or rules governing BNP SSL's investments in Sentry required it to ███████████████████████████████ designate a U.S. account to receive redemption payments. *See* Joyce Decl. at 11-13. BNP SSL nevertheless *chose* to utilize its U.S. correspondent account to effectuate ████████████ redemption-side transfers.

Also, contrary to BNP SSL's suggestion, Mot. 18, BNP SSL was not required to use a U.S. correspondent account simply because Sentry designated U.S. dollars as its base currency. *See* Joyce Decl. at 11-13. Sentry required only that redemptions occur in dollars, *not* that BNP SSL receive payments in an account in the U.S. *See* Ex. 29 (Sentry Articles of Association) at 8-11 (requiring only that "payment shall be made to the Applicant in the Base Currency in respect of the redemption or purchase of Shares"). Further, the Second Circuit has recognized that, "[i]n light of the widespread acceptance and availability of U.S. currency, [a foreign bank] could have … processed U.S.-dollar-denominated wire transfers … through correspondent accounts anywhere in the world." *Licci IV*, 732 F.3d at 171.

In any event, even assuming *arguendo* that Sentry being a U.S. dollar-based fund somehow "necessitated" the use of a U.S. account (it did not), BNP SSL would have been well aware of that fact when it chose to invest in Sentry. BNP SSL thus still voluntarily and purposefully *chose* to make investments knowing that doing so would require using New York's banking system.

BNP SSL's reliance on *Arcapita I* to suggest otherwise is misplaced. Mot. 17-18. *Arcapita I* found jurisdiction over a foreign bank's receipt of a single transfer via a third-party's correspondent account. 549 B.R. at 68-69. In *dicta*, the court suggested it may have reached a

29

different outcome if the defendant itself had not selected U.S. dollars as the currency for the transaction. *Id.* at 71. But that same court recently clarified that it could exercise personal jurisdiction over the foreign bank even if the transferee, not the defendant, "wanted to [transact] in U.S. dollars" because the defendant "*chose to accept those terms* and then *designated correspondent bank accounts in New York* to receive the fund transfers." *In re Arcapita Bank B.S.C.(C)* ("*Arcapita II*"), 2022 WL 1620307, at *6 (S.D.N.Y. May 23, 2022) (emphasis added).

*Second*, BNP SSL mischaracterizes its receipt of redemption payments as *passive* conduct. Mot. 14. As noted above, BNP SSL's redemption payments were wired to its U.S. account *only because* BNP SSL chose that account and actively instructed Sentry to send payments there.[22]

*Third*, BNP SSL incorrectly asserts its use of correspondent accounts was "entirely incidental" to the Liquidators' "claims about a breach by Citco Fund Services" and to the "principal wrong alleged," as in *Hill v. HSBC Bank PLC*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016), and *Hau Yin To v. HSBC Holdings PLC*, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017). Mot. 16-17, 19-20. Not so. The wire transfers here are at the core of the Liquidators' claim because, in order to recover the inflated redemption payments from BNP SSL, the Liquidators must show that BNP SSL received them. *In re Fairfield Sentry Ltd.* ("*Fairfield II*"), 596 B.R. 275, 301 (Bankr. S.D.N.Y.

---

[22] It is irrelevant whether BNP SSL can demonstrate that it executed these transactions solely on behalf of its clients (which it has not done). *See Rushaid v. Pictet & Cie*, 68 N.E.3d 1, 8 (N.Y. 2016) ("Repeated, deliberate use that is approved by the foreign bank on behalf and for the benefit of a customer … demonstrates volitional activity constituting [purposeful availment]"); *Licci IV*, 732 F.3d at 171 (exercising jurisdiction based on a defendant's intentional use of a U.S. account on behalf of a client). An agent avails itself of a particular country's banking system when it chooses "where to receive the funds to make [the transactions]" on behalf of its principal—conduct "properly attributable to the [agent]." *Arcapita I*, 549 B.R. at 70 n.17 (S.D.N.Y. 2016). Nowhere in its Motion does BNP SSL suggest that its clients requested it to process payments relating to their investments in the Funds through a U.S. correspondent account. Hence, it was BNP SSL's choice to receive redemption payments on behalf of its clients through its U.S. correspondent account, and BNP SSL is subject to jurisdiction as a result.

2018). Moreover, as in *Licci IV*, BNP SSL's "selection and repeated use of New York's banking system as *an instrument for accomplishing the alleged wrongs* for which the plaintiff seeks redress, constitutes purposeful availment of the privilege of doing business in New York." 732 F.3d at 171 (emphasis added)—the Liquidators seek here to claw back from BNP SSL the very redemption payments that BNP SSL ███████████████████████████████████████████ ██████ By contrast, the defendants in *Hill* and *Hau Yin To* were not investors in any feeder funds, and the plaintiffs were not seeking to claw back redemption payments received by the defendants.[23]

 *Finally*, BNP SSL argues that the "mere use of a correspondent account by a foreign bank to clear transfers for a foreign contract denominated in U.S. dollars does not, as a matter of law, confer jurisdiction over the foreign bank." Mot. 16. But the only case BNP SSL cites for that proposition aside from *Hill* and *Hau Yin To*—*Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010)—is inapposite. The defendant there was *not even alleged to have transferred any money* to the U.S. *Tamam* simply recognized that allegations that the defendant *maintained* U.S. accounts were not enough absent "allegations … [of] the actual transfer of money through New York." *Id*. The Liquidators have never argued that BNP SSL should be subject to the Court's jurisdiction simply because it *maintained* an unused U.S. correspondent account. Instead, for the reasons described above, BNP SSL is subject to the Court's personal jurisdiction because it *actively used* its U.S. correspondent account ████████████████████ .

---

[23] Moreover, BNP SSL's core conduct targeted by the Liquidators' claims—████████████ receiving redemption payments from the Funds—was, at least with respect to Sentry, accomplished entirely through its correspondent accounts. That conduct cannot be fairly characterized as "incidental" to the Liquidators' claims seeking to recoup those same redemption payments. *See Incidental*, Black's Law Dictionary (11th ed. 2019) (defining "incidental" as a "minor role" in carrying out "something of greater importance").

2.   **BNP SSL Utilized U.S. Correspondent Accounts To Effectuate At Least ▆ Wire Transfers**

BNP SSL *frequently* used U.S. correspondent accounts in transacting with Sentry. "[A] foreign bank's *repeated use* of a correspondent account in New York on behalf of a client … show purposeful availment of New York's" banking, currency, and legal systems. *Licci IV*, 732 F.3d at 168 (emphasis added) (quoting *Licci III*, 984 N.E.2d at 900).

BNP SSL repeatedly utilized U.S. correspondent accounts at ▆▆▆▆▆▆



▆▆▆▆▆▆. *First*, BNP SSL ▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆. *See* Exs. 4-8 (▆▆▆▆▆▆▆▆▆). *Second*, ▆▆▆▆▆▆▆▆▆▆▆▆. *See id*. *Finally*, BNP SSL directed Sentry to send redemption payments to its U.S. correspondent account at BNP NY. BNP SSL received 12 redemption payments from Sentry totaling $39,662,951.91 over four years through this account. *See* Compl. ¶ 55 & Ex. A; Exs. 19, 21, 23 (▆▆▆▆▆▆▆▆). In total, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.

With respect to both the volume of transfers and the total sum of money involved, BNP SSL's correspondent account use far exceeds what courts have found sufficient in other cases. In *Licci IV*, the court exercised personal jurisdiction based on "dozens" of wire transfers "total[ing] several million dollars." 732 F.3d at 170-71. In *Averbach v. Cairo Amman Bank*, the court concluded that 23 fund transfers through correspondent banks over the course of two years were sufficient. 2020 WL 486860, at *5 (S.D.N.Y. Jan. 21, 2020), *R. & R. adopted* 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020). And still other cases have held that as few as one or two transfers can suffice. *See Schansman v. Sberbank of Russia PJSC*, 2021 WL 4482172, at *5 (S.D.N.Y. Sept. 30,

32

2021) (two transfers for a combined $300 where the plaintiff alleged more generally that "some of" the millions of dollars had been routed through U.S. accounts); *Arcapita I*, 549 B.R. at 70 & n.18 (holding that even a single use of a third party's correspondent account use was sufficient).[24]

*A fortiori*, BNP SSL's use ███████████████████████████████ ███████████████████████████████ is sufficiently "recurring" and sufficient to confer personal jurisdiction over BNP SSL.

BNP SSL is also wrong that exercising personal jurisdiction here would open the floodgates of "any foreign commercial dispute" being haled into New York courts. Mot. 16. BNP SSL is not akin to a defendant that had a USD transaction pass through an account located in New York, unbeknownst to itself. *Id.* It affirmatively chose to invest in Sentry and deliberately used its U.S. correspondent account, again and again, to ████████████████ receive redemption payments in order to obtain the benefits of the U.S. securities market. No expansion of the Second Circuit's personal jurisdiction doctrine is necessary to hold that BNP SSL falls firmly within this Court's jurisdiction with respect to its Sentry redemptions. *See, e.g.*, *Licci IV*, 732 F.3d at 171.[25]

---

[24] *Arcapita I* and *Schansman* thus make clear that cases finding jurisdiction where additional transfers were at issue, *see, e.g.*, *Licci IV*, 732 F.3d at 170-71; *Averbach v. Cairo Amman Bank*, 2020 WL 486860, at *5 (S.D.N.Y. Jan. 21, 2020), *R. & R. adopted* 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020), apply to this case with equal force.

[25] BNP SSL's reliance, Mot. 16-17, on *Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*, 12 N.E.3d 456, 459-60 (N.Y. 2014), and *Universal Trading & Inv. Co., Inc. v. Tymoshenko*, 2012 WL 6186471, at *3 (S.D.N.Y. Dec. 12, 2012), is misplaced. *Mashreqbank* simply clarified that the passage of funds through New York banks did not by itself preclude dismissal on a *forum non conveniens* ground. 12 N.E.3d at 450-60. There was no discussion of the significance of such a transaction in a minimum contacts inquiry. And in *Universal Trading*, a foreign defendant requested a wire transfer from her foreign bank account to the recipient's foreign bank account. *Universal Trading*, 2012 WL 6186471, at *3. The defendant's bank, unbeknownst to the defendant, processed this transfer through several correspondent accounts, including one in New York, which the court found was insufficient for the exercise of personal jurisdiction. *Id.* But unlike in *Universal Trading*, BNP SSL's account use directly resulted from its own deliberate conduct.

3.    **BNP SSL's Correspondent Account Use Was Sufficiently Related To The Harms Alleged**

BNP SSL's use of U.S. accounts is sufficiently related to the Liquidators' claims seeking to recover Sentry redemption payments. Where a defendant's use of a U.S. account is "*an instrument for accomplishing the alleged wrongs* for which the plaintiff seeks redress," it is sufficiently related to the claims at issue. *Licci IV*, 732 F.3d at 171; *see also FGG*, 627 B.R. at 566; *see also FGG*, 627 B.R. at 566 ("[The 'arising out of' prong] may be satisfied when defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum.").

As discussed above, a core element of the Liquidators' claims is that BNP SSL received inflated redemption payments. And, as also discussed above, BNP SSL accomplished the wrongs for which the Liquidators seek redress using the New York banking system to buy shares and obtain the redemption payments for those shares the Liquidators seek to claw back. *See supra* pp. 32-33. That is enough to establish jurisdiction over BNP SSL with respect to the redemption payments at issue. *See Licci IV*, 732 F.3d at 171; *BNP Paribas S.A.*, 594 B.R. at 191 (finding that claims for redemption payments the defendants received as investors in a BLMIS feeder fund arose from the defendant's wiring of funds in U.S. dollars to New York and receipt of redemption payments from a New York correspondent account).

D.    **The Court May Exercise Jurisdiction Over BNP SSL Even If The Transfers Are Deemed Foreign For Purposes Of The Bankruptcy Safe Harbor Analysis**

BNP SSL attempts to make much ado about nothing by insisting that the Liquidators have previously conceded "[t]he redemption transfers at issue here were purely foreign," and that "every *relevant* component of the transactions at issue here occurred outside the United States." Mot. 2 (emphasis added) (quoting Pls.'-Appellants' Opening Br. for Second-Round Appeal at 24, *Fairfield Sentry Ltd. v. Citibank NA London*, No. 19-cv-3911, Dkt. 440 (S.D.N.Y. July 21, 2021) ("Pls.' Opening Br.")); *see also id*. at 10 (quoting Pls.' Opening Br. at 24)). BNP SSL is quoting

the Liquidators' appellate brief out of context and ignoring black-letter law holding that "[t]he tests for personal jurisdiction and extraterritoriality are not the same." *In re Ampal-Am. Israel Corp.*, 562 B.R. 601, 613 n.14 (Bankr. S.D.N.Y. 2017); *see also Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012) (distinguishing the two tests).

For this reason, the set of facts relevant to the personal jurisdiction inquiry is different from those relevant to the extraterritoriality inquiry. *Compare RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 337 (2016) (explaining the extraterritoriality inquiry focuses on "conduct relevant to the statute's focus"), *with Licci IV*, 732 F.3d at 170 (holding the specific personal jurisdiction inquiry focuses on the "totality" of the defendant's forum contacts that give rise or relate to the plaintiff's claim). In this action, "the focus [of the *extraterritoriality*] analysis is the location of the transfer" itself. *Picard v. Bureau of Lab. Ins.*, 2016 WL 6900689, at *19 (Bankr. S.D.N.Y. Nov. 22, 2016), *vacated and remanded on other grounds sub nom. In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85. By contrast, the personal jurisdiction inquiry addresses a much broader set of facts, *see supra* Sections I.A.-I.C., including, as relevant here, BNP SSL's knowledge and intent in making the investment that gave rise to the transfers at issue, *see BLI*, 480 B.R. at 517, BNP SSL's ███████████████████████████ ████████████, *see Cathay Life Ins.*, 2022 WL 16626325, at *3, forum selection clauses in the contracts governing that investment, *see Sunward Elecs.*, 362 F.3d at 23, and BNP SSL's deliberate and frequent use of U.S. accounts to facilitate ████████████ redemption transfers at issue, *see Licci IV*, 732 F.3d at 168-71.[26]

---

[26] The redemption transfers from Sentry are relevant to both inquiries given BNP SSL's deliberate use of U.S. accounts to receive those transfers. The Liquidators' prior extraterritoriality argument that those transfers are "foreign" was premised on well-settled law holding that use of a U.S. correspondent account does not render otherwise foreign transfers domestic for extraterritoriality

The Liquidators referred to the redemption transfers as "purely foreign" because under applicable law the only "*relevant component[s]*" for purposes of the extraterritoriality analysis were in fact foreign, Pls.' Opening Br. at 24 (emphasis added). The Liquidators' characterization of the transfers as foreign for purposes of extraterritoriality has no bearing on this motion.[27]

## II.    The Exercise Of Jurisdiction Over BNP SSL Is Reasonable

Exercising specific jurisdiction over BNP SSL—which deliberately chose to invest in and profit from U.S. securities markets and repeatedly used ███████████████████—is "reasonable under the circumstances" presented. *U.S. Bank Nat'l Ass'n*, 916 F.3d at 150 (quoting *Bristol-Myers Squibb*, 137 S. Ct. at 1786). Because the Liquidators have made "a threshold showing of minimum contacts," the burden is on BNP SSL to "present[] 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Metro. Life Ins.*, 84 F.3d at 568 (quoting *Burger King. Corp.*, 471 U.S. at 477). BNP SSL has not done so.

To assess reasonableness, courts consider: "(1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the 'interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and (5) 'the shared interests of the several States in furthering fundamental substantive social policies.'" *U.S. Bank Nat'l Ass'n*, 916 F.3d at 151 n.5 (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987)). "The primary concern is the burden on the defendant," *id.* (cleaned up), and

---

purposes. *See* Pls' Opening Br. at 68-70, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, 10-ap-03496, Dkt. 1336 (citing *Bureau of Lab. Ins.*, 2016 WL 6900689, at \*20); *see also In re Madoff Sec.*, 513 B.R. 222, 228 n.1 (S.D.N.Y. 2014); *Loginovskaya v. Batrachenko*, 764 F.3d 266, 268-69 (2d Cir. 2014). That is not so for personal jurisdiction. *See, e.g.*, *Licci IV*, 732 F.3d at 168-71.

[27] For years, the Liquidators have consistently made these extraterritoriality and personal jurisdiction arguments in tandem, pointing out that transfers that are "foreign" for purposes of extraterritoriality may still support personal jurisdiction. *See* Pls.' Opening Br. at 68-69.

dismissals on reasonableness grounds "should be few and far between." *Cunningham v. Gen. Motors LLC*, 2021 WL 827124, at *2 (S.D.N.Y. Mar. 4, 2021) (quoting *Metro. Life Ins. Co.*, 84 F.3d at 575). These factors strongly support the exercise of jurisdiction in this case.

In an effort to characterize the exercise of jurisdiction as unreasonable, BNP SSL incorrectly argues that: (1) the United States has a "minimal" interest in this dispute; (2) litigating here would be burdensome because discovery "would potentially expose" it to "civil and criminal liability in its home country"; and (3) the Liquidators have not demonstrated that it is "more reasonable" to litigate here than elsewhere. Mot. 20-24. These arguments are meritless.

*First*, contrary to BNP SSL's assertion, the United States clearly has a substantial interest in this action. Courts have recognized that the U.S. has a strong interest in ensuring that its financial system is not used for unlawful purposes. *See, e.g.*, *Strauss v. Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 31 (E.D.N.Y. 2016) ("[T]he Court also may take into account 'the United States' and New York's interest in monitoring banks and banking activity to ensure that its system is not used' [for unlawful purposes]" (quoting *Licci IV*, 732 F.3d at 174)). At its core, the case is about BNP SSL's decision to indirectly invest in and reap profits from BLMIS and the U.S. securities market through Madoff feeder funds. Allowing foreign investors like BNP SSL to evade U.S. jurisdiction in these circumstances, simply because they chose to invest through a foreign-based conduit as part of their scheme, would ignore the reality of the transactions, allowing those investors to reap all the benefits of the U.S. securities market without any of the corresponding obligations. That result would be all the more perverse where, as here, BNP SSL deliberately and repeatedly used U.S. correspondent bank accounts to ███████████████████████, *see supra* Section I.C.

BNP SSL argues that the United States's interests are minimal because subject matter jurisdiction would not exist over the Liquidators' "non-core" claim but for the Chapter 15

recognition of the Liquidators' foreign liquidation proceedings. Mot. 21. That counterfactual argument is a red herring. This Court has already found that it has subject matter jurisdiction and should find now that the United States has an interest in this dispute.

*Second*, BNP SSL has no legally cognizable burden here. As in *Lombard Odier I*, "Defendant has actively participated in this Court's litigation for over ten years. It is represented by U.S. counsel and 'irrevocably' submitted to the jurisdiction of New York courts[] when it signed its subscription agreements with the Fairfield Funds." 2022 WL 2387523, at *5. There, the Court held, as here, the forum selection clauses in the subscription agreements "could not be used as the sole basis for this Court's exercise of jurisdiction." *Id.* at n.2. Still, "the fact that Defendant agreed to submit to the jurisdiction of this Court is certainly a relevant factor in determining whether the exercise of jurisdiction over Defendant is reasonable." *Id.*

BNP SSL argues that engaging in document discovery about redemption payments in the United States "would *potentially* expose" it "to civil and criminal liability" under foreign law. Mot. 22 (emphasis added). This argument is misplaced here, where BNP spoliated almost all the relevant evidence and has produced the limited set of documents it did not destroy for purposes of jurisdictional discovery. In any event, the parties have successfully negotiated a redaction protocol that allows BNP SSL to comply with the Federal Rules without violating foreign law.

Even if BNP SSL had legitimate discovery concerns, they have no place "in the context of assessing the reasonableness of an exercise of personal jurisdiction." *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 333 (S.D.N.Y. 2018) (cleaned up), *aff'd*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018); *see Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 99 (S.D.N.Y. 2015) (noting "no other courts" considered this type of foreign law argument, and "declin[ing] to be the first"). BNP SSL does not cite a single case in which a court has declined to exercise personal jurisdiction because some

38

aspect of discovery theoretically "could implicate"—not even necessarily violate—foreign laws at some future indeterminate point.[28]

*Third*, BNP SSL's assertion that the Liquidators "have not demonstrated that it is *more* reasonable for them to litigate their claims against BNP SSL in New York rather than in the BVI," Mot. 22 (emphasis added), is flatly inconsistent with personal jurisdiction law. BNP SSL does not provide any legal support for the proposition that the existence of an alternate forum has any bearing on personal jurisdiction or renders the exercise of jurisdiction in the U.S. unreasonable.[29] A different jurisdiction's concurrent ability to hear claims has no bearing on whether it is *un*reasonable for a U.S. court to likewise do so. In addition, this Court hears other cases about the very same Ponzi-scheme (including against BNP entities).[30] It is reasonable for this case, involving the same scheme and similar defendants, to be litigated here.

*Finally*, BNP SSL's characterization of the Liquidators' selection of this forum as "maneuvering," Mot. 23, is baseless. It is contradicted by the chronology of this case: over 200 suits were pending in this Court before any substantive decision was issued by any BVI court, and it was the BVI action *defendants* that pushed the BVI litigation into the preliminary issues process and thereafter cited that process as support for a stay of the U.S. litigation (over the Liquidators' objections). *See Fairfield Sentry Ltd. (In Liquidation) v. Theodoor GGC Amsterdam*, No. 10-ap-

---

[28] *See also Licci*, 732 F.3d at 174 ("[T]he conveniences of modern communication and transportation ease any burden … impose[d] on [the defendant]." (cleaned up)).

[29] BNP SSL's argument sounds vaguely like a *forum non conveniens* argument, but it did not move to dismiss on those grounds. Even if such a motion were currently before the Court (it is not), "[t]he plaintiff's choice of forum should rarely be disturbed" "[u]nless the balance is strongly in favor of the defendant," *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70 (2d Cir. 2001) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)), which it is not here.

[30] *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 594 B.R. 167 (Bankr. S.D.N.Y. 2018) (listing BNP entities as defendants).

03496 (Bankr. S.D.N.Y.), Dkt. 925 (Hare Decl. dated Oct. 21, 2016); *id.* Dkt. 1407 (Molton Decl. dated April 6, 2017); *id.* Dkt. 1406 (Liquidators' Br. dated April 6, 2017) at 17-19.

BNP SSL's reliance on *dicta* from *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1031 (2021), is misplaced. In *Ford*, the Supreme Court upheld the exercise of personal jurisdiction on the ground that "the connection between plaintiffs' claims and [defendant's] activities" in the forum states was "close enough." *Id.* at 1032. BNP SSL incorrectly relies on inapposite *dicta* in *Ford*, distinguishing the Court's ruling another case, *Bristol-Myers Squibb*, 137 S. Ct. 1773, in which plaintiffs had engaged in forum-shopping by suing Bristol-Meyers in California even though they had neither purchased nor ingested the drug in California, nor had they been injured there. *Ford*, 141 S. Ct. at 1031-32. Here, BNP SSL's intent to invest in BLMIS via the Funds, its correspondent account use, and its additional contacts with the United States are closely connected to the Liquidators' claims, as explained above. *Ford* therefore supports the exercise of jurisdiction here, and *Bristol-Myers* is wholly inapplicable.[31]

## <u>CONCLUSION</u>

For the reasons discussed above, this Court should deny BNP SSL's motion.

---

[31] BNP SSL argues that its contacts "only 'barely satisfy the minimum contacts standard'" and "a majority of the reasonableness factors weigh against the exercise of jurisdiction." Mot. 23. But cases in which the reasonableness analysis warrants dismissal notwithstanding a showing of sufficient minimum contacts are "few and far between." *Cunningham*, 2021 WL 827124 at *2 (cleaned up). This is not such a case: the minimum contacts standard is squarely satisfied—and were it not for BNP SSL' spoliation, there would be evidence of even *more* jurisdictional contact. BNP SSL does not come close to showing that the majority of reasonableness factors weigh in its favor, so the out-of-circuit cases on which BNP SSL relies are inapplicable.

Date: May 11, 2023

Respectfully submitted,

SELENDY GAY ELSBERG PLLC

/s/    David Elsberg
_____
David Elsberg
Maria Ginzburg
Jordan Goldstein
Lena Konanova
David S. Flugman
Joshua S. Margolin
1290 Avenue of the Americas
New York, NY 10104
Telephone: 212-390-9000
delsberg@selendygay.com
mginzburg@selendygay.com
jgoldstein@selendygay.com
lkonanova@selendygay.com
dflugman@selendygay.com
jmargolin@selendygay.com
lzimmerman@selendygay.com

-and-

BROWN RUDNICK LLP
David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800
dmolton@brownrudnick.com
mkrzyzowski@brownrudnick.com

*Attorneys for the Plaintiffs Joint Liquidators*