UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 15 Case |
| FAIRFIELD SENTRY LIMITED, et al., | Case No. 10-13164 (CGM) |
| Debtor in Foreign Proceedings. | Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | Adv. Pro. No. 10-03627 (CGM) |
| Plaintiffs, | |
| v. | |
| BNP PARIBAS SECURITIES SERVICES LUXEMBOURG, et al., | |
| Defendants. | |

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS OF ALTIGEFI-ALTIPRO MASTER A/K/A OLYMPIA CAPITAL MANAGEMENT

Date: July 11, 2023

BROWN RUDNICK LLP

David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800

# TABLE OF CONTENTS

**Pages**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND .......................................................................................................................4

    A.    Sentry ...........................................................................................................4

    B.    Relevant Entity Relationships..................................................................4

    C.    Altipro's Decision To Invest In Sentry ...................................................5

    D.    Altipro's Investment In Sentry.................................................................7

STANDARD.............................................................................................................................11

ARGUMENT ...........................................................................................................................13

I.    Altipro Has Sufficient Minimum Contacts With The United States .................................13

    A.    BNP SS's Contacts With The United States And Knowledge About Sentry Is Imputed To Altipro .........................................................................15

    B.    Altipro Knowingly And Intentionally Invested In Madoff Feeder Fund Sentry ...18

        1.    Altipro Purposefully Availed Itself Of The United States Via Its Intentional Investment In Sentry................................................18

        2.    Altipro's Intentional Investment In Sentry Directly Relates To The Liquidators' Claims .........................................................23

    C.    Altipro Utilized ███████████████ To Invest In And Receive Redemption Payments From Sentry .........................................25

        1.    Altipro, Via Its Agent BNP SS, ███████████████ ████ In Lieu Of Offshore Accounts .................................................25

        2.    Altipro, Via Its Agent, ███████████████ To Effectuate Wire Transfers ...................................................................27

        3.    Altipro's Agent's ███████████ Was Sufficiently Related To The Harms Alleged...........................................................28

    D.    Altipro Engaged In Other Business Activity Directed At The United States........29

    E.    The Court May Exercise Jurisdiction Over Altipro Even If The Transfers Are Deemed Foreign For Purposes Of The Bankruptcy Safe Harbor Analysis ...........30

II.    The Exercise Of Jurisdiction Over Altipro Is Reasonable .................................................32

CONCLUSION........................................................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
  677 F.3d 60 (2d Cir. 2012)...................................................................................31

*In re Ampal-Am. Israel Corp.*,
  562 B.R. 601 (Bankr. S.D.N.Y. 2017)....................................................................31

*In re Bernard L. Madoff Investment Securities LLC*,
  2023 WL 395225 (S.D.N.Y. Jan. 25, 2023) ..........................................3, 20, 21, 23

*Bidonthecity.com LLC v. Halverston Holdings Ltd.*,
  2014 WL 1331046 (S.D.N.Y. Mar. 31, 2014).......................................................17

*Branham v. ISI Alarms, Inc.*,
  2013 WL 4710588 (E.D.N.Y. Aug. 30, 2013).......................................................16

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
  137 S. Ct. 1773 (2017)..........................................................................................36

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985).........................................................................................13, 29

*Cunningham v. Gen. Motors LLC*,
  2021 WL 827124 (S.D.N.Y. Mar. 4, 2021) ..........................................................37

*CutCo Indus., Inc. v. Naughton*,
  806 F.2d 361 (2d Cir. 1986)..................................................................................14

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)..............................................................................................14

*Drake v. Lab. Corp. of Am. Holdings*,
  2008 WL 4239844 (E.D.N.Y. Sept. 11, 2008) ......................................................12

*In re Eur. Gov't Bonds Antitrust Litig.*,
  2020 WL 4273811 (S.D.N.Y. Jul. 23, 2020).............................................14, 15, 22, 29

*In re Fairfield Sentry Ltd.*,
  2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ..............................................29

*In re Fairfield Sentry Ltd.*,
  596 B.R. 275 (Bankr. S.D.N.Y. 2018)...................................................................30

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  141 S. Ct. 1017 (2021) ...........................................................................36

*GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*,
  667 F. Supp. 2d 308 (S.D.N.Y. 2009) ....................................................15

*Gucci Am., Inc. v. Weixing Li*,
  135 F. Supp. 3d 87 (S.D.N.Y. 2015) .......................................................35

*Iragorri v. United Techs. Corp.*,
  274 F.3d 65 (2d Cir. 2001) ......................................................................35

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  673 F.3d 50 (2d Cir. 2012) ........................................................................3

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  732 F.3d 161 (2d Cir. 2013) ............................................................. *passim*

*Loginovskaya v. Batrachenko*,
  764 F.3d 266 (2d Cir. 2014) ....................................................................32

*In re Madoff Sec.*,
  513 B.R. 222 (S.D.N.Y. 2014) .................................................................32

*Maersk, Inc. v. Neewra, Inc.*,
  554 F. Supp. 2d 424 (S.D.N.Y. 2008) ....................................................15

*McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*,
  295 F. Supp. 3d 404 (S.D.N.Y. 2017) ....................................................12

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir. 1996) .........................................................12, 32, 33

*In re Motors Liquidation Co.*,
  565 B.R. 275 (Bankr. S.D.N.Y. 2017) ....................................................30

*MSP Recovery Claims, Series LLC v. Takeda Pharm. Am., Inc.*,
  2021 WL 4461773 (S.D.N.Y. Sept. 29, 2021) ........................................14

*Nike, Inc. v. Wu*,
  349 F. Supp. 3d 310 (S.D.N.Y. 2018 ......................................................34

*Obabueki v. Int'l Bus. Machines Corp.*,
  2001 WL 921172 (S.D.N.Y. Aug. 14, 2001) ..........................................12

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
  549 B.R. 56 (S.D.N.Y. 2016) .............................................................27, 28

*Picard v. Banque Lombard Odier & Cie SA (In re Bernard L. Madoff)*,
  2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022)...................................................... *passim*

*Picard v. Barfield Nominees Ltd. (In re Bernard L. Madoff)*,
  2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28, 2022)..................................................3, 19, 20

*Picard v. BNP Paribas S.A. (In re Bernard L. Madoff)*,
  594 B.R. 167 (Bankr. S.D.N.Y 2018)........................................................................28

*Picard v. Bureau of Lab. Ins.*,
  2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016) ...........................................................31

*Picard v. Bureau of Labor Ins. (SIPC v. Bernard L. Madoff Inv. Sec. LLC)*,
  480 B.R. 501 (Bankr. S.D.N.Y. 2012)........................................................................ *passim*

*Picard v. Cathay Life Ins. Co. (In re Bernard L. Madoff)*,
  2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022) ..................................................... *passim*

*Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)*,
  627 B.R. 546 (Bankr. S.D.N.Y. 2021).................................................................13, 28

*Picard v. JP Morgan Chase & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*,
  2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) ..............................................................19

*Picard v. Maxam Absolute Return Fund, L.P.*,
  460 B.R. 106 (Bankr. S.D.N.Y. 2011).................................................................13, 19

*Picard v. Meritz Fire & Marine Ins. Co. Ltd. (In re Bernard L. Madoff)*,
  2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) ...........................................................25

*Picard v. Merkin*,
  515 B.R. 117 (Bankr. S.D.N.Y. 2014) ......................................................................17

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
  917 F.3d 85 (2d Cir. 2019)....................................................................................19

*Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*,
  2021 WL 2000371 (S.D.N.Y. May 19, 2021) .......................................................................17

*In re Platinum & Palladium Antitrust Litig.*,
  449 F. Supp. 3d 290 (S.D.N.Y. 2020).........................................................................29

*RJR Nabisco, Inc. v. European Cmty.*,
  579 U.S. 325 (2016)...........................................................................................31

*Schansman v. Sberbank of Russia PJSC*,
  565 F.Supp.3d 405 (S.D.N.Y.2021)..........................................................................28

*Schechter v. Banque Commerciale Privee*,
  1991 WL 105217 (S.D.N.Y. June 11, 1991) ..........................................................17

*Sec. Ins. Co. of Hartford v. ITA Textiles Corp.*,
  2000 WL 1576879 (S.D.N.Y. Oct. 23, 2000) ........................................................17

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  2022 WL 17742686 (Bankr. S.D.N.Y. Dec. 15, 2022)....................................19, 20

*Strauss v. Credit Lyonnais, S.A.*,
  175 F. Supp. 3d 3 (E.D.N.Y. 2016) ......................................................................33

*Struna v. Leonardi*,
  2022 WL 4096146 (S.D.N.Y. Sept. 7, 2022) ........................................................16

*Suez Water N.Y. Inc. v. E.I. Du Pont Nemours Co.*,
  2022 WL 36489 (S.D.N.Y. Jan. 4, 2022) ..............................................................14

*In re Sumitomo Copper Litig.*,
  120 F. Supp. 2d 328 (S.D.N.Y. 2000)..............................................................14, 15

*Sunward Elecs., Inc. v. McDonald*,
  362 F.3d 17 (2d Cir. 2004)...............................................................................30, 31

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
  916 F.3d 143 (2d Cir. 2019)....................................................................13, 32, 33

*Walden v. Fiore*,
  571 U.S. 277 (2014).......................................................................................22, 23

**Other Authorities**

Fed. R. Bankr. P. 7004.............................................................................................13

Fed. R. Bankr. P. 7012...............................................................................................1

Fed. R. Civ. P. 12(b)(2).................................................................................1, 11, 12

Jason Szep, *Savings Lost to Madoff, Elderly Forced Back to Work*, Reuters (Feb.
  6, 2009) .....................................................................................................................1

Kenneth M. Krys and Greig Mitchell (the "Liquidators"), in their capacities as the duly appointed Liquidators and Foreign Representatives of Fairfield Sentry Limited (In Liquidation) ("Sentry") in the above-captioned adversary proceeding (together, with the other adversary proceedings now pending against Sentry's former shareholders, the "U.S. Redeemer Actions"), respectfully submit this memorandum of law in opposition to Altigefi-Altipro Master a/k/a Olympia Capital Management's ("Altipro") motion to dismiss the Fifth Amended Complaint ("Complaint" or "Compl.") (10-ap-3627, Dkt. 143)[1] under Federal Rule of Civil Procedure 12(b)(2) as made applicable here by Rule 7012 of the Federal Rules of Bankruptcy Procedure ("Motion" or "Mot.") (10-ap-3627, Dkt. 172).

## PRELIMINARY STATEMENT

The Liquidators seek to recover at least ███████ in payments that Altipro received as a redemption of its investments in Bernie Madoff's Ponzi scheme. Several Fairfield investors saw their life savings, retirement funds, and pensions wiped out in an instant when the scheme collapsed in December 2008.[2] But as a sophisticated entity with inside knowledge about Madoff's fraud, Altipro was able to get out early and reap a massive profit for itself and its clients before Madoff's investment firm was put into bankruptcy. Altipro now attempts to evade responsibility by minimizing its own substantial and purposeful connections with the U.S.; Altipro should be held to account and its motion to dismiss denied.

The facts relevant to this motion are simple. When Altipro withdrew its investment from Sentry, it received an inflated redemption payment that was substantially sourced from investors' monies that Fairfield had invested in Madoff's eponymous New York investment firm Bernard

---

[1]    Unless otherwise specified, docket citations refer to filings in the above-captioned action.

[2]    *See generally* Jason Szep, *Savings Lost to Madoff, Elderly Forced Back to Work*, Reuters (Feb. 6, 2009), https://www.reuters.com/article/us-madoff-victims/savings-lost-to-madoff-elderly-forced-back-to-work-idUSTRE5156FB20090207.

1

L. Madoff Investment Securities LLC ("BLMIS"), through which Madoff operated his Ponzi scheme. Both to make its investments in Sentry and, at the expense of other investors, to receive a redemption payment from Sentry—the same redemption payment the Liquidators seek to recover in this action—Altipro retained BNP Paribas Securities Services, S.A. ("BNP SS") as an agent.

BNP SS facilitated investors' subscriptions in Sentry by serving as the shareholder of record for Sentry's beneficial shareholders, such as Altipro. In serving as Altipro's agent in connection with its investments in Sentry, BNP SS acknowledged that it understood Sentry was investing in the U.S. securities market through BLMIS, ███████████████████

███████████████████████████████████████████████

███████████████████ BNP SS's conduct is imputed to Altipro for purposes of this motion.

Thus, Altipro knew where its investments were going when it invested in Sentry: ███████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████ Altipro is subject to this Court's jurisdiction as a result of that conduct.

For the Court to exercise specific jurisdiction over a defendant, the defendant must have sufficient contacts with the forum that relates to the claims at issue, and the exercise of jurisdiction must be reasonable. Altipro's and its agent's extensive, intentional contacts with the U.S. more than sufficiently support this Court's exercise of jurisdiction over Altipro.

*First*, Altipro's and its agent's contacts with the U.S. were voluminous and are directly related to the Liquidators' claims. For example, Altipro:

- Subscribed for at least ██████ shares in Sentry—worth at least ████████, with the sole purpose of investing in ████████████████████

2



- Instructed its agent to sign ▮▮▮▮▮ subscription agreements governed by the laws of New York and that selected New York as the forum for any related litigation;

Courts have held that contacts nearly identical to these support the exercise of personal jurisdiction. Indeed, this Court recently found personal jurisdiction existed based on similar investments in Sentry in actions brought by the BLMIS Trustee.[5] And these contacts directly relate to the crux of the Liquidators' claims: that Altipro redeemed its Sentry shares knowing that the payment it would receive in return would be inflated due to inaccurate and fraudulent value statements. Without these U.S. contacts, there would have been no investment, no redemptions, and no benefit to Altipro. The factual nexus between Altipro's forum contacts and the Liquidators' claims more than sufficiently supports the exercise of specific personal jurisdiction.

---

[3]    Throughout this brief, the Liquidators refer to Altipro's "investment" with BLMIS. The Liquidators do not allege that Altipro was invested in BLMIS itself, but instead refer to Altipro's investment in BLMIS by way of Sentry.

[4]    "Correspondent accounts are accounts in domestic banks held in the name of foreign financial institutions" that are used "to effect dollar transactions." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci II*"), 673 F.3d 50, 56 n.3 (2d Cir. 2012) (cleaned up).

[5]    *See, e.g.*, *Picard v. Banque Lombard Odier & Cie SA (In re Bernard L. Madoff)* ("Lombard Odier I"), 2022 WL 2387523, at *3 (Bankr. S.D.N.Y. June 30, 2022), leave to appeal denied sub nom. *In re Bernard L. Madoff Investment Securities LLC* ("Lombard Odier II"), 2023 WL 395225 (S.D.N.Y. Jan. 25, 2023); *Picard v. Cathay Life Ins. Co. (In re Bernard L. Madoff)* ("Cathay Life Ins."), 2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022); *Picard v. Barfield Nominees Ltd. (In re Bernard L. Madoff)* ("Barfield"), 2022 WL 4542915 (Bankr. S.D.N.Y. Sept. 28, 2022).

*Second*, this Court's exercise of personal jurisdiction over Altipro is more than reasonable, and allowing the suit to proceed is consistent with notions of fair play and substantial justice. The United States has a substantial interest in this dispute, as it concerns Altipro's deliberate choice to invest millions of dollars in, and wrongfully profit from, a fraudulent scheme in the U.S. securities market and ████████████████████ to pull it off at the expense of other investors. Any burden Altipro faces as a litigant in this forum is minimal at best, and can be mitigated through electronic transmission of document productions and redactions to address asserted privacy concerns arising from foreign law. Altipro has not come close to meeting its burden of presenting a compelling case that exercising jurisdiction would be unreasonable.

This Court should deny Altipro's Motion and reach the merits of the Liquidators' claims.

## BACKGROUND

### A.    Sentry

Sentry—along with non-parties Fairfield Sigma and Fairfield Lambda—were collectively the largest BLMIS "feeder funds," funnelling billions of dollars into New York-based BLMIS over 18 years. Compl. ¶¶ 26-27, 46-47. From their inception in 1990, until the widespread disclosure of Madoff's fraud in December 2008, Sentry sought out new investments through the sale of shares and transferred substantially all net proceeds to their New York accounts, which were managed by BLMIS. *Id.* ¶¶ 5, 20, 26-27, 48. Sentry transferred its proceeds directly to BLMIS in New York. *See id.* ¶¶ 46-47.

### B.    Relevant Entity Relationships

Altipro has asserted that it "is a special type of fund under French law (*a fonds commun de placement*) that does not have independent legal status or employees of its own; it can only act in legal matters through, and as represented by, its portfolio management company." Ex. 1 at

2.[6] Altipro has further asserted that until August 2010, it was managed by French portfolio management company Altigefi, after which date it was managed by Olympia Capital Management ("OCM").  *Id.*

In its capacity as Altipro's then-manager, Altigefi retained BNP SS as agent in connection with the Altipro investments in Sentry at issue here.  *See*, *e.g.*, Ex. 2 (██████████ ██████████████████████████████); Exs. 3-5 (██████████████████████████ ████████████████████████████); Ex. 6 (██████████████████████); Ex. 15 (████████████████) [7]

### C.    Altipro's Decision To Invest In Sentry

Altipro invested in Sentry through BNP SS in or about ████████ (the "Subscription Period"), for a total of at least ████████ shares. *See* Exs. 2-6.

Altipro knew where the money was going when it made these investments. ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████ Ex. 7, ██████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ Ex. 8, ██████████████████████████

---

[6]    Unless indicated otherwise, all exhibits refer to those attached to the Declaration of David J. Molton ("Molton Decl.").

[7]    BNP SS has been sanctioned by this Court for spoliation of evidence relevant to this case, *see* Ex. 23, and OCM further has asserted that it failed to obtain documents/records from now-defunct Altigefi upon taking over as manager, Ex. 1.    Accordingly, ambiguities in documentation in connection with this Motion, if any, should be resolved in the Liquidators' favor.

█████████████████████████████████████ Ex. 9; ████████████████████

████████████████████████████████████ Exs. 12-14.

Altipro also received █████████████████████████████████████

████████████████ *See, e.g.*, Ex. 10 (███████); Ex. 11 (███████████████

██████████████████████████████████████████████████).

Those PPMs highlighted U.S.-based BLMIS's central role in Sentry's investment strategy and

described BLMIS's services as ██████████████████████████████████

███████████ Ex. 11.

(Ex. 10 at 16), ████████████████████ (Ex. 11), and that ██████████

██████████████████████████████████████████████████

█████████████████████ (Ex. 11); *accord* Ex. 10 ██████████

████████████████████████████. In other words, the offering

materials made clear that the main purpose of Sentry's existence was to invest in BLMIS. Ex. 10

at 2 (██████████████████████████████████████████████

██████████████████████████████████████████████████

████████); *accord* Ex. 11 ██████████████████████████████

████████████████████; *see also* Exs. 14-16 (██████████████

███████████████████████████).

The PPMs for Sentry also explicitly stated that any payment for subscriptions in Sentry

should be wired ██████████████████████████████████████:

In order to subscribe for Shares, su
in the Subscription Documents wh
mail them to Fairfield Sentry Lit
Naritaweg 165, 1043BW Amsterd
(31-20) 572-2610. Subscription fu

Ex. 10 at 14; *see also* Ex. 11 at 14.

### D.    Altipro's Investment In Sentry

Altipro, through BNP SS, invested in Sentry from approximately ███████████,

including subscribing in ██████ shares on or about ██████████, *see* Ex. 3, ██████ shares

on or about ████████████, *see* Ex. 4, and ████████ shares on or about ██████████, *see* Exs. 2,

5.

███████████████████████████████████████████████████████

██████████████████████████████████████████. Exs. 3-5.[8] ██████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.* at ¶ 7 of each

document.    Altipro received these PPMs—as discussed *supra* Background Section C. ████

████████████████████████████████████████████████████████████

███████████████████████████, Exs. 3-5, 10-11 (███████████████████

████████████████, Ex. 20), and ultimate use of ████████████████████████

██████████████████████████████████████████████████████:

---

[8] The long form subscription agreements included provisions designating New York law as the governing law and New York as the venue for dispute resolution. *See, id.* at ¶¶ 16, 19 of each document.



**CITCO**
*Citco Fund Services*
*(Europe) B.V.*

## Confirmation of Order Received

BNP PARIBAS SECURITIES SERVICES
66 RUE DE LA VICTORIE
75009 PARIS
FRANCE

| | |
|---|---|
| Date | : Jun-26-2007 |
| Fund ID | : 03302 |
| Holder ID | : 00251802 |
| Account ID | : 05063060 |
| Order No. | : 25690902 |
| Email | : Paris_bp2s_hedge_funcit@bnpparibas.com |
| FAX Number | : 0033 1 42 981 975 |

OUAJNAT KARIM / AURELIE BACQ
Account: BNP PARIBAS SECURITIES SERVICES / ALTIGEFI- ALTIPRO MASTER

### FAIRFIELD SENTRY LIMITED

We confirm receipt of your instruction to SUBSCRIBE to
FAIRFIELD SENTRY LIMITED at the next dealing date

| | | |
|---|---|---|
| Trade Date | | Jul-01-2007 |
| Settlement Date | | Jun-27-2007 |
| Valuation/NAV Date | | Jun-30-2007 |
| Type of transaction | | Subscription |
| | | |
| Amount | USD | 10,000,000.00 |

| | |
|---|---|
| Bank Name: | HSBC BANK USA |
| Bank Address 1: | NEW YORK |
| Bank Address 2: | USA |
| ABA Ref.: | 021001088 |
| SWIFT Ref.: | MRMDUS33 |
| Further Cr. Num: | 000306487 |
| Further Cr. Name: | CITCO BANK NEDERLAND NV DUBLIN BRANCH |
| Further Cr. SWIFT Ref.: | CITCIE2D |
| Beneficiary Acct No: | IE23CITC00000035810501 |
| Beneficiary Name: | FAIRFIELD SENTRY LIMITED |

Ex. 6 at 1.

**CITCO**
*Citco Fund Services*
*(Europe) B.V.*

## Confirmation of Cash Received

| | |
|---|---|
| Date | : Jul-02-2007 |
| Fund Id | : 03302 |
| Holder Id | : 00251802 |
| Account Id | : 05063060 |
| CFI Cash Id | : 43589002 |
| Order Id | : 25690902 |

BNP PARIBAS SECURITIES SERVICES
66 RUE DE LA VICTORIE
75009 PARIS
FRANCE

FAX Number : 0033 1 42 981975
Email: Paris_bp2s_hedge_funds@bnpparibas.cor

OUAJNAT KARIM / AURELIE BACQ
Account name: BNP PARIBAS SECURITIES SERVICES / ACTIGEFI: ALTIPRO MASTER

### FAIRFIELD SENTRY LIMITED

We confirm the following receipt in respect of:
FAIRFIELD SENTRY LIMITED

| | | |
|---|---|---|
| Date Received | | Jun-27-2007 |
| Amount Received | USD | 10,000,000.00 |

The above funds were received by the following account:
| | |
|---|---|
| Bank Name: | HSBC BANK USA |
| Bank Address 1: | NEW YORK |
| Bank Address 2: | USA |
| ABA Ref.: | 021001088 |
| SWIFT Ref.: | MRMDUS33 |
| Further Cr. Num: | 000306487 |
| Further Cr. Name: | CITCO BANK NEDERLAND NV DUBLIN BRANCH |
| Further Cr. SWIFT Ref.: | CITCIE2D |
| Beneficiary Acct No: | IE23CITC00000035810501 |
| Beneficiary Name: | FAIRFIELD SENTRY LIMITED |

8

Ex. 6 at 3.

███████████████████████████████████████████████████████████████

████████████████████████████████, *see* Ex. 15 at ANWAR-CFSE-00107643, ██████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████:

## CITCO
### Citco Fund Services
### (Europe) B.V.

## Confirmation of Order Received

BNP PARIBAS SECURITIES SERVICES
66 RUE DE LA VICTORIE
75009 PARIS
FRANCE

| | |
|---|---|
| Date | : Mar-13-2008 |
| Fund ID | : 03302 |
| Holder ID | : 00251802 |
| Account ID | : 06063060 |
| Order No. | : 29534902 |
| Email | : Paris_bp2s_hedge_funds@bnpparibas.com |
| FAX Number | : 0033 1 42 981975 |

OUAJNAT KARIM / AURELIE BACQ
Account: BNP PARIBAS SECURITIES SERVICES / ALTIGEFI- ALTIPRO MASTER

### FAIRFIELD SENTRY LIMITED

We confirm receipt of your instruction to REDEEM from
FAIRFIELD SENTRY LIMITED at the next dealing date

| | |
|---|---|
| Trade Date | Apr-01-2008 |
| Settlement Date | May-01-2008 |
| Valuation/NAV Date | Mar-31-2008 |
| Type of transaction | Redemption |
| Fund Currency | USD |
| voting shares | 11,735.4170 |

Bank Name:            BNP PARIBAS
Bank Address 1:       NEW YORK
Bank Address 2:       USA
ABA Ref.:             026007689
SWIFT Ref.:           BNPAUS3N
Further Cr. Num:      10335000188
Further Cr. Name:     BNP PARIBAS SECURITIES SERVICES
Further Cr. SWIFT Ref.: PARBFRPP
Beneficiary Acct No:  FR5041329000010000084296842
Beneficiary Name:     BNP PARIBAS SECURITIES

Ex. 15 (██████████████████████) at CFSE-LIQ-00016070. ██████████████████

███████████████████████████████████████████████████████████████:

9

**Request for Wire Transfer Payment**

CITCO BANK NEDERLAND NV DUBLIN BRANCH
ATTN PAYMENTS DEPARTMENT
CUSTOM HOUSE PLAZA BLOCK 6
INTERNATIONAL FINANCIAL SERVICES CENTRE
DUBLIN 1 IRELAND

| | |
|---|---|
| Date | : Apr-14-2008 |
| Fund Id | : 03302 |
| Holder Id | : 00251802 |
| Account Id | : 05063060 |
| Contract No. | : 66092602 |
| Order No. | : 29534902 |
| CFI Cash Ic | : 50657502 |

**FAIRFIELD SENTRY LIMITED**

In request of the above named account please process the following wire transfer payment

**Please debit:**
Account Number  IE23CITC00000035810501
Account Name  FAIRFIELD SENTRY LIMITED

**Please credit:**
Bank Name:  BNP PARIBAS
Bank Address 1:  NEW YORK
Bank Address 2:  USA

Bank Address 4:
ABA Ref.:  026007689
SWIFT Ref.:  BNPAUS3N

Further Cr. Num:  10335000188
Further Cr. Name:  BNP PARIBAS SECURITIES SERVICES

Further Cr. SWIFT Ref.:  PARBFRPP
Beneficiary Acct No:  FR5041329000010000084296842
Beneficiary Name:  BNP PARIBAS SECURITIES

Amount:  USD    15,290,993.69
Value date:  Apr-14-2008
Ref:  FAIRFIELD SENTRY  Shares:11,735.4170 T/D:04-01-2008 RE
Note:  FAIRFIELD SENTRY ALTIGEFI ALTIPRO MASTER
Details of Charges:
Wire Ref/ Check Num:

*Id.* at CFSE-LIQ-00016097.

```
BNP PARIBAS SECURITIES SERVICES          Fund ID     : 03302
66 RUE DE LA VICTORIE                     Holder ID   : 00251802
75009 PARIS                               Account ID  : 05063060
FRANCE                                    Contract No. : 66092602
                                          Date        : Apr-11-2008
                                          Order No.   : 29534902
                                          Email       : Peris_bp2s_hedge_funds@bnpparibas
OUAJNAT KARIM / AURELIE BACQ              FAX Number : 0033 1 42 981975
Account name: BNP PARIBAS SECURITIES SERVICES / ALTIGEFI- ALTIPRO MASTER
```

### FAIRFIELD SENTRY LIMITED

| In accordance with your instructions we confirm having REDEEMED the following voting shares from FAIRFIELD SENTRY LIMITED |
|---|

| | | |
|---|---|---|
| Valuation/NAV Date | | Mar-31-2008 |
| Trade Date | | Apr-01-2008 |
| Expected Payment Date | | May-01-2008 |
| | | |
| No. of voting shares Redeemed | | 11,735.4170 |
| Redemption Price | USD | 1,302.9783 |
| Gross Redemption Proceeds | USD | 15,290,993.69 |
| | | |
| Net Redemption Proceeds | USD | 15,290,993.69 |
| Amount to be Paid | USD | 15,290,993.69 |
| Amount Receivable | USD | 15,290,993.69 |

Your balance following this transaction will be 0.0000 voting shares.

Ex. 15 at ANWAR_CFSE-00107638.

As the records above confirm, in or about ███████, mere months before the Madoff scheme was exposed, BNP SS requested (and Sentry processed) a redemption from Sentry of the entirety of Altipro's Sentry holdings – and BNP SS thus took payments totaling ███████, all on Altipro's behalf. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

## **STANDARD**

Courts in this Circuit apply one of three standards to Rule 12(b)(2) motions. If the motion is assessed solely on the pleadings, the plaintiff may defeat the motion based on "legally

sufficient allegations" alone. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566-67 (2d Cir. 1996), *cert. denied*, 519 U.S. 1007 (1996). If discovery is permitted *and* the court holds an evidentiary hearing, "the plaintiff must demonstrate the court's personal jurisdiction over the defendant by a preponderance of the evidence." *Id.* at 567. And where, as here, the court assesses the motion after jurisdictional discovery but *without* holding an evidentiary hearing, the plaintiff need only make a factually supported *prima facie* showing of jurisdiction. *See id.* (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Obabueki v. Int'l Bus. Machines Corp.*, 2001 WL 921172, at *2 (S.D.N.Y. Aug. 14, 2001).

In this context, the court must credit the facts averred in the pleadings and motion papers as true and must "construe[] the pleadings and affidavits in the light most favorable to the plaintiff … resolv[ing] all doubts in plaintiff's favor, notwithstanding any 'controverting presentation by the moving party.'" *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 295 F. Supp. 3d 404, 409 (S.D.N.Y. 2017) (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85-86 (2d Cir. 2013)); *accord Drake v. Lab. Corp. of Am. Holdings*, 2008 WL 4239844, at *1 (E.D.N.Y. Sept. 11, 2008) ("Despite this higher burden, the Court must 'credit [Plaintiff's] averments of jurisdictional facts as true.'" (quoting *Metro. Life Ins. Co.*, 84 F.3d at 567)). Likewise, the court must draw "reasonable inference[s]" in the plaintiff's favor based on facts developed in discovery. *Drake*, 2008 WL 4239844, at *5; *see also Obabueki*, 2001 WL 921172, at *1 (stating that the court must draw reasonable inferences in the plaintiff's favor notwithstanding the fact that the parties had engaged in jurisdictional discovery).[9]

---

[9] The Liquidators have not pursued discovery on the merits from Altipro, including, for example, documents demonstrating that Altipro knew Sentry's net asset values were inflated. To the extent the Court considers those allegations in resolving Altipro's Rule 12(b)(2) motion, it should credit those allegations as true per the standard applicable in the absence of jurisdictional discovery. *See Metro. Life Ins. Co.*, 84 F.3d at 566-67.

## **ARGUMENT**

This Court has personal jurisdiction over Altipro because Altipro has sufficient minimum contacts with the United States and because the exercise of jurisdiction over Altipro is reasonable.

## I.    **Altipro Has Sufficient Minimum Contacts With The United States**

Altipro has sufficient minimum contacts with the United States to permit this Court to exercise jurisdiction over it. Jurisdiction under Bankruptcy Rule 7004 is assessed based upon the defendant's "contacts with the United States, rather than with the forum state," and there is no need for the Court to address the forum state's long-arm statute. *Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)* ("*FGG*"), 627 B.R. 546, 565 nn.12, 13 (Bankr. S.D.N.Y. 2021) (citing *In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 619 (Bankr. S.D.N.Y. 2015)). Demonstrating the requisite minimum contacts for specific personal jurisdiction requires showing (1) a defendant's "purposeful availment" of the forum (2) that "arises out of or relates to" the alleged misconduct. *FGG*, 627 B.R. at 566; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 475 (1985); *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (citing *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1785-86 (2017)). Courts assess both prongs based on the "totality of the circumstances." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci IV*"), 732 F.3d 161, 170 (2d Cir. 2013).

Satisfying the first prong, "purposeful availment," requires showing that the defendant has sufficient contacts with the forum resulting from the defendant's own actions. *FGG*, 627 B.R. at 566. The defendant's activities "need not have taken place within the forum, and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (cleaned up) (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Moreover, a defendant "can purposefully avail itself of a forum by directing its

agents … to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014). Imputing an agent's conduct for jurisdictional purposes does not require "a formal agency relationship between the defendant and [its] agent," *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 336 (S.D.N.Y. 2000). Rather, courts may impute an agent's conduct within or aimed at the forum to the principal when, based on "the realities of the relationship in question rather than the formalities of agency law," *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986), the court concludes that the "alleged agent acted in [the forum] for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal." *In re Eur. Gov't Bonds Antitrust Litig.*, 2020 WL 4273811, at *6 (S.D.N.Y. Jul. 23, 2020).

Satisfying the second prong, "arises out of or relates to," requires showing that there is a "sufficiently close link" between the defendant's contacts and the claims at issue. *MSP Recovery Claims, Series LLC v. Takeda Pharm. Am., Inc.*, 2021 WL 4461773, at *3 (S.D.N.Y. Sept. 29, 2021) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1032 (2021)). A causal relationship between the plaintiff's claims and the defendant's forum contacts is *not* required. *See, e.g.*, *Cathay Life Ins.*, 2022 WL 16626325, at *4 (citing *Ford Motor Co.*, 141 S. Ct. at 1027). An "affiliation between the forum and the underlying controversy" is sufficient. *Id.* (quoting *Goodyear Dunlap Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also Suez Water N.Y. Inc. v. E.I. Du Pont Nemours Co.*, 2022 WL 36489, at *8 (S.D.N.Y. Jan. 4, 2022) (holding that the claims must be "arguably connected" to, rather than "completely unmoored" from, the contacts at issue (quoting *Licci v. Lebanese Canadian Bank, SAL* ("*Licci III*"), 984 N.E.2d 893, 900-01 (N.Y. 2012))).

The facts averred and evidence presented by the Liquidators, which must be taken as true for purposes of this motion, are sufficient to satisfy both prongs of the minimum contacts test.

14

Altipro purposefully availed itself of the United States by intentionally investing in BLMIS feeder fund Sentry via BNP SS with the express intention of profiting from BLMIS's investments in the U.S. securities market (**Section I.B**, *infra*) repeatedly directing, via BNP SS, funds into BNP SS's and Sentry's ███████████████████ to effectuate both the investment and then the redemptions from Sentry (**Section I.C**, *infra*), and engaging in other business activity aimed at the United States (**Section I.D** *infra*), each of which constitutes an independent basis for the Court's exercise of personal jurisdiction over Altipro. And each of those contacts is closely related to the Liquidators' claims. Altipro therefore has sufficient minimum contacts with the United States.

### A.    BNP SS's Contacts With The United States And Knowledge About Sentry Is Imputed To Altipro

The Court should impute BNP SS's knowledge and forum-directed activities to Altipro in resolving the instant motion because (1) BNP SS's conduct in investing in Sentry was taken on behalf and for the benefit of Altipro; (2) BNP SS acted at the direction and under the control of Altipro; and (3) BNP SS acted pursuant to Altipro's knowledge and consent. *See In re Eur. Gov't Bonds Antitrust Litig.*, 2020 WL 4273811, at *6.

The on behalf/benefit of prong is satisfied when an agent's activities open the principal to financial gain. *See In re Sumitomo Copper Litig.*, 120 F. Supp. 2d at 336 (finding that potential profits from agent's trading activities established benefit); *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 319 (S.D.N.Y. 2009) (holding that proceeds from sale of a property by the agent established benefit). The control prong is satisfied when the principal has "[an] ability . . . to influence [the agent's] acts or decisions by virtue of the parties' respective roles." *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 442 (S.D.N.Y. 2008) (cleaned up) (citing *CutCo*, 806 F.2d at 336). Absolute control by the principal is not necessary. *Id.* The

knowledge and consent prong is satisfied when the principal is apprised of the agent's activities. *See Struna v. Leonardi*, 2022 WL 4096146, at *9 (S.D.N.Y. Sept. 7, 2022). The principal's decision not to take any action regarding the agent's activities further evidences the principal's knowledge and consent as to those activities. *Branham v. ISI Alarms, Inc.*, 2013 WL 4710588, at *7 (E.D.N.Y. Aug. 30, 2013). Applied here, those three factors demonstrate that BNP SS's contacts with the forum concerning Altipro's investment in Sentry and knowledge about the relationship between Sentry and BLMIS should be imputed to Altipro.

*First*, BNP SS's activities were performed on behalf of Altipro and benefited Altipro. It is undisputed that BNP SS subscribed to shares of Sentry pursuant to Altipro's order of the shares and that Altipro was the beneficial owner of those shares. ███████████████

████████████████████████████████████████

██████████████████████████████. Altipro subscribed to Sentry through BNP SS as a means to profit by investing, albeit indirectly, in BLMIS. Through BNP SS's activities, Altipro could (and did) obtain financial gains by investing its money in BLMIS.

*Second*, Altipro clearly exercised control over BNP SS's subscription- and redemption-related activities. ████████████████████████████████

████████████████, Ex. 15. ████████████████████████

████████████████████████████████████████

Therefore, Altipro was the principal with respect to those transactions and exercised the requisite control over BNP SS as its agent.

*Finally*, Altipro was aware of and consented to the activities by BNP SS relating to the subscriptions and redemptions on Altipro's behalf. ████████████████████████

████████████████████████████████████████

16

███████████████████████████████████████████████████

███████████████████████████, Ex. 22, █████████████████

███████████████████████, Exs. 7-9, 12-14, 16-19, ██████████

███████████████████████████████████████████████████

Ex. 20. While fully aware of BNP SS's actions, Altipro neither objected to those actions nor

instructed BNP SS to act any differently, further evidencing Altipro's consent to the steps taken

by BNP SS in implementing Altipro's instructions.

In sum, BNP SS conducted activities relating to its subscriptions and redemptions on

behalf and for the benefit of, under the control of, and with the knowledge and consent of

Altipro. Courts have found an agency relationship in similar cases. *See, e.g.*, *Sec. Ins. Co. of

Hartford v. ITA Textiles Corp.*, 2000 WL 1576879, at *2 (S.D.N.Y. Oct. 23, 2000) (imputing

contacts of insurance broker who solicited quotes and secured an insurance policy for the

defendant); *Bidonthecity.com LLC v. Halverston Holdings Ltd.*, 2014 WL 1331046, at *4

(S.D.N.Y. Mar. 31, 2014) (finding that foreign corporation acted as agent of foreign defendant

by negotiating and entering a joint venture agreement on the defendant's behalf); *Schechter v.

Banque Commerciale Privee*, 1991 WL 105217, at *11 (S.D.N.Y. June 11, 1991) (finding that an

individual who secured a guaranty for a note per defendant's directions served as defendant's

agent for jurisdictional purposes); *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*,

2021 WL 2000371, at *8 (S.D.N.Y. May 19, 2021) (imputing the conduct of a corporation that

sourced an insurance policy from New York-based underwriter pursuant to authority delegated

by defendant); *Picard v. Merkin*, 515 B.R. 117, 147-48 (Bankr. S.D.N.Y. 2014) (action taken by

an agent in exercise of discretion entrusted to it by the principal is imputed to the principal for

jurisdictional purposes). Therefore, BNP SS was Altipro's agent for jurisdictional purposes, and

BNP SS's actions in effectuating payments relating to Altipro's investments and redemption of shares in Sentry are imputed to Altipro.

### B.    Altipro Knowingly And Intentionally Invested In Madoff Feeder Fund Sentry

The evidence presented by the Liquidators makes clear that Altipro intentionally invested in BLMIS feeder fund Sentry, knowing that Sentry was designed to subsequently invest that money in New York-based BLMIS. Altipro is subject to this Court's jurisdiction with respect to its Sentry redemption as a result of that conduct.

### 1.    Altipro Purposefully Availed Itself Of The United States Via Its Intentional Investment In Sentry

This Court, applying Judge Lifland's decision in *Picard v. Bureau of Labor Ins.* (*SIPC v. Bernard L. Madoff Inv. Sec. LLC*) ("*BLI*"), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012), recently held that "[a] party 'purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS.'" *Cathay Life Ins.*, 2022 WL 16626325, at *3. *BLI* applies with at least equal force here.

In *BLI*, Judge Lifland held—in a similar action seeking to reclaim redemption payments made by Fairfield Sentry—that a foreign defendant "purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." 480 B.R. at 517. █████, the *BLI* defendant subscribed in Sentry after engaging in "diligence on Fairfield Sentry and its investment strategies" and after reviewing "a private placement memorandum and other information about Fairfield Sentry, including specifics about the Fund's investment strategy and past results and trades in the S & P 100," provided to it by FGG. *Id.* at 517. And ████████████

18

████████████, the defendant "signed [a] Subscription Agreement [that] incorporated the [offering memorandum]," meaning the defendant knew "Sentry was required ████████ ████████" in BLMIS, which would hold the assets in accounts in New York to be "invested in U.S. Securities...." *Id.*

Courts repeatedly have employed *BLI*'s reasoning to find jurisdiction in similar circumstances. *See Picard v. JP Morgan Chase & Co.* (*In re Bernard L. Madoff Inv. Sec. LLC*), 2014 WL 5106909, at *9 (Bankr. S.D.N.Y. Oct. 10, 2014) ("[*BLI*] confirmed that defendants who invested directly or indirectly with BLMIS and received payments from BLMIS as ... subsequent transferees ... [are] subject to the Court's personal jurisdiction"); *Maxam Absolute Return Fund, L.P.*, 460 B.R. at 118 (finding jurisdiction over defendant that "engaged in a series of repeated transactions that intentionally channelled investor money into the BLMIS Ponzi scheme in New York"); *cf. In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 105 (2d Cir. 2019) ("When these investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going.").

Most recently, this Court cited *BLI* in exercising personal jurisdiction over several defendants in actions brought by the BLMIS Trustee seeking to recoup the very same kind of redemption payments as at issue here. *See, e.g., Cathay Life Ins.*, 2022 WL 16626325; *Barfield*, 2022 WL 4542915; *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC ("Inteligo")*, 2022 WL 17742686 (Bankr. S.D.N.Y. Dec. 15, 2022). This Court exercised jurisdiction based on allegations of similar facts as those averred here: that the defendant "knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry"; that Sentry ████████ ████████████; that the defendant reviewed PPMs stating that BLMIS, possessed

the predominant portion of Sentry's assets; that the defendant signed subscription agreements incorporating the PPM agreements; and that the defendant communicated with FGG employees in New York. *Compare Inteligo*, 2022 WL 17742686, at *2-3, *Cathay Life Ins.*, 2022 WL 16626325, at *3, *and Barfield*, 2022 WL 4542915, at *3, *with* Compl. ¶ 20 (alleging that Altipro invested in Sentry while knowing and intending that its investments would be passed along to BLMIS), *and* Exs. 10-11 ( ███████████████████████████████████

███████████████████ ); Exs. 7-9, 12-14 ( ███████████████████████████

███████████████████████████████████████████████████████████

███████████████████████ ).  In light of these allegations, this Court held that defendants "intentionally directed its investment to New York-based BLMIS, through Fairfield Sentry," which in turn was a basis for exercising personal jurisdiction pursuant to *BLI*. *Lombard Odier I*, 2022 WL 2387523, at *3; *see also Lombard Odier II*, 2023 WL 395225, at *4 (denying appeal from *Lombard Odier I* and concluding that this Court's decision was based on proper application of "settled precedent").

Here, ███████████████████ (virtually identical to those at issue in *BLI*, *Cathay Life Insurance*, *Lombard Odier I*, and others), ███████████████████████████

███████████████████ , all demonstrate that Altipro, a sophisticated investor, invested in Sentry with the intention, knowledge, and expectation that its investments would be channelled into BLMIS. Altipro obtained pecuniary gains through these investments at least in the form of retained redemption payments. Under *BLI* and this Court's recent decisions, that defeats Altipro's Motion.

Specifically, as in *BLI*, ███████████████████████████████████

███████████████████████████████████████████████████████████ :



1. ████████████████████████████████████████████ Ex. 10; *accord* Ex. 11.

2. ████████████████████████████████████ Ex. 10 at 8; *accord* Ex. 11.

3. ████████████████████████████ *See* Ex. 10, *accord* Ex. 11.

4. ████████████████████████████████████████████ *See* Ex. 10 at 8; *accord* Ex. 11.[10]

████████████████████████████████████

████████████████████████████████████████, *supra*

Background Section C—further informed it of the relationship between Sentry and New-York-based BLMIS at the time it instructed BNP SS to invest in Sentry on its behalf. Altipro also understood the involvement of FGG U.S.'s office in its decisions to invest in Sentry, █████████████████████████████████████. *Id.*

The offering materials and variety of other documents ████████████ "highlighted BLMIS's central role" in Sentry's investment strategy and informed Altipro that, by investing in Sentry, it was, in fact, indirectly investing in BLMIS in New York. *BLI*, 480 B.R. at 517. Altipro thus instructed BNP SS to execute its subscriptions into Sentry while ████████████

████████████████████████████████████

██████████████████████████ *Id.* As in *BLI*, that suffices to establish jurisdiction over Altipro. *See Lombard Odier I*, 2022 WL 2387523, at *3; *Lombard Odier II*, 2023 WL 395225, at *4-5.

---

[10]   The PPM in *BLI* conveyed the same information as those referenced above. *See* No. 11-ap-02732, Dkt. 17-4 at 8-9, 14-16.

Moreover, BNP SS, acting as Altipro's agent, ████████████████████████
████████████████████████████████ Ex. 3-5; *see also BLI*, 480 B.R. at 517 ████████████
████████████████████████████████. For the reasons explained above, *see supra* Section I.A, BNP SS's knowledge and conduct – ████████████████████████
████████████████████████████ – is imputed to Altipro for purposes of this motion and further supports the exercise of jurisdiction here. *See, e.g.*, *In re Eur. Gov't Bonds Antitrust Litig.*, 2020 WL 4273811, at *6.

Altipro's attempts to distinguish *BLI* fail. Altipro incorrectly asserts that the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014), bars jurisdiction here. Mot. 11-12. *Walden* does no such thing. The *Walden* Court held there was no jurisdiction because, unlike Altipro here, the defendant did not do anything to avail himself of the benefits and protections of the forum. In *Walden*, the defendant was a Georgia police officer who searched the plaintiffs and physically seized cash from them while they were passing through the state. The plaintiffs attempted to sue the officer in their home state of Nevada, arguing that jurisdiction existed on the basis that the officer knew the plaintiffs were Nevada residents. 571 U.S. at 288-91. The Supreme Court rejected that theory, stating that "the plaintiff cannot be the *only* link between the defendant and the forum," as "the defendant's conduct … must form the necessary connection with the forum State." *Id*. at 289 (emphasis added). In so concluding, the Court relied on the fact that the defendant "never traveled to, conducted activities within, *contacted anyone in, or sent anything* or anyone to Nevada." *Id*. (emphasis added).

By contrast, the Liquidators do not argue (and *BLI* did not hold) that Altipro is subject to jurisdiction because of Sentry's own contacts with the U.S., or Altipro's knowledge of those contacts, or the mere foreseeability that the money they invested in Sentry would end up in the

United States. Rather, as explained above, Altipro directed BNP SS to invest in Madoff feeder funds with the *express aim* of having those investments placed with a U.S.-based investment fund to take advantage of the U.S. securities markets and while knowing that Sentry was *contractually required* to invest at least 95% of the money they received in U.S.-based BLMIS. *See* Exs. 10-11, not that Sentry *might* ████████████████████ in the United States, Mot. 12. And Altipro did all of this ████████████████████████████████ ████████████████████████. *See* Exs. 7-9, 12-14 (████████████████████ ████████████████████████████████████ █████████████████); Exs. 10, 11 (████████████████ █████████████████████).

That conduct is not attributable to Sentry, nor are the resulting contacts "random, fortuitous, or attenuated." *Walden*, 571 U.S. at 286 (quoting *Burger King Corp.*, 471 U.S. at 475). Rather, jurisdiction here, as in *BLI*, stems directly from Altipro's and its agent's own deliberate actions aimed at the United States. *Lombard Odier II*, 2023 WL 395225 (concluding that *Walden* does not foreclose jurisdiction in this context because "New York is not just where Defendant's money happened to end up"). Even after *Walden*, Sentry's mere involvement in facilitating some of those actions does not foreclose jurisdiction. *Id.*; *see also Walden*, 571 U.S. at 286 ("[A] defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties.").

   2.   **Altipro's Intentional Investment In Sentry Directly Relates To The Liquidators' Claims**

Altipro's intentional investment in Sentry via BNP SS is directly related to the Liquidators' claims. To demonstrate a sufficient relationship between its claims and Altipro's forum contacts, the Liquidators need only show "an affiliation between the forum and the

underlying controversy." *Cathay Life Ins.*, 2022 WL 16626325, at *4. That standard is satisfied here.

The sole purpose for subscribing for shares of Sentry was to ultimately redeem those shares; otherwise, Sentry would hold the money in perpetuity. Without the subscriptions, Altipro would have had no shares to redeem and could not have received the redemption payment to which its subscriptions gave rise. The two are inextricably linked.

Altipro asserts that the Liquidators' claims "relate[] to and arise[] out of the calculation of the NAV," and, from this premise, Altipro somehow draws the conclusion that the Liquidators' claims are therefore wholly unrelated to Altipro's subscription in Sentry. Mot. 10. But Altipro cannot artificially decouple its subscriptions in Sentry from its redemptions. This Court previously rejected that argument, when this Court held that "subsequent transfer claims against [d]efendant[s] for monies [they] received from the Fairfield Funds … are directly related to [those defendants'] investment activities with Fairfield and BLMIS." *Lombard Odier I*, 2022 WL 2387523, at *4.

Altipro further argues that the Liquidators have not established jurisdiction over each individual subsequent transfer. Mot. 10. The Court has also rejected this argument in a parallel proceeding by the BLMIS Trustee against similarly situated defendants, where this Court held that "[b]y alleging that Defendant intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS." *Lombard Odier I*, 2022 WL 2387523, at *6. The Liquidators, just like the Trustee, alleged that Altipro intentionally invested in BLMIS and have therefore established jurisdiction as to each subsequent transfer.

24

C.    **Altipro Utilized** ███████████████████ **Of Sentry And BNP SS To Invest In And Receive Redemption Payments From Sentry**

The redemption at issue in this case was from Sentry. Altipro's intentional use ███████ ███████████████████████████████████ to subscribe for shares in Sentry and receive each of the at-issue redemption payments from Sentry also supports the exercise of jurisdiction. A defendant's use of an in-forum correspondent account is sufficient to establish personal jurisdiction where said use is "deliberate," "recurring," and sufficiently related to the harm for which the plaintiff seeks redress. *Licci IV*, 732 F.3d at 171-73. ████████████ ███████████████████████████████ satisfies each of those three prongs.

1.    **Altipro, Via Its Agent BNP SS, Deliberately Utilized U.S. Correspondent Accounts In Lieu Of Offshore Accounts**

Altipro, at least ████████████████████████████████████████████████ A defendant's ███████████████████ is "deliberate" if it "indicates desirability and a lack of coincidence." *Licci IV*, 732 F.3d at 168 (quoting *Licci III*, 984 N.E.2d at 901). ███████████████ █████████████████████████████████ in effectuating its subscription and redemption payments was a conscious and volitional one—not mere coincidence—that supports the exercise of jurisdiction. *See, e.g.*, *Picard v. Meritz Fire & Marine Ins. Co. Ltd.* (*In re Bernard L. Madoff*), 2022 WL 3273044, at *3 (Bankr. S.D.N.Y. Aug. 10, 2022) ("Where a defendant chooses to use a United States bank account to receive funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional."); *Cathay Life Ins.*, 2022 WL 16626325, at *3; *Licci IV*, 732 F.3d at 170-71.

a.    **BNP SS's Deliberate Use Of Its Own** ███████████████████ **Is Imputed To Altipro**

Altipro is also subject to jurisdiction in light of BNP SS's use of ███████████ ███████████████████████████████████ . *Licci IV*, 732 F.3d at 171-73.

25

BNP SS, acting as Altipro's agent, deliberately used its ███████████████ ███████████████████████████████████████████████. *See* Ex. 15 at ANWAR-CFSE-00107643. BNP SS ████████████████████████. *Id*. BNP SS, acting as Altipro's agent, had complete control over which account it used for these transfers. *See* Joyce Decl. at 11-13 (███████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██).[11] Sentry ████████████████████████, *solely because* BNP SS made the choice to use a U.S. account and █████████████████████.

BNP SS's use of its ████████████ to receive redemption payments from Sentry on behalf of Altipro is imputed to Altipro. *See supra* at Section I.A. Therefore, BNP SS's deliberate use of ████████████ firmly supports this Court's exercise of jurisdiction over Altipro. *See, e.g.*, *Licci IV*, 732 F.3d at 170-71; *Cathay Life Ins.*, 2022 WL 16626325, at *3.

### b.    Altipro Deliberately Instructed Its Agent BNP SS To Use ██████ ████████

Altipro also deliberately utilized ████████████████, to which BNP SS sent Altipro's subscription payments. Courts have held that a defendant's transfer of monies to a

---

[11] Neither the subscription agreements, redemption request forms, nor rules governing BNP SS's investments in Sentry, nor the mere fact that Sentry designated U.S. dollars as its base currency, required BNP SS to designate a U.S. account for the receipt of Altipro's redemption payments. *See* Joyce Decl. at 11-13. Sentry required only that redemptions occur in dollars, *not* that Altipro receive payments in an account in the U.S. *See* Ex. 21 (Sentry Articles of Association) at 8-11. Further, the Second Circuit has recognized that, "[i]n light of the widespread acceptance and availability of U.S. currency, [a foreign bank] could have … processed U.S.-dollar-denominated wire transfers … through correspondent accounts anywhere in the world." *Licci IV*, 732 F.3d at 171.

third-party's U.S. account can support the exercise of jurisdiction. See *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank* ("*Arcapita I*"), 549 B.R. 56, 68-69, 70 n.18 (S.D.N.Y. 2016). ███████████████████████████████████████████

███████████████████████████, Exs. 10-11, ███████████████████████

███████████████, Ex. 20. Altipro thus knew at the time of its investments in Sentry that BNP SS would have to transfer Altipro's subscription payments to ██████████████████

███████. Altipro nonetheless chose Sentry rather than investing in a different fund that lacked such a requirement. Altipro's use of ████████████████████████ was therefore deliberate—it was a direct consequence of its affirmative choice to execute investments in Sentry, fully aware that investing in Sentry would involve U.S. dollar-denominated transactions and use of ████████████.

**2.    Altipro, Via Its Agent, Utilized ██████████████████████ To Effectuate Wire Transfers**

Altipro, via its agent BNP SS, ████████████████████████████████████

███████. "[A] foreign bank's *repeated use* of a correspondent account in New York [on behalf of a client] … show[s] purposeful availment of New York's" banking, currency, and legal systems. *Licci IV*, 732 F.3d at 168 (emphasis added) (quoting *Licci III*, 984 N.E.2d at 900).

Altipro, via BNP SS, repeatedly ███████████████████████████████████ when investing in and receiving redemption payments from Sentry. *First,* ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████. Ex. 6. *Second,* ████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████. Ex. 15. In total, just months before the Madoff fraud was exposed, BNP SS, on behalf of Altipro, liquidated Altipro's entire Sentry holdings consisting of

██████████████    through    ███████████████████████████████████████████

██████████████████████████████ . *Id.*

Altipro's  knowing    ███████████████████    is  sufficient  to  establish  personal

jurisdiction. Courts have held that as few as one or two wire transfers in scale of millions through

███████████████████████    can suffice. *See Arcapita I*, 549 B.R. at 70 & n.18 (holding that even a

single use of a third party's correspondent account use was sufficient); *Schansman v. Sberbank

of Russia PJSC*, 565 F.Supp.3d 405, 414 (S.D.N.Y.2021) (two transfers for a combined $300

where the plaintiff alleged more generally that "some of" the millions of dollars had been routed

through U.S. accounts). ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

**3.    Altipro's Agent's ████████████████ Use Was Sufficiently Related To
The Harms Alleged**

BNP SS's    ████████████████████    on Altipro's behalf is sufficiently related to the

Liquidators' claims seeking to recover Sentry redemption payments. Where a defendant's use of

████████████████    is "an instrument for accomplishing the alleged wrongs for which the plaintiff

seeks redress," it is sufficiently related to the claims at issue. *Licci IV*, 732 F.3d at 171; *see also

FGG*, 627 B.R. at 566 ("[The 'arising out of' prong] may be satisfied when defendant's allegedly

culpable conduct involves at least in part financial transactions that touch the forum.").

As discussed above, a core element of the Liquidators claims is that Altipro received

inflated redemption payments. ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████    That  is  enough  to  establish

jurisdiction as to those redemptions. *See Licci IV*, 732 F.3d at 171; *Picard v. BNP Paribas S.A.*

28

(*In re Bernard L. Madoff*), 594 B.R. 167, 191 (Bankr. S.D.N.Y 2018) (finding that the claims for redemption payments received by investors in a BLMIS feeder fund arose from the investors' receipt of redemption payments at a New York account).

### D.    Altipro Engaged In Other Business Activity Directed At The United States

Altipro's additional U.S.-oriented business activity also supports the exercise of jurisdiction here. Business contacts have long been considered a basis for the exercise of jurisdiction over a foreign defendant where that conduct is sufficiently related to the claims at issue. *See, e.g.*, *Burger King Corp.*, 471 U.S. at 475-76 (collecting cases). That is true even where the defendant conducted most or even all of this business while overseas, *see In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 319 (S.D.N.Y. 2020) (explaining that conduct that "occurs entirely out-of-forum" may support jurisdiction "if the defendant expressly aimed its conduct at the forum" (quoting *Licci IV*, 732 F.3d at 173)), *rev'd in part on other grounds*, 61 F.4th 242 (2d Cir. 2023), and even where the conduct is carried out by the defendant's agent, *see In re Eur. Gov't Bonds Antitrust Litig.*, 2020 WL 4273811, at *6 (S.D.N.Y. July 23, 2020). Altipro has at least two categories of such contacts relevant here.

*First*, the long-form subscription agreements signed by BNP SS, on Altipro's behalf, included provisions designating New York as the venue for dispute resolution. *See, e.g.*, Exs. 3, 4, 5. Judge Bernstein previously held that those provisions, standing alone, did not amount to a consent to personal jurisdiction in this action. *In re Fairfield Sentry Ltd.*, 2018 WL 3756343, at *11 (Bankr. S.D.N.Y. Aug. 6, 2018).[12] But they nonetheless support the exercise of jurisdiction: "A choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law" and signal a lack

---

[12]    The Liquidators are appealing that decision to the Second Circuit.

of objection to litigating at least some disputes in U.S. courts. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004); *see also In re Motors Liquidation Co.*, 565 B.R. 275, 288-89 (Bankr. S.D.N.Y. 2017) (holding that forum selection and choice of law clauses "support[ed] finding personal jurisdiction"); *Lombard Odier I*, 2022 WL 2387523, at *5 n.2 (same); *BLI*, 480 B.R. at 516, 517 n.15 (same).



*Second*, Altipro ████████████████████████████████████

████████████████████████████████████████████████████

████████, *see* Exs. 7-9, 12-14, ████████████████████████

████████████████, Exs. 16-19.

Those contacts, particularly when considered alongside Altipro's intentional investment in Madoff feeder funds, support this Court's exercise of personal jurisdiction over Altipro. And each of these contacts plainly relate to the Liquidators' claims. The forum-selection and choice-of-law clauses were contained in the subscription agreements that gave rise to the redemption payment at issue here. And ████████████████████████████████████████ ████████████████████████████████████████████ *In re Fairfield Sentry Ltd.*, 596 B.R. 275, 301 (Bankr. S.D.N.Y. 2018). That is more than sufficient to conclude that the above contacts relate to the Liquidators' claims and therefore support the exercise of jurisdiction. *See Cathay Life Ins.*, 2022 WL 16626325, at *4.

### E. The Court May Exercise Jurisdiction Over Altipro Even If The Transfers Are Deemed Foreign For Purposes Of The Bankruptcy Safe Harbor Analysis

Altipro attempts to make much ado about nothing by insisting that the Liquidators have previously conceded "[t]he redemption transfers at issue here were purely foreign" and that "every relevant component of the transactions at issue here occurred outside the [U.S.]" Mot. 2 (quoting Pls.' Appellants' Opening Br. for Second-Round Appeal at 24, *Fairfield Sentry Ltd. v.*

*Citibank NA London*, No. 19-cv-3911, Dkt. 440 (S.D.N.Y. July 21, 2021) ("Pls.' Opening Br.""));

*see also id.* at 10 ("As the Plaintiffs have elsewhere conceded, every material element of the

transaction is 'purely foreign.'" (quoting Pls.' Opening Br. at 24)). Altipro is quoting the

Liquidators' appellate brief out of context and ignoring black-letter law holding that "[t]he tests

for personal jurisdiction and extraterritoriality are not the same." *In re Ampal-Am. Israel Corp.*,

562 B.R. 601, 613 n.14 (Bankr. S.D.N.Y. 2017); *see also Absolute Activist Value Master Fund*

*Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012) (distinguishing the two tests).

For this reason, the set of facts relevant to the personal jurisdiction inquiry is different

from the set of facts relevant to the extraterritoriality inquiry. *Compare RJR Nabisco, Inc. v.*

*European Cmty.*, 579 U.S. 325, 337 (2016) (explaining that the extraterritoriality inquiry focuses

on "conduct relevant to the statute's focus"), *with Licci IV*, 732 F.3d at 170 (holding that the

specific personal jurisdiction inquiry focuses on the "totality" of the defendant's forum contacts

that give rise or relate to the plaintiff's claim). In this action, "the focus [of the

*extraterritoriality*] analysis is the location of the transfer" itself. *Picard v. Bureau of Lab. Ins.*,

2016 WL 6900689, at *19 (Bankr. S.D.N.Y. Nov. 22, 2016), *vacated and remanded on other*

*grounds*, 917 F.3d 85. By contrast, the personal jurisdiction inquiry addresses a much broader set

of facts, *see supra* Sections I.B-I.D, including, Altipro's knowledge and intent in making the

investments that gave rise to the transfer at issue, *see BLI*, 480 B.R. at 517, █████████

████████████████████████████████████████████████████████, *see Cathay*

*Life Ins.*, 2022 WL 16626325, at *3, forum selection clauses in the contracts governing that

investment, *see Sunward Elecs.*, 362 F.3d at 23, ████████████████████

███████████████████████████████████████████████████████████████, *see Licci IV*, 732 F.3d

at 168-71.[13]

The Liquidators referred to the redemption transfers as "purely foreign," because under

applicable law the only "*relevant component[s]*" of the redemption transfers for purposes of the

extraterritoriality analysis were in fact foreign, Pls.' Opening Br. at 24 (emphasis added), not

because it "served their purposes." Mot. 2. The Liquidators' characterization of the transfers as

foreign for purposes of extraterritoriality has no bearing on this motion.[14]

## II.    The Exercise Of Jurisdiction Over Altipro Is Reasonable

Exercising specific jurisdiction over Altipro—which, through its agent BNP SS,

deliberately chose to invest in and profit from the U.S. securities market and ███████████████

██████████████████████—is "reasonable under the circumstances" presented here. *U.S.*

*Bank Nat'l Ass'n*, 916 F.3d at 150 (quoting *Bristol-Myers Squibb*, 137 S. Ct. at 1786). Because

the Liquidators have made "a threshold showing of minimum contacts," the burden is on Altipro

to "present[] 'a compelling case that the presence of some other considerations would render

jurisdiction unreasonable.'" *Metro. Life Ins. Co.*, 84 F.3d at 568 (quoting *Burger King Corp.*, 471

U.S. at 477). Altipro has not done so.

---

[13] The redemption transfer from Sentry is relevant to both inquiries given ██████████████
████████████████████████████████████████████████ The Liquidators' prior
extraterritoriality argument that those transfers are "foreign" was premised on well-settled
law holding that ███████████████████████████ does not render otherwise foreign
transfers domestic for extraterritoriality purposes. See Pls' Opp'n Br. at 68-70, *Fairfield
Sentry Ltd. v. Theodoor GGC Amsterdam*, 10-ap-03496, Dkt. 1336 (citing *Bureau of Lab.
Ins.*, 2016 WL 6900689, at *20); *see also In re Madoff Sec.*, 513 B.R. 222, 228 n.1 (S.D.N.Y.
2014); *Loginovskaya v. Batrachenko*, 764 F.3d 266, 268-69 (2d Cir. 2014). That is not so for
personal jurisdiction. *See, e.g., Licci IV*, 732 F.3d at 168-71.

[14] For years, the Liquidators have consistently made these extraterritoriality and personal
jurisdiction arguments in tandem, pointing out that transfers that are "foreign" for purposes
of extraterritoriality may still support personal jurisdiction. *See* Pls.' Opening Br. at 68-69.

To assess reasonableness, courts consider: "(1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the 'interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and (5) 'the shared interests of the several States in furthering fundamental substantive social policies.'" *U.S. Bank Nat'l Ass'n*, 916 F.3d at 151 n.5 (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987)). "The primary concern is the burden on the defendant," *id.* (cleaned up), and dismissals on reasonableness grounds "should be few and far between," *Metro. Life Ins. Co.*, 84 F.3d at 575. These factors strongly support the exercise of jurisdiction in this case.

In an effort to characterize the exercise of jurisdiction as unreasonable, Altipro argues that: (1) the United States' interest in this dispute is "minimal at best"; (2) Altipro would face "substantial burdens" litigating here because discovery "would potentially expose" it to "civil and criminal liability"; and (3) the Liquidators have not demonstrated that it is "more reasonable" to litigate here than elsewhere. Mot 24-25. These arguments are meritless.

*First*, contrary to Altipro's assertion, courts have long recognized that the U.S. has a strong interest in ensuring that its financial system is not used for unlawful purposes. *See, e.g.*, *Strauss v. Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 31 (E.D.N.Y. 2016) ("[T]he Court also may take into account 'the United States' and New York's interest in monitoring banks and banking activity to ensure that its system is not used' [for unlawful purposes]." (quoting *Licci IV*, 732 F.3d at 174)). At its core, the case is about Altipro's decision to indirectly invest in and reap profits from BLMIS and the U.S. securities market through feeder funds. Allowing foreign investors like Altipro to evade U.S. jurisdiction in these circumstances simply because they chose to invest through a foreign- based conduit as part of their scheme would ignore the reality

33

of the transactions, allowing those investors to reap all the benefits of the U.S. securities market without any of the corresponding obligations.

Altipro argues that the United States' interests are minimal because subject matter jurisdiction would not exist over the Liquidators' "non-core" claim but for the Chapter 15 recognition of the Liquidators' foreign liquidation proceedings. Mot. 20. That counterfactual argument is a red herring. This Court has already found that it has subject matter jurisdiction and should find now that the United States has an interest in this dispute.

*Second*, Altipro has no legally cognizable burden here. As in *Lombard Odier I*, "Defendant has actively participated in this Court's litigation for over ten years. It is represented by U.S. counsel and 'irrevocably' submitted to the jurisdiction of New York courts[] when it signed its subscription agreements with the Fairfield Funds." 2022 WL 2387523, at *5. And "the conveniences of modern communication and transportation ease any burden the defense of this case in New York might impose on" Altipro. *See Licci IV*, 732 F.3d at 174 (citation omitted).

Altipro argues that engaging in document discovery about redemption payments in the United States "would *potentially* expose" it "to civil and criminal liability" under foreign law. Mot. 21 (emphasis added). However, counsel for Altipro asserts it has completed its production of documents for purposes of jurisdictional discovery, and that in any event it does not have records from former manager Altigefi, directly contradicting its argument. See Ex. 1.  Altipro produced such jurisdictionally relevant documents to the Liquidators, clearly demonstrating its ability to engage in discovery without violating foreign law.

Even if Altipro had legitimate discovery concerns, they have no place "in the context of assessing the reasonableness of an exercise of personal jurisdiction." *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 333 (S.D.N.Y. 2018) (cleaned up), *aff'd*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018);

*see Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 99 (S.D.N.Y. 2015) (noting "no other courts" considered this type of foreign law argument, and "declin[ing] to be the first"). Altipro does not cite a single case in which a court has declined to exercise personal jurisdiction because some aspect of discovery theoretically "could implicate"—not even necessarily violate—foreign laws at some future indeterminate point.

*Third*, Altipro's assertion that the Liquidators "have not demonstrated that it is *more* reasonable for them to litigate their claims against Altipro in New York rather than in the BVI … or in France," Mot. 25 (emphasis added), is flatly inconsistent with personal jurisdiction law. Altipro does not provide any legal support for the proposition that the existence of an alternate forum has any bearing on personal jurisdiction or renders the exercise of jurisdiction in the United States unreasonable.[15] A different jurisdiction's concurrent ability to hear claims has no bearing on whether it is *unreasonable* for a U.S. court to likewise do so. In addition, this Court hears other cases about the very same Ponzi-scheme. *See, e.g.*, *Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC v. Alpha Prime Fund Limited et al.*, No. 09-ap- 013496 (Bankr. S.D.N.Y.). It is reasonable for this case, involving the same scheme, to be litigated in the same Court.

*Finally*, Altipro's characterization of the Liquidators' selection of this forum as "maneuvering," Mot. 21, is baseless. It is contradicted by the chronology of this case: over 200 suits were pending in this Court before any substantive decision was issued by any BVI court,

---

[15]    Altipro's argument sounds vaguely like a *forum non conveniens* argument, but it did not move to dismiss on those grounds. Even if such a motion were before the Court (it is not), the Court would "begin with the assumption that the plaintiff's choice of forum will stand unless the defendant meets the burden" of demonstrating otherwise. *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001). "The plaintiff's choice of forum should rarely be disturbed" "[u]nless the balance is strongly in favor of the defendant." *Id.* at 70 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)), which it is not here.

and it was the BVI action *defendants* that pushed the BVI litigation into the preliminary issues process and thereafter cited that process as support for a stay of the U.S. litigation (over the Liquidators' objections). *See Fairfield Sentry Ltd. (In Liquidation) v. Theodoor GGC Amsterdam*, No. 10-ap- 03496 (Bankr. S.D.N.Y), Dkt. 925 (Hare Decl. dated Oct. 21, 2016); *id.* Dkt. 1407 (Molton Decl. dated April 6, 2017); *id.* Dkt. 1406 (Liquidators' Br. dated April 6, 2017) at 17-19.

Moreover, Altipro cites dicta from a single case, *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1031 (2021), in which the Supreme Court distinguished its ruling in another personal jurisdiction case, *Bristol-Myers Squibb*, 137 S. Ct. 1773, where the plaintiffs had engaged in forum shopping. In *Ford*, the Supreme Court upheld the exercise of personal jurisdiction on the ground that "the connection between plaintiffs' claims and [defendant's] activities" in the forum states was "close enough." 141 S. Ct. at 1032. In *Bristol-Myers Squibb*, the Supreme Court found a lack of personal jurisdiction when non-California plaintiffs sued Bristol-Myers in California over a drug that Bristol-Myers sold nationwide. 137 S. Ct. at 1778-79. In *Ford*, the Court explained that the *Bristol-Myers Squibb* result turned on the complete lack of *plaintiffs'* contacts with California: they had neither purchased nor ingested the drug in California, nor had they been injured there. 141 S. Ct. at 1031-32. Here, Altipro's intent to invest in BLMIS via Sentry and its additional contacts with the United States are closely connected to the Liquidators' claims, as explained above. *Ford* therefore supports the exercise of jurisdiction here, and *Bristol- Myers Squibb* is wholly inapplicable. Altipro has failed to establish that the exercise of jurisdiction is unreasonable.[16]

---

[16] Altipro also cites out-of-circuit cases for the proposition that defendants should be dismissed where their contacts "only barely satisfy the minimum contacts standard" and "a majority of the reasonableness factors weigh against the exercise of jurisdiction." Mot. 22. But cases in

In sum, Altipro has failed to establish that the exercise of jurisdiction is unreasonable, where it intentionally invested in Madoff feeder fund Sentry. Altipro cannot now shield itself from liability after benefiting from those U.S. investments.

## CONCLUSION

For the reasons discussed above, the Court should deny Altipro's Motion.

Date: July 11, 2023                    Respectfully submitted,

                                       BROWN RUDNICK LLP

                                       */s/ David J. Molton*
                                       David J. Molton
                                       Marek P. Krzyzowski
                                       Seven Times Square
                                       New York, New York 10036
                                       Telephone: 212-209-4800

---

which the reasonableness analysis warrants dismissal notwithstanding a showing of sufficient minimum contacts are "few and far between." *Cunningham v. Gen. Motors LLC,* 2021 WL 827124, at *2 (S.D.N.Y. Mar. 4, 2021) (quoting *Metro. Life Ins. Co.*, 84 F.3d at 575). In any event, this is not such a case. Here, the minimum contacts standard is squarely satisfied. Nor does Altipro come close to showing that a majority of the reasonableness factors weighs in its favor and against the Liquidators, so the out-of-circuit cases on which it relies are inapplicable.